```
UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
                                                 :
GOWANUS INDUSTRIAL PARK, INC.,                   :
                                                 :   MEMORANDUM INVITING *AMICUS*
                                    Plaintiff,   :   *CURIAE* BRIEF FROM THE ATTORNEY
                                                 :   GENERAL OF NEW YORK STATE
              -against-                          :
                                                 :   10-CV-05522 (JG) (SMG)
HESS CORP.[1],                                   :
                                                 :
                                    Defendant.   :
-----------------------------------------------------x
```

JOHN GLEESON, United States District Judge:

In a trespass action against Hess Corporation ("Hess"), Gowanus Industrial Park ("GIP") claims title to certain parcels of land (the "parcels"), including the land under water at the Henry Street Basin. The parcels were formerly part of the New York barge canal system, but in 1944 were deeded to the Port Authority of New York by an act of the New York legislature. 44 N.Y. Laws Ch. 410 ("1944 Act"). In 1997, the Port Authority purported to transfer title to the parcels to GIP by quitclaim deed. However, in 2003, Judge I. Leo Glasser found the quitclaim deed void, as the 1944 Act permitted the Port Authority to convey the parcels only to the State. *Gowanus Indus. Park v. Amerada Hess Corp.*, No. 01-CV-0902 (ILG), 2003 WL 22076651 (E.D.N.Y. Sept. 5, 2003) ("*GIP I*"). In an effort to cure the defect in the 1997 title transfer, the Port Authority conveyed the parcels to the State by quitclaim deed recorded on April 1, 2005. The State then conveyed the Parcels to GIP by letters patent, which were executed by the First Deputy Commissioner of General Services. *See City of New York v. Gowanus Indus. Park, Inc.*, 2008 WL 2572853, at *1 n.3 (N.Y. Sup. Ct. Kings Cnty June 27, 2008), *aff'd*, 886 N.Y.S.2d 427

---

[1] On defense counsel's representation that the entity sued, Amerada Hess Corporation, is now named "Hess Corporation," I have dropped "Amerada" from the caption and respectfully instruct the Clerk to amend the docket sheet accordingly. *See* Def.'s Mem. Support Mot. Dismiss 1 n.1, Feb. 18, 2011, ECF. No. 6.

(2d Dep't 2009). The Court is now asked to determine, *inter alia*, whether these transactions successfully transferred title to the parcels to GIP. The Court hereby invites the Attorney General of New York State to file an *amicus curiae* brief on behalf of the State of New York, addressing the question of whether the transactions successfully vested title to the parcels in GIP.

BACKGROUND

A thorough history of the title to the land under water at the Henry Street Basin can be found in Judge Glasser's 2003 opinion. A brief summary is included here. Pursuant to a 1911 statute authorizing state appropriation of certain lands for the construction of canal terminals, 1911 N.Y. Laws Ch. 746 ("1911 Act"), New York appropriated lands in the Gowanus Bay area including the parcels, which became part of the New York Barge Canal System. *GIP I*, 2003 WL 22076651, at *3. Section 14 of the 1911 Act prohibited alienation of these lands by the State. 1911 N.Y. Laws Ch. 746, § 14. However, in 1944, the state legislature deemed the Gowanus Bay Terminal "no longer necessary or useful as a part of the barge canal system, or as an aid to navigation thereon or for barge canal terminal purposes," 1944 N.Y. Laws Ch. 410, § 2, and it transferred to the Port Authority "all the right, title and interest of the State" in certain lands that had been appropriated for the Gowanus Bay Terminal, *id*. § 3.[2] Under the 1944 Act, the Port Authority held title to these lands subject to certain conditions. Among them was a prohibition against granting or conveying title to the lands "to any person or legal entity other than the state." *Id*. § 2(c). The Port Authority was also required to "rehabilitate" the pier properties, and it could not use the lands "for any purpose which will materially and substantially interfere with their use for pier and terminal purposes." *Id*. § 2(a), (b). If any of these conditions

