UNITED STATES DISTRICT COURT　　　　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
　　　　　　　　　　　　　　　　　　　　　　:
GOWANUS INDUSTRIAL PARK, INC.,　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Plaintiff,　　　　:　　MEMORANDUM
　　　　　　　　　　　　　　　　　　　　　　:　　10-CV-5522 (JG) (JO)
　　　　-against-　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
HESS CORP.,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendant.　　　　:
------------------------------------------------------x

JOHN GLEESON, United States District Judge:

　　　　　　In this action against Hess Corporation ("Hess"), Gowanus Industrial Property ("GIP") asserts title to certain parcels of land (the "parcels"), including a piece of underwater land at the Henry Street Basin, a sliver of water on the Brooklyn shoreline of Upper New York Harbor, not far from the Statue of Liberty. GIP alleges that a bulkhead constructed by Hess – parts of which were built beyond the boundary of Hess's own adjacent property and are thus located on the parcels – interferes with GIP's ability to use the underwater property to which it claims title. GIP initiated this action on November 20, 2010, seeking monetary, injunctive and declaratory relief for Hess's alleged trespass. On February 18, 2011, Hess filed a motion to dismiss GIP's initial complaint on the grounds that GIP does not hold title to the parcels and that GIP's claims are barred by res judicata. Oral argument on the motion was held on March 29, 2011. At oral argument I reserved decision on the issues raised in Hess's motion to dismiss.[1] I also determined that, if those issues were resolved in GIP's favor, resolution of the action would require a balancing of GIP's ownership rights against Hess's rights as an owner of uplands

---

[1] As discussed *infra* at n.3, I also granted GIP leave to amend its complaint, which it did on April 5, 2011. In an order dated April 7, 2011, I deemed Hess's challenges to the initial complaint to have been made against the amended complaint. Accordingly, Hess's motion to dismiss the action is still pending.

adjacent to the Henry Street Basin.[2]  Accordingly, on March 29, 2011, I stated my intent to hold a hearing in order to make the factual findings on which a balancing of the parties' rights would depend.[3]  By order dated April 7, 2011, I scheduled the hearing for June 27, 2011.  This memorandum addresses the scope of the hearing.

A.  *Undisputed Facts*

The eastern boundary of the Henry Street Basin to which GIP claims title is defined by certain "pier, bulk-head and other lines" as set forth by the New York legislature in 1985 (the "bulkhead line").  *GIP I*, 2003 WL 22076651, at *2.  Hess owns the upland property on the eastern side of the bulkhead line.  Hess has constructed a bulkhead (the "bulkhead") on the tidebed along the east side of the Henry Street Basin, which encroaches on the land to the west of the bulkhead line by a distance ranging from 1" to 6'1".  *Id*. at *6 n.5.  Hess built this bulkead in the 1980s to replace a preexisting bulkhead that the Army Corps of Engineers had found was deteriorating and was placing Hess's waterfront facilities in "immediate danger."  *GIP I*, 2003 WL 22076651, at *5.  Hess maintains oil tanks on its uplands, and the bulkhead prevents soil erosion that could cause the oil tanks to collapse into the Henry Street Basin.  *Id*. at *15.  Hess has constructed a fence and piping on top of the bulkhead.

---

[2] In this memorandum, I term those rights "riparian rights."  Hess is in fact a littoral owner whose property is bounded by the seashore, not a riparian owner of lands along a river.  *Gowanus Industrial Park v. Amerada Hess Corp.*, No. 01-CV-0902 (ILG), 2003 WL 22076651, at *13, n.9 (E.D.N.Y. Sept. 5, 2003) ("*GIP I*").  Because the distinction between littoral and riparian rights holders is vestigial, *Town of Oyster Bay v. Commander Oil Corp.*, 96 N.Y.2d 566, 571 (2001), I treat Hess as a riparian owner in this memorandum and throughout this litigation.  *See GIP I*, 2003 WL 22076651, at *13 n.9.

