UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GOWANUS INDUSTRIAL PARK, INC.,

              *Plaintiff*,

   against

HESS CORPORATION,

              *Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civil Action No. 10-5522 (JG) (JO)

**ECF CASE**

**HESS CORPORATION'S ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS**

## ANSWER TO AMENDED COMPLAINT

Defendant Hess Corporation ("Hess" or "defendant"), by and through its attorneys, answers the Amended Complaint ("Complaint") of Gowanus Industrial Park, Inc. ("GIP" or "plaintiff") as follows:

1.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

2.    Admits the allegations contained in paragraph 2 of the Complaint, except denies that Hess's principal place of business is located at 1 Hess Plaza, Woodbridge, New Jersey, and denies that plaintiff owns a parcel of property which is contiguous with either the western border of defendant's property line or the eastern border of the Henry Street Basin.

3.    Admits the allegations contained in paragraph 3 of the Complaint.

4.    Admits the allegations contained in paragraph 4 of the Complaint.

5.    Denies the allegations contained in paragraph 5 of the Complaint, except admits that this Court has personal jurisdiction over defendant.

6. Denies the allegations contained in paragraph 6 of the Complaint.

7. Denies the allegations contained in paragraph 7 of the Complaint, except admits that the Henry Street Basin abuts the Gowanus Bay on its southerly side.

8. Admits the allegations contained in paragraph 8 of the Complaint, but notes that Judge Glasser found the quitclaim deed to be invalid, and that the decision in *Gowanus Industrial Park v. Amerada Hess Corp.* can be found at 2003 WL 22076651 (Sept. 5, 2003 E.D.N.Y.).

9. Denies the allegations contained in paragraph 9 of the Complaint.

10. Denies the allegations contained in paragraph 10 of the Complaint.

11. Admits the allegations contained in paragraph 11 of the Complaint.

12. Denies the allegations contained in paragraph 12 of the Complaint.

13. Denies the allegations contained in paragraph 13 of the Complaint.

14. Denies the allegations contained in paragraph 14 of the Complaint.

15. Admits the allegations contained in paragraph 15 of the Complaint, but denies that such permission was necessary, required or even conceivable.

16. Denies the allegations contained in paragraph 16 of the Complaint.

17. Denies the allegations contained in paragraph 17 of the Complaint.

18. Denies the allegations contained in paragraph 18 of the Complaint.

19. Denies the allegations contained in paragraph 19 of the Complaint.

20. Denies the allegations contained in paragraph 20 of the Complaint.

21. Denies the allegations contained in paragraph 21 of the Complaint.

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24. Denies the allegations contained in paragraph 24 of the Complaint.

25. Denies the allegations contained in paragraph 25 of the Complaint.

26. Denies the allegations contained in paragraph 26 of the Complaint.

27. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint.

### As to the First Cause of Action

28. In response to paragraph 28 of the Complaint, re-alleges and incorporates its answers to paragraphs 1 through 27 of the Complaint as though fully set forth herein.

29. Denies the allegations contained in paragraph 29 of the Complaint.

30. Denies the allegations contained in paragraph 30 of the Complaint.

31. Denies the allegations contained in paragraph 31 of the Complaint.

32. Denies the allegations contained in paragraph 32 of the Complaint.

33. Denies the allegations contained in paragraph 33 of the Complaint, except admits that in or before 1986 defendant constructed a fence and piping on the bulkhead on the easterly side of the Henry Street Basin (the "Bulkhead").

34. Denies the allegations contained in paragraph 34 of the Complaint.

### As to the Second Cause of Action

35. In response to paragraph 35 of the Complaint, re-alleges and incorporates its answers to paragraphs 1 through 34 of the Complaint as though fully set forth herein.

36. Denies the allegations contained in paragraph 36 of the Complaint.

37. Denies the allegations contained in paragraph 37 of the Complaint.

38. Denies the allegations contained in paragraph 38 of the Complaint.

39. Admits the allegations contained in paragraph 39 of the Complaint.

40. Denies the allegations contained in paragraph 40 of the Complaint.

41. Denies the allegations contained in paragraph 41 of the Complaint.

42. Denies the allegations contained in paragraph 42 of the Complaint.

43. Denies the allegations contained in paragraph 43 of the Complaint.

44. Denies the allegations contained in paragraph 44 of the Complaint.

45. Denies the allegations contained in paragraph 45 of the Complaint.

46. Denies the allegations contained in paragraph 46 of the Complaint.

## As to the Third Cause of Action

47. In response to paragraph 47 of the Complaint, re-alleges and incorporates its answers to paragraphs 1 through 46 of the Complaint as though fully set forth herein.