---

[2] Originally, the 1944 Act did not apply to the lands under water at the Henry Street Basin, which are the focus of the present action. *See* 1944 N.Y. Laws Ch. 410, § 2 (defining boundaries of lands conveyed). In 1945, the legislature amended the 1944 Act to include those lands. 1945 N.Y. Laws Ch. 899, § 2 (inserting a new § 18 into the 1944 Act). "1944 Act" as used in this Memorandum refers to the act as it was amended in 1945.

was violated, the properties would revert to the State at the State's option after written notice and an opportunity to remedy. *Id*. § 5. Any lands so reverting to the State would become "unappropriated state lands." *Id*. § 8. Although the act was entitled (in part) "An Act providing for the abandonment of a barge canal terminal and barge canal terminal lands," the legislature specified that the Port Authority, in maintaining the pier properties, would be "performing an essential governmental function" by providing "needed transportation and terminal facilities" to the people of New York and New Jersey. *Id*. at § 12. Accordingly, the land was to remain non-taxable. *Id*. at § 13.

Despite the restrictions on alienation contained in the 1944 Act, the Port Authority attempted to sell the parcels to GIP in 1997. Prior to the sale, the Port Authority obtained a letter from the Department of Transportation ("DOT") waiving the State's "reversionary interest in the Property[.]" *See GIP I*, 2003 WL 22076651, at *4 (quoting the DOT waiver). It then executed a quitclaim deed transferring title to GIP. *Id*. On the basis of this transaction, GIP brought an action against Hess in 2001 (*GIP I*), alleging that GIP held title to the parcels, which included the lands under water at the Henry Street Basin. GIP further alleged that a bulkhead constructed by Hess in the Henry Street Basin encroached on the parcels and constituted a trespass. On cross-motions for summary judgment, Judge Glasser determined that the bulkhead was partially located within the boundaries of the parcels, *id.* at *7-*9, but that GIP neither owned nor possessed the parcels. With respect to GIP's claim of ownership, Judge Glasser held that the attempted 1997 transfer was void because, absent a supervening act of the legislature, the 1944 Act prohibited GIP from transferring the parcels to an entity other than the State. *Id*. at *9.

In late 2004, GIP and the Port Authority attempted to cure the defect in GIP's title. On November 29, 2004, the Port Authority assigned its interest in the parcels to the State by quitclaim deed, Def.'s Mem. Support Mot. Dismiss Ex. 2, Feb. 18, 2011, ECF. No. 6 ("Nov. 2004 Deed"), and on December 21, 2004, the State deeded the property to GIP by letters patent, executed by Robert J. Fleury, First Deputy Commissioner of General Services, *id*. Ex. 1 ("Letters Patent"). The letters patent indicate that the transfer from the State to GIP was made pursuant to § 50 of the Public Lands Law, which governs the sale of abandoned canal lands, and "Findings of the First Deputy Commissioner of General Services dated December 15, 2004." Letters Patent at A-91; *see also* Charles S. Sims Letter Ex. A, March 30, 2011, ECF No. 12 ("December 15 Findings"). They further indicate that the transfer was made in consideration for one dollar "and other good and valuable consideration paid by Gowanus Industrial Park, Inc." Letters Patent at A-91. Both the November 2004 quitclaim deed and the December 2004 letters patent reference Judge Glasser's 2003 opinion and state an intent to cure the defect described in that opinion. Nov. 2004 Deed at 1-2; Letters Patent at A-95. The December 15 findings also reference the 2003 opinion and state that GIP applied to the State Office of General Services "requesting that the State of New York ratify or confirm title in GIP." December 15 Findings at 1.

In 2010, GIP brought this action against Hess, again objecting to the location of the bulkhead that had featured in the action before Judge Glasser. Among other relief, GIP seeks damages for Hess's alleged continuing trespass and a declaration that it is "the sole and exclusive legal and equitable owner of the Parcels[.]" Compl. ¶ 42, Nov. 30, 2010, ECF No. 1. Currently before the Court is Hess's motion to dismiss the action which argues, in part, that GIP does not

4

have title to the lands under water at the Henry Street Basin because the 2004 transactions are a nullity.