[3] As described *infra*, this balancing may require consideration of the particular uses to which GIP plans to put the underwater land and the ways in which the bulkhead would interfere with those uses.  Hess's counsel correctly observed at the March 29 oral argument that GIP's initial complaint did not identify any specific uses it intended to make of the land.  Accordingly, I granted GIP leave to amend its complaint to include any plans it had for the land that might be incompatible with the presence of the bulkhead.  GIP filed its amended complaint on April 5, 2011.

B.  *GIP's Allegations*

GIP alleges that the fence and piping on top of the bulkhead interfere with its ability to use the underwater property to which it claims title.  More specifically, GIP claims that the fence and piping prevent it from using the underwater property as a marine bulk handling and storage and vessel mooring facility.  GIP maintains that it rents access to the Henry Street basin and its piers to companies that wish to dock their vessels and/or unload their cargo onto the upland property to the west of the Henry Street Basin.  GIP purports to have recently entered into leases with two companies that together place a strain on GIP's current pier facilities, requiring it to use additional space in the Henry Street Basin to dock vessels.  Accordingly, GIP maintains that it plans to construct a series of mooring dolphins or pile clusters alongside the bulkhead, and to construct catwalks connecting the pile clusters to the bulkhead.  GIP alleges that construction of the catwalks is necessary to make the pile clusters useful as mooring facilities but that the fence and piping that have been built on top of the bulkhead prevent the catwalks from being constructed.

Accordingly, GIP asserts nuisance and trespass claims against Hess, seeking damages and preliminary and permanent injunctive relief enjoining Hess from entering the parcels, directing Hess to remove the fence and piping on top of the bulkhead, and awarding GIP immediate and exclusive possession of the parcels, including the bulkhead.  In addition, GIP seeks a declaration that (a) the bulkhead lies within the parcels; (b) GIP holds title to the parcels, including the bulkhead; (c) GIP "is entitled to sole, exclusive and unfettered use of and access to the Bulkhead"; (d) GIP may construct a series of pile clusters alongside the bulkhead and construct catwalks attaching the pile clusters to the bulkhead; and (e) Hess has no claim to ownership or use of the bulkhead.

C. *Scope of the Hearing*

GIP's ownership of the parcels is in dispute, but for the purposes of the hearing, it will be assumed that GIP holds title to the lands under water at the Henry Street Basin.[4] GIP's presumed title is not absolute. Rather, it is "at all times subject to the public rights [of navigation] and to the right of the riparian owner to access to the water[.]" *Tiffany v. Town of Oyster Bay*, 234 N.Y. 15, 21 (1922). Under New York law, an upland owner such as Hess has the right to "build wharves and erect bulkheads . . . for the use of navigation and commerce connected with [its] business." *Hinkley v. State*, 234 N.Y. 309, 318 (1922). However, like GIP's presumed ownership interest, Hess's riparian right of access is not absolute. It is "qualified by other rights in the owner of the submerged land[.]" *Commander Oil Corp.*, 96 N.Y.2d at 572 (internal quotation marks omitted). Neither Hess as a riparian owner nor GIP as the purported owner of lands under water "may exercise its rights in a manner unreasonably intrusive upon the other's rights." *Id*. As Judge Glasser observed in the predecessor case to the present action: "The issue here therefore is whether the bulkhead's existence is necessary in order to assure Hess's reasonable access to navigable waters and, if so, whether its continued existence would seriously impair or destroy GIP's rights as the purported possessor of the submerged land." *GIP I*, 2003 WL 22076651, at *16.

Resolution of this issue depends upon a number of factual determinations that may include the following:

1. Are the bulkhead, fence and piping maintained in furtherance of Hess's use of the Henry Street Basin "for the purposes of a public highway"[5]?

---

[4] Nothing in this memorandum should be read to suggest that the question of title has been resolved in GIP's favor. As stated *supra* at n.1, that question is the subject of a pending motion to dismiss.