48. Denies the allegations contained in paragraph 48 of the Complaint.

49. Denies the allegations contained in paragraph 49 of the Complaint.

50. Denies the allegations contained in paragraph 50 of the Complaint.

51. Denies the allegations contained in paragraph 51 of the Complaint.

52. Denies the allegations contained in paragraph 52 of the Complaint, and denies all allegations contained in the Complaint not otherwise answered above.

53. Denies that plaintiff is entitled to any of the relief requested in plaintiff's Prayer for Relief (Compl. at pp. 8-9).

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

54. The Complaint fails to state a claim upon which relief can be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

55. Plaintiff's claims are barred by res judicata.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

56. Plaintiff's claims are barred by collateral estoppel.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

57. Plaintiff lacks ownership of the Parcels because the requirements of N.Y. Public Lands Law § 50 were not satisfied.

58. Accordingly, plaintiff lacks standing to bring its claims.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

59. Plaintiff lacks ownership of the Parcels because the requirements of 1944 N.Y. Laws Ch. 410, as amended by 1945 N.Y. Laws Ch. 899, were not satisfied.

60. Accordingly, plaintiff lacks standing to bring its claims.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

61. Plaintiff lacks ownership of the Parcels because it failed to give New York State the consideration required by law.

62. Accordingly, plaintiff lacks standing to bring its claims.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

63. Plaintiff lacks ownership of the Parcels because it did not acquire the Parcels pursuant to an act of the legislature, as required by law.

64. Accordingly, plaintiff lacks standing to bring its claims.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

65. Plaintiff lacks ownership of the Parcels because the purported conveyance thereof was not authorized by the Thruway Authority, as required by law.

66. Accordingly, plaintiff lacks standing to bring its claims.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

67. Plaintiff's claims are barred because Hess has acquired title to portions of the Parcels occupied by the Bulkhead and the land to the east of the Bulkhead by adverse possession, prescriptive easement, practical location, accretion and/or filling in of lands under water.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

68. Plaintiff lacks ownership of the Parcels.

69. Accordingly, plaintiff lacks standing to bring its claims.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

70. Plaintiff's claims are barred by Hess's riparian rights as an owner of uplands adjacent to the Henry Street Basin.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

71. Plaintiff's claims are barred because the Henry Street Basin has always been and continues to be public property intended to be used for public purposes including commerce and navigation.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

72. Plaintiff's claims are barred because plaintiff has no possession of the Parcels.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

73. The purpose of the Bulkhead is to prevent Hess's oil tanks from falling into the Henry Street Basin.  It was not constructed to, and could not, withstand plaintiff's intended use.

74. Defendant reserves the right to assert any and all additional legal and/or equitable affirmative defenses that may become apparent during the course of discovery and trial.

## COUNTERCLAIMS

Hess Corporation ("Hess" or "counterclaim plaintiff"), by and through its attorneys, asserts the following counterclaims against Gowanus Industrial Park, Inc. ("GIP" or "counterclaim defendant"):

## INTRODUCTION

75. Hess brings these counterclaims against GIP for a declaratory judgment that:

  a) GIP lacks title to the Parcels, including but not limited to the Henry Street Basin and the Bulkhead;

  b) GIP is not entitled to use of or access to the Bulkhead;[1] and

  c) Under Articles 5 and 15 of the New York Real Property Actions and Proceedings Law ("RPAPL"), title to the Bulkhead passed to Hess by operation of law, including but not limited to adverse possession.

76. In the alternative, Hess is also seeking a declaratory judgment that Hess possesses the right to exclusive use and maintenance of the Bulkhead and the land to the east of the Bulkhead.

## PARTIES

77. Hess is a Delaware corporation, with its principal place of business in New York City.

78. On information and belief, GIP is a Delaware corporation having its principal place of business at 699 Columbia Street, Brooklyn, New York, 11231.