The Court is therefore asked to determine whether the 2004 transactions successfully transferred title from the Port Authority to GIP via the State of New York. The State, acting through its First Deputy Commissioner of General Services, expressed a clear intent to help the Port Authority cure the defect identified by Judge Glasser and to vest title to the parcels in GIP. However, it appears that there is a genuine issue as to whether the letters patent issued by the State were insufficient to achieve the State's purpose.

DISCUSSION

The parties have presented the Court with no reason to question the validity of the transfer from the Port Authority to the State. However, Hess has suggested several potential weaknesses in the subsequent transfer from the State to GIP. The Court would greatly benefit from a submission by the Attorney General of New York State addressing the questions presented below, together with any other issues the Attorney General deems relevant to the ownership status of the parcels.

A.  *Were the Parcels Properly Conveyed as Abandoned Canal Lands?*

The letters patent transferring title from the State to GIP indicate that the transfer was made pursuant to § 50 of the Public Lands Law, which governs the sale of abandoned canal lands. Letters Patent at A-91. This transfer raises at least two issues: (1) whether the parcels at issue qualify as "abandoned canal lands" at all; and (2) even if they do, and Public Lands Law § 50 applies, whether its requirements for the sale of abandoned canal lands were met.

1. *Are the Parcels Abandoned Canal Land Within the Meaning of § 50 of the Public Lands Law?*

The Office of General Services found on December 15, 2004 that the parcels had been abandoned as canal lands by the 1944 Act and that their transfer was governed by Public Lands Law § 50. December 15 Findings at 1. Public Lands Law § 50 applies to any lands "acquired for canal purposes, which the commissioner of transportation may determine to have been abandoned for such purposes, or as to which a determination of abandonment shall have been heretofore made pursuant to law." N.Y. Pub. Lands Law § 50. Section 50 of the New York Canal Law governs the abandonment of canal lands. In 1944, Canal Law § 50 conferred authority

> upon the superintendent of public works to abandon any portion of barge canal lands, barge canal terminal lands, or old canal lands . . . which have or may become no longer necessary or useful as a part of the barge canal system, as an aid to navigation thereon, or for barge canal terminal purposes. This authority, however, shall not include the abandonment of a barge canal terminal unless such terminal has been by a special act of the legislature previously determined to have become no longer necessary or useful as a part of the barge canal system, as an aid to navigation thereon, or for barge canal terminal purposes.

1939 N.Y. Laws Ch. 542, § 50. In 1944, the Canal Law further prescribed a method for abandonment, which included requirements of notice and an opportunity for all "interested parties" to comment before canal land was abandoned by the superintendent of public works. *Id*. § 51.

The legislature determined in § 2 of the 1944 Act that the Gowanus Bay canal lands were "no longer necessary or useful as a part of the barge canal system, or as an aid to navigation thereon or for barge canal terminal purposes." This determination satisfies one prerequisite for the abandonment of canal lands pursuant to the Canal Law. However, the 1944

Act alone may not satisfy the requirements of Canal Law §§ 50 and 51, which, as the legislature instructed in 1939, apply to the abandonment of canal lands in all cases thereafter. 1939 N.Y. Laws Ch. 542, § 52. Indeed, the Canal Law as it existed in 1944 specifically defined "canal terminal lands" and "barge canal terminal lands" to include "canal lands acquired under the provisions of chapter seven hundred forty-six, laws of nineteen hundred eleven, and amendatory laws," 1939 N.Y. Laws Ch. 542, § 2(16), which in turn include the Gowanus Bay Terminal lands that are the subject of the 1944 Act and the GIP-Hess litigations. There is no indication in the 1944 Act – except its title – that the legislature intended to displace or circumvent the procedures set out in the Canal Law for the abandonment of canal lands. By echoing the precise language of Canal Law § 50, the legislature indicated that it was operating within the parameters of that provision. The December 15 findings, referenced by the letters patent, observe that the parcels "were abandoned for canal purposes by Chapter 410 of the Laws of 1944." December 15 Findings at 1. But the 1944 Act alone did not satisfy the procedures for abandoning canal lands prescribed by the Canal Law at that time.