[5] *Adirondack League Club, Inc. v. Sierra Club*, 92 N.Y.2d 591, 604 (1998) (internal quotation marks omitted). *Compare id.* at 607 ("[A]ny use of private river beds or banks that is not strictly incidental to the right to navigate gives rise to an action for trespass.") with *Hinkley*, 234 N.Y. at 318 ("[The upland owner] could

2. Does maintenance of the bulkhead, fence and piping interfere with a reasonable use that GIP intends to make of the underwater property?[6]

3. Does maintenance of the bulkhead, fence and piping unreasonably interfere with the interests of members of the public, such as commercial navigators, for whom GIP holds the underwater land in trust?[7]

4. Do alternatives to the bulkhead, fence, and piping exist to ensure Hess's reasonable access to the Henry Street Basin?[8]

5. Would GIP's planned uses for the underwater land obstruct or interfere with Hess's right of reasonable access to the Henry Street Basin?[9]

6. Would GIP's planned uses for the underwater land unreasonably interfere with the interests of the public for whom GIP holds the underwater land in trust?[10]

7. Could GIP make the desired use of its property without disturbing the bulkhead, fence and piping?[11]

---

build piers which would rest upon the land under water, or they could build wharves and erect bulkheads . . . for the use of navigation and commerce connected with their business.").

[6] *See Hedges v. West Shore R.R. Co.*, 150 N.Y. 150, 157 (1986) ("The owner of the uplands cannot exercise his easement or right of access to the channel in such a way as to prevent other parties, to whom the sovereign has granted the bed of the river or some portion of it, from using their own property in a reasonable way.").

[7] *See Commander Oil Corp.*, 96 N.Y.2d at 575 ("A public owner could present such interests [as those of commercial navigators] as factors relevant to the courts' balance of riparian and public rights.")

[8] *See id.* at 576 (remanding in part because alternatives to riparian owner's disputed use were not considered); *GIP I*, 2003 WL 22076651, at *15 ("Absent the existence of an alternative proposal, the maintenance of some sort of bulkhead seems necessary to prevent collapse." (citation omitted)).

[9] *See Hedges*, 150 N.Y. at 156-57 (owner of underwater lands may not use his property so as to obstruct the riparian owner's right of access to the navigable waterway); *id* at 160 (where riparian owners "have not been deprived of a reasonable mode of access, under all the circumstances . . . their riparian rights have not been invaded"); *Commander Oil Corp.*, 96 N.Y.2d at 575-76 (defining the relevant issue as whether the riparian owner was allowed to maintain reasonable access).

[10] *See City of New York v. Gowanus Indus. Park, Inc.*, No. 19083/05, 2008 WL 2572853, at *9 (N.Y. Sup. Ct. Kings Cty, June 27, 2008) (GIP may not use its underwater properties so as to substantially interfere with the public's right of access to the Henry Street Basin), *aff'd*, 886 N.Y.2d 427 (2d Dep't 2009), *lv. appeal denied*, 13 N.Y. 3d 716 (2010)

[11] *Cf. Commander Oil Corp.*, 96 N.Y.2d at 573 (riparian landowners may not maintain access in a manner that "*seriously* impair[s]" the underwater landowner's rights (emphasis added)); *id.* at 572 (giving trial court discretion to "strike the correct balance" where proper uses by riparian and underwater landowners conflict).

5

These questions are meant to provide guidance to the parties as they conduct discovery and prepare for the June 27 hearing. They are not meant to be exhaustive or to strictly define the scope of that hearing. The parties will be invited at the pre-hearing conference on June 17, 2011 to suggest any other issues they believe ought to be addressed at the hearing in order to assist the Court in its task of balancing Hess's riparian rights against GIP's presumed ownership rights.

So ordered.

John Gleeson, U.S.D.J.

Dated: April 19, 2011
       Brooklyn, New York