---

[1] All terms not defined herein shall have the meaning ascribed to them in *GIP I*, 2003 WL 22076651 (E.D.N.Y. Sept. 5, 2003).

## JURISDICTION AND VENUE

79. This court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1333(1), 1367 and 2201.

80. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events giving rise to the counterclaims occurred in this district and that the counterclaim defendant may be found in this district.

## FACTS

**A.   The Bulkhead**

81. On or about June 24, 1977, by Stock Purchase Agreement, Hess acquired all the shares in Ira S. Bushey & Sons, Inc. ("Bushey"), which at that time and for many years prior owned all right, title, and interest in the lands and structures (including petroleum tanks) comprising and along the eastern bank of the Henry Street Basin (the "Brooklyn Terminal").

82. When Hess acquired the Bushey shares, the Henry Street Basin's eastern bank, which Bushey owned, was formed and supported by a bulkhead consisting of wooden pilings sunk into the Henry Street Basin, and in a state of deterioration (sometimes referred to as the "wooden bulkhead").

83. Since June 24, 1977, Bushey has remained a wholly owned subsidiary of Hess.

84. On information and belief, by April 3, 1972, Bushey had erected one oil storage tank. On information and belief, by July 19, 1981, two additional storage tanks were erected nearby. Each of these tanks was on the edge—within ten yards (or less)—of the Henry Street Basin (collectively, the "oil tanks").

85. Since acquiring the Brooklyn Terminal, Hess has used it to unload, temporarily store, and offload oil delivered via the Gowanus Canal and the Henry Street Basin to the Hess Finger Pier.

86. Due to deterioration of the wooden bulkhead and the growing risk of erosion and environmental damage, in or about the early 1980's engineers advised that it was imperative to replace the deteriorating wooden bulkhead with a modern concrete bulkhead so as to ensure the stability of the oil tanks and safeguard against leakage of stored oil and resulting environmental damage or catastrophe.

87. In or about 1985, after study and the application for and grant of all necessary federal, state, and local permits, at Hess's sole cost and expense Hess reinforced the eastern bank of the Henry Street Basin adjacent to the oil tanks with the Bulkhead, a concrete bulkhead engineered to protect the oil tanks' stability and to prevent them from sliding into the Henry Street Basin.

88. The Bulkhead is approximately 30 inches wide, as reflected on a survey dated July 1, 1998 by Bartlett, Ludlam & Dill Associates (Order No. 89008-B), captioned "Title Survey of Property in Red Hook Borough of Brooklyn, County of Kings City and State of New York Made for Amerada Hess Corporation."

89. The Bulkhead was designed, engineered, and constructed for the purpose of replacing the deteriorating wooden bulkhead and thereby preventing the subsidence and erosion of the land upland of the eastern bank of the Henry Street Basin and to guard against an accident to or leakage from the oil tanks. It was not designed, engineered, or constructed, and is not fit, for use by GIP.

90. The land immediately east of the Bulkhead belongs to Hess, by prior sale and deed and, to a small extent, by accretion and/or by filling in land under water that had been undertaken over time by Bushey and/or Hess.

**B.** *GIP I*

91. From colonial times until 1944 and 1945, the Parcels were owned by the State of New York, and were never private property.

92. From 1944 and 1945 until February 26, 1997, the Parcels were owned by the Port Authority, and remained public property.

93. On February 26, 1997, the Port Authority purported to convey the Parcels to GIP by quitclaim deed.

94. On February 14, 2001, GIP sued Hess seeking, *inter alia*, a declaratory judgment that (1) the Bulkhead lay within the Parcels, (2) GIP was the sole and exclusive legal and equitable owner of the Parcels, including the Bulkhead, (3) GIP solely was entitled to use of and access to the Bulkhead, and (4) Hess had no legal or equitable claim to any part of the Basin or the Bulkhead.

95. Judge Glasser granted summary judgment for Hess on all of GIP's declaratory judgment claims, except that he declared that the Bulkhead lay within the Parcels to a small extent. *See GIP I*, 2003 WL 22076551, at *9-11.

96. The Court's judgment was premised in part on its finding that GIP did not own the Parcels because GIP did not obtain title to the Parcels by quitclaim deed from the Port Authority in 1997. *Id.*

97. The Court noted that when the Legislature transferred title to the Parcels to the Port Authority in 1944, it conditioned that title on the requirement that the Port Authority not grant or convey title to the Parcels to any person or legal entity other than the state. *Id.* at *9.