GIP has also provided no indication that the parcels were abandoned pursuant to the Canal Law subsequent to the 1944 Act. Today, § 50 of the Canal Law reads substantially the same as it did in 1944, except that authority to abandon canal lands is now placed in a subsidiary of the New York State Thruway Authority.[3] N.Y. Canal Law § 50 (vesting authority in "the

---

[3] As noted above, Public Lands Law § 50 applies to lands that the Commissioner of Transportation determines to have been abandoned. This might suggest that the DOT possesses authority, separate and apart from Canal Law § 50, to deem canal lands abandoned and subject to sale under Public Lands Law § 50, even when the appropriate subsidiary of the Thruway Authority has not abandoned them. However, at the time that Public Lands Law § 50 was most recently amended in 1983, *see* 1983 N.Y. Laws Ch. 632, Canal Law § 50 vested authority in the Commissioner of Transportation to abandon canal lands, *see* N.Y. Laws Ch. 420, § 30. The Canal Law was subsequently amended in 1992 to vest authority to abandon canal lands in the Thruway Authority instead of the Commissioner of Transportation. *See* 1992 N.Y. Laws Ch. 766, § 4 ("All references to the commissioner of transportation and the department of transportation contained in this chapter, except in this article and articles seven and thirteen-A of this chapter, shall be deemed to mean the [thruway] authority."). In 2001, § 50 of the Canal Law was again amended to place authority to abandon canal lands in the canal corporation, a subsidiary of the state

corporation"); § 2(20) (defining "the corporation" as a subsidiary of the thruway authority). No suggestion has been made to the Court that the Thruway Authority has followed the procedures outlined in the Canal Law § 50 for abandoning the parcels. Accordingly, the State, acting through the First Deputy Commissioner of General Services, may have erred when it identified Public Lands Law § 50 as the provision governing transfer of the parcels.

    2.    *Were the Requirements of § 50 of the Public Lands Law Satisfied?*

If the parcels were abandoned canal lands within the meaning of Public Lands Law § 50, that provision vested authority in the Commissioner of General Services to "sell and convey" them. However, Public Lands Law § 50 places certain limitations that authority, which Hess argues the Commissioner exceeded in conveying the parcels to GIP. Section 50 reads in part:

> The commissioner of general services may sell and convey . . . abandoned lands in the same manner and with the same discretion as he may sell and convey unappropriated state land pursuant to article three of this chapter. The commissioner may sell such abandoned canal lands for not less than the appraised value thereof to occupants of such abandoned canal lands or owners of adjacent land who have used or improved such abandoned canal lands either under a permit issued pursuant to section one hundred of the canal law or in good faith without knowledge that such canal lands were owned by the state . . . .

N.Y. Public Lands Law § 50. Accordingly, the Commissioner's authority to convey abandoned canal lands is two-pronged: generally, he must follow the procedures set out in Public Lands Law § 33, unless the purchaser satisfies certain requirements, in which case he may sell the lands

---

Thruway Authority, instead of the Thruway Authority itself. 2001 N.Y. Laws Ch. 335, § 26; New York Canal Law § 2(21) (defining "corporation" as used in the amended Canal Law § 50). That Public Lands Law § 50 applies to lands that the Commissioner of Transportation determines to have been abandoned therefore appears to be an anachronism, and does not suggest that the Commissioner of Transportation has the authority to abandon canal lands independent of the procedures set out in Canal Law § 50. Indeed, the 1992 amendment that gave the Thruway Authority authority to abandon canal lands also amended the entire Canal Law and portions of the Public Authorities Law and the State Finance Law to transfer jurisdiction over the state canal system from the DOT to the Thruway Authority. *See* 1992 N.Y. Laws Ch. 776. That § 50 of the Public Lands Law was not also amended in 1992 to replace "commissioner of transportation" with "thruway authority" appears to reflect an oversight by the legislature.