98. The Port Authority's purported conveyance of the Parcels to GIP violated the Legislature's condition that the Port Authority not convey title to the Parcels to any person or legal entity other than the state. Accordingly, the Court found, the conveyance to GIP was a nullity. *Id.*

99. The Court held that a permissible transfer of title from the Port Authority to GIP could only be accomplished by an act of the Legislature, which had not occurred. *Id.* at *9-10.

100. The Court further noted that even if an act of the Legislature were not required for the Port Authority to convey the Parcels to GIP, GIP still could not establish title to the Parcels because only the Thruway Authority would have possessed the authority to approve the transfer of title. *Id.* at *10.

101. The Court cited the Parcels' exemption from all taxation as additional evidence that the Legislature had intended for the Parcels to remain public property. *Id.* at *9.

102. The Court further recognized Hess's status as a riparian owner of the Henry Street Basin, and noted that "a failure to maintain the bulkhead would lead to soil erosion and collapse of the oil tanks. A collapse of such tanks would not only significantly impair Hess's facilities, it could also impair the public's right of access to the [Basin] and other use of waters surrounding the [Basin]. Absent the existence of an alternative proposal . . . the maintenance of some sort of bulkhead seems necessary to prevent such a collapse." *Id.* at *15.

103. Judge Glasser's findings in *GIP I* accurately reflect the law, and in any event are binding on GIP as a matter of collateral estoppel.

11

### C. Post-*GIP I*

104. In the time that has passed since *GIP I* was decided, neither the Legislature nor the Thruway Authority has authorized the transfer of title to the Parcels from public ownership to GIP. Nor has the Thruway Authority followed the procedures required by Canal Law § 50 for abandoning the Parcels/

105. GIP has never been in possession of the Henry Street Basin or the Bulkhead.

106. The Commissioner of General Services did not conduct an auction, accept bids or solicit offers, or provide notice or receive an appraisal before executing the December 2004 letters patent.

107. No appraisal was conducted by or for New York State prior to issuance of the letters patent from New York State to GIP in December 2004.

108. GIP did not at any time, whether in 1997 or subsequently, pay New York State, and New York State did not receive, for sale of the Parcels, an amount equal to or greater than the appraised value of the Parcels.

109. The Parcels have not been abandoned within the meaning and under the procedures required by 1939 N.Y. Laws Ch. 542, Section 50.

110. GIP has never been issued a revocable permit under Canal Law § 100 to use the Parcels.

111. If applicable, the requirements of Public Lands Law § 33 were not satisfied prior to issuance of the December 2004 letters patent by New York State to GIP.

112. If applicable, the 1911 Act [1911 N.Y. Laws Ch. 746] has not been complied with. Section 14 of the 1911 Act prohibited the terminals provided for by the Act from being "sold, leased or otherwise disposed of."

113. The New York State Canal Corporation has not abandoned the Parcels pursuant to §§ 50 and 51 of the Canal Law or any other provision of law, and the preconditions of Public Lands Law § 50 to any conveyance of the Parcels by the Commissioner of Public Services have not been satisfied.

D. **Title to the Bulkhead and Adjacent Land Passed to Hess by Adverse Possession and Accretion and/or by Filling in of Lands Under Water**

114. Hess has a fee simple interest in the Bulkhead, acquired by adverse possession and/or the doctrine of practical location and, with respect to any land east of the Bulkhead but west of the bulkhead line identified by Judge Glasser, by accretion or by filling in over the last century (or more) of lands under water.

115. Starting no later than January 1, 1986, Hess began adversely possessing the Bulkhead by virtue of its open and notorious construction of the Bulkhead under governmental permits, as well as under claim of right pursuant to prior deeds, and its actual, open and notorious, hostile, exclusive, and continuous possession thereof for in excess of the statutory period of 10 years. The accepted property line between Hess's property and the parcel abutting the westerly boundary of Hess' property has been clearly demarcated at all relevant times (for in excess of 10 years) as the Bulkhead, and until GIP's litigation in February 2001 – and after the judgment in that case – was acquiesced in and treated as the true boundary line by the Port Authority and then by GIP.