"for not less than the[ir] appraised value." *Id*. Pursuant to § 33 of the Public Lands Law, "[t]he commissioner of general services may . . . sell unappropriated state lands at public auction or by sealed bids." *Id*. § 33(1). Before such a sale, the Commissioner "must fix the lowest sum at which each lot may be sold," and must publish notice of the sale in accordance with detailed publication requirements. *Id*. Alternatively, if the Commissioner deems a public auction "not in the best interests" of the State, he may sell and convey improved unappropriated state lands "by competitive solicitation of offers through a request for proposals or similar method." *Id*. § 33(5)(a). Section 33 establishes procedural requirements for this process, including notice requirements, *id*. § 33(5)(c), and specifies that a "minimum sale price for the competitive solicitation shall be based upon a certified appraisal or certified appraisal report[.]"[4] *Id*. § 33(5)(d).

GIP has not alleged that the Commissioner conducted an auction, accepted bids or solicited offers, or that he provided notice or received an appraisal before executing the December 2004 letters patent. The findings cited in the letters patent describe the process leading up to the conveyance as follows:

> GIP applied to this office by letter dated October 2, 2003 requesting that the State of New York ratify or confirm title in GIP. Following a review of the title history and the aforementioned decision of the District Court and the provisions of Chapter 410 of the Laws of 1944, the Office of General Services and the Port Authority have agreed to reconvey said lands in accordance with the requirements of Chapter 410.

Letters Patent at 1. The letters patent, the findings and GIP's pleadings point to no additional proceedings taken by the Commissioner before conveyance of the parcels to GIP.

---

[4] Section 33 sets out other mechanisms for the commissioner of general services to convey certain categories of unappropriated land, but none appears relevant here. *See* N.Y. Public Lands Law § 33(2)-(4).

Another question is whether the second prong of Public Lands Law § 50 was satisfied. Did GIP qualify as a party to which the Commissioner was permitted to convey the land without following the procedures set out in § 33? Although GIP alleges that the parcels are adjacent to land it owns, Compl. ¶ 7,[5] it does not allege that it was ever issued a revocable permit under Canal Law § 100 to use the parcels. Nor is it clear at this stage of the proceedings whether GIP "occupie[d]" the parcels within the meaning of Public Lands Law § 50 at the time of the conveyance. Even assuming that GIP qualified for the exception, did the Commissioner secure for the State "not less than the appraised value" of the parcels as consideration for the letters patent? N.Y. Public Lands Law § 50. The letters state that they were granted "in consideration of the sum of One Dollar ($1.00), and other good and valuable consideration paid by [GIP]." Letters Patent at A-91. The December 15 findings state that GIP "agreed to indemnify the Port Authority and the State of New York from any claims arising as a result of this transaction," but that "[n]o additional consideration will be paid as part of this corrective transaction." December 15 Findings at 1. Accordingly, even if the parcels were properly treated as abandoned canal lands and appropriately transferred pursuant to § 50 of the Public Lands Law, the Court needs to determine whether the requirements set forth in that section governing such conveyances have been satisfied.

B.  *If the Parcels Are Not Abandoned Canal Lands, What Provision Governs Their Transfer?*

Prior to execution of the letters patent, the State claimed title to the parcels based on the November 29, 2004 quitclaim deed that conveyed them from the Port Authority to the State. The quitclaim deed does not indicate how the State intended to classify the parcels once reacquired, and the relevant statutes do not provide clear direction as to how they should be

---

[5] More precisely, GIP alleges that "the Henry Street Basin abuts a parcel owned by GIP" on its westerly side. Compl. ¶ 7.

treated. Accordingly, it is unclear what provisions of state law should have governed their conveyance by the State to a private party. Plausible grounds exist for treating the parcels as unappropriated state lands governed by Article 3 of the Public Lands Law. Plausible grounds also exist for treating the parcels as canal terminal lands subject to the provisions of the 1911 statute and § 50 of the Canal Law. Among the issues before me is whether the State has satisfied the requirements for transferring either type of property for the reasons stated above in Part A.2 of this discussion.