116. From or very soon after its construction, the Bulkhead has been protected by a substantial enclosure (the Fence) and principally accessible only from Hess's property.

117. At all relevant times, GIP (and GIP's alleged predecessors in interest) had actual notice of the facts set forth in ¶¶ 114-116, above.

13

E. **Title to the Bulkhead Belongs to Hess by Virtue of Hess Having Constructed the Bulkhead at Hess's Sole Cost and Expense**

118. The Bulkhead was designed, engineered and constructed by Hess, at Hess's sole cost and expense, in or about 1985 and 1986, pursuant to all required governmental permits and in the public interest.

F. **Hess Has a Privilege to Continue Any Encroachment of the Bulkhead on the Parcels, Entitling Hess to the Continued Sole and Exclusive Use Thereof**

119. Any encroachment of the Bulkhead on the Parcels is de minimis and has de minimis effect on GIP or any other person having the right to use the Henry Street Basin. By contrast, prohibiting Hess's maintenance and use of the Bulkhead would result in material harm to Hess and its property, the Henry Street Basin, and the public.

120. Hess has a privilege for any encroachment of the Bulkhead on the Parcels, permitting Hess's continued use thereof, by reason of the necessity of Hess's use and maintenance thereof and Hess's interest in the Parcels by virtue of Hess's and the public's riparian rights.

G. **Hess Has a Prescriptive Easement to Exclusive Use of the Bulkhead and the Land to the East of the Bulkhead Along the Easterly Line of the Henry Street Basin**

121. Starting no later than January 1, 1986, Hess began exclusively using the Bulkhead and the land between the Bulkhead and the easterly line of the Henry Street Basin by virtue of its open and notorious construction of the Bulkhead under governmental permits and its actual, open and notorious, hostile, exclusive, and continuous possession thereof for in excess of a period of 10 years. Hess thereby acquired a prescriptive easement for the exclusive use of the Bulkhead and such land.

## COUNT I

### (Declaratory Judgment that GIP Lacks Title)

122. Hess repeats and re-alleges paragraphs 75 through 121 of these counterclaims as if fully set forth herein.

123. GIP does not have title to the Parcels, including but not limited to the Henry Street Basin and the Bulkhead, because neither the Legislature nor the Thruway Authority has authorized the transfer of title to the Parcels to GIP and other legal requirements have not been complied with.

124. GIP has asserted to Hess that GIP is the legal and equitable owner of the Parcels, including but not limited to the Henry Street Basin and the Bulkhead, with the exclusive right to beneficially use and exploit them.

125. In light of the foregoing, there exists a genuine controversy between Hess and GIP concerning the legal and equitable title to the Parcels, including but not limited to the Henry Street Basin and the Bulkhead.

126. Accordingly, Hess is entitled to a declaratory judgment declaring that (a) GIP lacks title to the Parcels, including but not limited to the Bulkhead and any land lying east of it, and (b) GIP is not entitled to use of or access to the Bulkhead.

127. Hess is also entitled to permanent injunctive relief enjoining and restraining GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them and with notice of such injunction, from (a) attempting to eject Hess from the Bulkhead, or (b) interfering or attempting to interfere with Hess's possession and occupancy of the Bulkhead, or (c) using the Bulkhead for any purpose whatsoever without Hess's prior permission.

## COUNT II

### (Adverse Possession)

128. Hess repeats and re-alleges paragraphs 75 through 127 of these counterclaims as if fully set forth herein.

129. This action is brought pursuant to Article 15 of the RPAPL.

130. Starting no later than January 1, 1996—and for in excess of 10 years—Hess possessed the portion of the Parcels occupied by the Bulkhead, the Bulkhead, and the land to the east of the Bulkhead, such possession being hostile and under a claim of right, actual, open and notorious, exclusive, and continuous for the statutory period of 10 years.

131. As a result, title to such portion of the Parcels, including but not limited to the Bulkhead and the land to the east of the Bulkhead, has passed to Hess by adverse possession, pursuant to Article 5 of the RPAPL (as effective at the time title passed by operation of law).

132. Hess is the owner in fee simple and entitled to the possession of the Bulkhead and the land between the Bulkhead and Hess's oil tanks along the Bulkhead.