1. *Are the Parcels Unappropriated State Lands Subject to § 33 of the Public Lands Law?*

In *GIP I*, GIP argued that the parcels had been removed from the canal system by the 1944 Act and should be treated as "unappropriated state lands," in which case Public Lands Law § 33 would govern their transfer. *See GIP I*, 2003 WL 22076651, at *11; Def.'s Mem. Support Mot. Dismiss 10 n.5. It is not clear to the Court precisely how the parcels would have become unappropriated state land. When the Port Authority attempted to transfer title to the parcels to GIP in 1997, the State might have exercised its option under the 1944 Act to regain title to the parcels after providing the Port Authority with notice and an opportunity to cure. *See* 1944 N.Y. Laws Ch. 410, § 5. Had the State done so, the parcels would have become unappropriated state lands, *id*. § 8, and their conveyance would be governed by Public Lands Law § 33. But this is not what happened.

Instead, the State failed to take action under § 5 of the 1944 Act and waited until the Port Authority conveyed the parcels to it by quitclaim deed, apparently on condition that it would in turn convey the parcels to GIP. The 1944 Act grants the Port Authority permission to re-deed the parcels to the State, but the statue does not specify how the land should be treated following a reconveyance to the State. Arguably, § 8 of the 1944 Act addresses this

11

circumstance and prescribes that the parcels be deemed unappropriated state land. Section 8 reads: "If the pier properties revert to the state pursuant to this act, they shall be and shall be deemed to be unappropriated state lands." 1944 N.Y. Laws Ch. 410, § 8. Because re-conveyance of the parcels to the State is contemplated by the 1944 Act, *see id*. § 3(c) ("[T]he port authority shall not grant or convey title to [the parcels] to any person or legal entity other than the state."), the parcels arguably "revert[ed] to the state pursuant to [the] act" when the Port Authority executed the quitclaim deed in November 2004. If so, § 8 of the 1944 Act would apply, and the parcels would be held by the State as unappropriated state lands.

Article 3 of the Public Lands Law provides another basis for treating the parcels as unappropriated lands. Section 30 of the Public Lands Law defines "unappropriated state lands" to include – with few exceptions – all "lands belonging to this state which are not directed by law to be kept for or applied to any specific purpose[.]"[6] N.Y. Public Lands Law § 30. Accordingly, if the relevant statutes are not clear as to the nature of the parcels after they have been re-conveyed to the State, Public Lands Law § 30 seems to dictate that they be treated as "unappropriated state lands."

If the parcels became unappropriated lands after the November 2004 quit-claim deed was executed, Public Lands Law § 33 governed their conveyance by the State. As discussed above in Part A.2, there is a question as to whether the requirements of that provision were satisfied by the December 15 findings and the letters patent.

---

[6] The exceptions to this blanket definition include two categories of land that may be relevant here. First, the definition does not include "abandoned canal lands." N.Y. Public Lands Law § 30. However, as discussed above, the parcels do not seem to qualify as abandoned canal lands. Second, the definition does not include "lands underwater the disposition of which is governed by article six of this chapter." *Id*. Article 6 of the Public Lands Law includes § 75, which "authorizes grants . . . for the use of state-owned land underwater and the cessation of jurisdiction thereof." *Id*. § 75. More specifically, the provision applies to "navigable rivers and lakes" as well as specific properties identified by their location in the statute. *Id*. But Henry Street Basin is not a river or lake, nor is it specifically identified in the statute.

2. *Are the Parcels Subject to the Restrictions in the 1911 Act and the Provisions of the Canal Law?*

Arguably, § 8 of the 1944 Act did not apply to render the parcels unappropriated state lands following the 2004 conveyance by the Port Authority to the State. It is plausible that the reconveyance in essence nullified the 1944 Act, returning the parcels to the purview of the 1911 Act and the Canal Law. Section 8 of the 1944 Act addresses reversion of the parcels, not reconveyance. Conceivably, it was meant to dictate the treatment of the parcels only if they reverted to the State after the State exercised the option granted by § 5 of the act. Under such a reading, the 1944 Act is silent as to the proper treatment of the parcels once they were reconveyed to the State pursuant to § 3(c) of the act. The November 2004 quitclaim deed returning title of the parcels to the State could be seen simply to undo the 1944 conveyance and in effect nullify the 1944 Act. If so, the parcels would return to the state canal system and be governed by the 1911 Act, which authorized their purchase, and the Canal Law, which regulates the state canal system.