133. In light of the foregoing, Hess is entitled to a declaration pursuant to Article 15 of the RPAPL that GIP and/or every person claiming under it be barred from all claims to an estate or interest in the portion of the Parcels occupied by the Bulkhead and the land to the east of the Bulkhead, and that possession of and title to the Bulkhead and the land between the Bulkhead and Hess's oil tanks along the Bulkhead be declared to belong solely to Hess.

## COUNT III

### (Declaratory Judgment as to Hess's Ownership and Exclusive Usage Right)

134. Hess repeats and re-alleges paragraphs 75 through 133 of these counterclaims as if fully set forth herein.

135. Hess is the owner of the Bulkhead, which was constructed at Hess's sole cost and expense pursuant to all the permits duly required by law, and/or entitled to exclusive use and possession thereof.

136. GIP has asserted to Hess that GIP is the legal and equitable owner of the Parcels, including but not limited to the Henry Street Basin and the Bulkhead, with the exclusive right to beneficially use and exploit them.

137. Hess is entitled to the continued sole and exclusive use of the Bulkhead by virtue of its ownership of the Bulkhead, or alternatively by reason of having obtained a prescriptive easement to maintain the Bulkhead at its location, or alternatively by reason that any encroachment of the Bulkhead on the Parcels is de minimis and has de minimis effect on GIP, while prohibiting Hess's maintenance and present exclusive use of the Bulkhead would result in material harm to Hess and its property, the Henry Street Basin, and the public.

138. In light of the foregoing, there exists a genuine controversy between Hess and GIP concerning Hess's right to exclusive use and maintenance of the Bulkhead and the land to the east of the Bulkhead.

139. Accordingly, Hess is entitled to a declaratory judgment declaring that Hess owns the Bulkhead and the land to the east of the Bulkhead and/or possesses the exclusive right use and maintain the Bulkhead and the land to the east of the Bulkhead.

140. Hess is also entitled to permanent injunctive relief enjoining and restraining GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them and with notice of such injunction, from (a) attempting to eject Hess from the Bulkhead or the land to the east of the Bulkhead, or (b) interfering or attempting to interfere with Hess's possession and occupancy of

the Bulkhead or the land to the east of the Bulkhead, or (c) using the Bulkhead or the land to the east of the Bulkhead for any purpose whatsoever without Hess's prior permission.

**PRAYER FOR RELIEF**

WHEREFORE, counterclaim plaintiff Hess Corporation respectfully requests entry of judgment in its favor as follows:

141. On Count I of the counterclaims, declaring that GIP lacks title to the Parcels, including but not limited to the Henry Street Basin and the Bulkhead and the land to the east of the Bulkhead, and GIP is not entitled to use of or access to the Bulkhead and such land; and permanently enjoining and restraining GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them and with notice of such injunction, from (a) attempting to eject Hess from the Bulkhead and such land, or (b) interfering or attempting to interfere with Hess's possession and occupancy of the Bulkhead and such land, or (c) using the Bulkhead and such land for any purpose whatsoever without Hess's prior permission.

142. On Count II of the counterclaims, declaration and judgment that GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them be barred from all claims to an estate or interest in the Bulkhead and the land between the Bulkhead and Hess's oil tanks along the Bulkhead; that possession of the same be declared to belong solely to Hess; that GIP be permanently enjoined from entering onto the Bulkhead or the land between the Bulkhead and Hess's oil tanks along the Bulkhead, or damaging, destroying, or otherwise interfering with any of the structures thereon, or otherwise interfering with Hess's use of the Bulkhead or navigation and commerce at its Brooklyn Terminal.

143. On Count III of the counterclaims, declaring that Hess owns the Bulkhead and/or possesses the right to exclusive use and maintenance of the Bulkhead and the land to the east of the Bulkhead, and GIP is not entitled to use of or access to the Bulkhead and such land; and permanently enjoining and restraining GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them and with notice of such injunction, from (a) attempting to eject Hess from the Bulkhead and such land, or (b) interfering or attempting to interfere with Hess's possession and occupancy of the Bulkhead and such land, or (c) using the Bulkhead and such land for any purpose whatsoever without Hess's prior permission.

144. Awarding to Hess its attorneys' fees and costs and disbursements of this action; and

145. Granting such other and further relief as the Court may deem proper.

May 2, 2011

By:   s/ Charles S. Sims

Charles S. Sims
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Attorneys for Defendant
Hess Corporation*