This argument is reinforced by several considerations. First, although the legislature in 1944 deemed the parcels "no longer necessary or useful as part of the barge canal system," 1944 N.Y. Laws Ch.410, § 2, and deeded them to the Port Authority, the legislature evidenced an intent in the 1944 Act to have the parcels maintained as "transportation and terminal facilities" for "the benefit of the people of the states of New York and New Jersey." *Id*. § 12. The parcels were to remain tax free, *id*. § 13, and the Port Authority was forbidden from transferring title into private hands or putting the parcels to any use that would impair their use as terminal facilities, *id*. § 3(a), (b). Second, as noted above, in § 2 of the 1944 Act, the legislature tracked the language of Canal Law § 50, which governs the abandonment of canal lands. In so doing, it arguably acknowledged that the abandonment of canal lands usually

13

requires a second action, subsequent to the legislature's declaration of non-necessity. This action was never taken with respect to the parcels.

Accordingly, the 1944 grant to the Port Authority may reflect an intent by the State to preserve the parcels as part of the canal system to some degree. Section 5 attaches only if the Port Authority has violated the conditions of the grant, *see* 1944 N.Y. Laws Ch. 410, § 3, and only after the State has provided the Port Authority with an opportunity to cure. *Id.* § 5. Section 5 might therefore be read to offer the State an option to reclaim the land only after the Port Authority has rendered it no longer useful as a canal terminal, in which case § 8 of 1944 Act reasonably directs that the land will be treated as unappropriated state land. However, where the State has decided to repurchase the land, even though the Port Authority has maintained it according to the conditions of the 1944 Act, the land might reasonably be treated as having been restored to the state canal system.

If so, the 1911 Act pursuant to which the parcels were acquired and the Canal Law would once again govern their transfer. Section 14 of the 1911 Act reads:

> The terminals provided for in this act when constructed shall be and remain the property of the state, and all of said terminals . . . shall be operated by it and shall remain under its management and control forever. None of such terminals or any part of any such terminals shall be sold, leased or otherwise disposed of, nor shall they be neglected or allowed to fall into decay or disuse, but they shall be maintained for, and they shall not for any purpose whatsoever be in any manner or degree diverted from the uses for which they are created.

1911 N.Y. Laws Ch. 746, § 14. This provision was supplemented by the Canal Law, which permitted the abandonment of canal lands pursuant to the terms of Canal Law § 50 "[n]otwithstanding the provisions of any existing general or special acts." 1939 N.Y. Laws Ch. 542, § 52. Accordingly, the canal corporation would have authority to abandon the parcels

pursuant to §§ 50 and 51 of the Canal Law, and the Commissioner of Public Services would be authorized to convey them in accordance with Public Lands Law § 50. Otherwise, the State would be prohibited from conveying the lands absent a legislative act. As discussed above, there is a question in this case as to whether the requirements of Canal Law §§ 50 and 51 and Public Lands Law § 50 have been satisfied.

## CONCLUSION

This case raises important and difficult issues of New York law pertaining to the ownership status of the parcels of real property in dispute. An *amicus* brief from the Attorney General of New York State addressing those issues would be of assistance to the Court. He is respectfully invited to submit such a brief on or before May 13, 2011.

Finally, I am mindful of the fact that the State, which sought to convey the parcels to GIP, may have an interest in the outcome of the case, and specifically in the Court's resolution of issues on which the Attorney General's input is sought. Accordingly, the parties will be permitted to file supplemental submissions responding to the Attorney General's submission, and are hereby directed to do so within two weeks of its filing.

So ordered.

John Gleeson, U.S.D.J.

Dated: April 12, 2011
      Brooklyn, New York