UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
:
GOWANUS INDUSTRIAL PARK, INC.,         :
:
Plaintiff,     :
:  No. 1:10-cv-05522-JG-JO
-against-                              :
:
HESS CORP.,                            :
:
Defendant.     :
-----------------------------------------------------------------x

# MEMORANDUM OF LAW OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK AS AMICUS CURIAE

ERIC T. SCHNEIDERMAN
  *Attorney General of the*
  *State of New York*
BARBARA D. UNDERWOOD
  *Solicitor General*
BENJAMIN N. GUTMAN
  *Deputy Solicitor General*
SIMON HELLER
  *Assistant Solicitor General*
120 Broadway, 25th floor
New York, NY 10271
P: 212-416-8025
F: 212-416-8962
simon.heller@ag.ny.gov

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................ii

BACKGROUND ................................................................................................... 1

ARGUMENT ........................................................................................................ 3

    A.    The Letters Patent Are Not Subject to Challenge in This Litigation Unless They Are Facially Void. ...................... 3

    B.    The Letters Patent Are Facially Valid Because the Property Was Conveyed to GIP in Conformity with the Law Governing Abandoned Canal Lands. .............................. 5

        1.    The property is abandoned canal land. .......................... 6

        2.    The property was properly transferred to GIP through a private sale. ................................................. 10

    C.    Adjudicating the Validity of the Transfer Would Raise Serious Constitutional and Jurisdictional Questions That Should Be Avoided. ..................................................... 11

CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

*Alliance of Am. Insurers v. Chu*,
   77 N.Y.2d 573 (1991) ................................................................................... 9

*City of N.Y. v. Gowanus Indus. Park, Inc.*,
   65 A.D.3d 1071 (2d Dep't 2009) ............................................................... 10

*Dawavendewa v. Salt River Project Agric. Improvement
   & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) ................................................................... 13

*Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel*,
   883 F.2d 890 (10th Cir. 1989) ................................................................... 12

*Fluent v. Salamanca Indian Lease Auth.*,
   928 F.2d 542 (2d Cir. 1991) ...................................................................... 12

*Gowanus Indus. Park, Inc. v. Amerada Hess Corp.*,
   No.01-CV-0902, 2003 WL 22076651 (E.D.N.Y. Sept. 5, 2003) ............. 15

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997) ................................................................................... 14

*Jackson v. Lawton*,
   10 Johns. 23 (N.Y. Sup. Ct. 1813) .............................................................. 4

*New York v. United States*,
   505 U.S. 144 (1992) ................................................................................... 12

*Parmelee v. Oswego & Syracuse RR.*,
   7 Barb. 599 (Sup. Ct. N.Y. Cnty. 1850),
   *aff'd*, 6 N.Y. 74 (1851) ................................................................................ 3

## TABLE OF AUTHORITIES (Cont'd)

**Cases** **Page**

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .................................................................................................. 14

*People v. Clarke*, 10 Barb. 120 (Sup. Ct. Montgomery Cnty. 1850)
  *aff'd*, 9 N.Y. 349 (1853) ........................................................................................... 4

*Raypath, Inc. v. City of Anchorage*,
  544 F.2d 1019 (9th Cir. 1976) ............................................................................. 3-4

*Shannon v. Jacobowitz*,
  301 F. Supp. 2d 249 (N.D.N.Y. 2003) ................................................................. 4-5

*Travelers Indem. Co. v. Household Int'l, Inc.*,
  775 F. Supp. 518 (D. Conn. 1991) ........................................................................ 12

**Statutes**

Ch. 410, 1944 N.Y. Laws 863 ................................................................................. 6, 7

Ch. 542, 1939 N.Y. Laws 1278 ................................................................................... 8

Canal Law § 50 ........................................................................................................... 7

Canal Law § 51 ........................................................................................................... 8

Public Lands Law § 50 ..................................................................................... *passim*

**Other Authorities**

*Message of the Governor in Relation to State Properties Used As Barge
  Canal Terminals in the New York Harbor Area*, 5 N.Y. Legis. Docs.
  No. 39 (1944) ........................................................................................................ 7, 9

By Memorandum filed on April 8, 2011 (Dkt. No. 18), the Court invited the Attorney General of the State of New York to submit a brief addressing questions raised by the Court regarding the transfer of certain parcels of land located in Kings County, including land under water, to Plaintiff Gowanus Industrial Park, Inc. (GIP), "together with any other issues the Attorney General deems relevant to the ownership status of the parcels." Mem. at 5. In general, the Court raised issues concerning "several potential weaknesses in the . . . transfer [of the parcels] from the State to GIP." *Id.* The Attorney General respectfully submits the following brief in response to the Court's invitation. As the Court recognized, *id.* at 15, the State has an interest in the issues presented here both because they involve the interpretation of state statutes and because if the transfer were invalidated, title to the parcels at issue (and perhaps any liability associated with the parcels) would presumably revert to the State.

## BACKGROUND

On December 21, 2004, the State deeded the parcels at issue ("the property") to GIP by letters patent executed by the First Deputy

Commissioner of General Services. The letters patent identify N.Y. Public Lands Law § 50 as their statutory basis, and identify the consideration for the conveyance to be "the sum of One Dollar ($1.00), and other good and valuable consideration paid by" GIP. Dkt. No. 6-3 at 4. The "other consideration" paid for the property includes an indemnification agreement provided by GIP that indemnifies the State from, *inter alia*, liability arising from hazardous or toxic substances, as well as payment of $875,000 in cash—25 percent of the $3.5 million that GIP had agreed to pay for the property in 1997 when it acquired a quitclaim deed from the Port Authority, the property owner at the time.

Defendant Hess Corporation now argues that the letters patent are invalid and that GIP therefore does not own the property and cannot sue Hess for trespassing on it. As set forth below, the letters patent issued by the State to GIP are conclusive as to the ownership of the property in this private lawsuit because they are not void on their face. The letters, which were issued under Public Lands Law § 50, facially comply with that statute's requirements. Although Hess disputes that GIP paid adequate consideration for the property, that

2

does not affect the facial validity of the letters patent and thus is not an issue that this Court can or should reach in this litigation.

## ARGUMENT

### A. The Letters Patent Are Not Subject to Challenge in This Litigation Unless They Are Facially Void.

GIP is the owner of the property unless and until the letters patent are annulled. Under long-standing New York common law, challenges to the validity of letters patent are sharply circumscribed and generally cannot be maintained by a private party like Hess:

> [A]s against a party who shows no color of right in himself, and even when he shows a title from the state, of a junior date to that conveyed by letters patent, such letters, under the seal of the state, are conclusive, until they have been repealed. It is only where the letters patent are *void on their face*, by reason of being issued contrary to law, or when the grant is of an estate contrary to law, as against the prohibition of a statute, that such grant will be held void in a collateral proceeding.

*Parmelee v. Oswego & Syracuse RR.*, 7 Barb. 599, 622 (Sup. Ct. N.Y. Cnty. 1850) (emphasis in original), *aff'd*, 6 N.Y. 74 (1851). In this respect, New York law is identical to federal law, under which "it is well-established that the validity of a deed or patent from the federal

3

government may not be questioned in a suit brought by a third party against the grantee or patentee." *Raypath, Inc. v. City of Anchorage*, 544 F.2d 1019, 1021 (9th Cir. 1976).

The only way for letters patent that are not facially void to be invalidated under New York law is in a suit by the Attorney General. *See People v. Clarke*, 10 Barb. 120, 130 (Sup. Ct. Montgomery Cnty. 1850) (remedy by writ of *scire facias* to vacate letters patent, previously available to "any private person," was removed by section 428 of the code of procedure when new section 433d was enacted authorizing Attorney General to vacate or annul letters patent), *aff'd*, 9 N.Y. 349 (1853); *Jackson v. Lawton*, 10 Johns. 23, 24 (N.Y. Sup. Ct. 1813) (Kent, C.J.) ("Letters patent are matter of record, and the general rule is, that they can only be avoided in chancery, by a writ of *scire facias* sued out on the part of the government, or by some individual prosecuting in its name."). New York law grants the Attorney General the authority "to vacate or annul letters-patent, granted by the people of the state," including "[w]here they were issued . . . through mistake." Public Lands Law § 138. This authority is exclusive. *Cf. Shannon v. Jacobowitz*, 301 F. Supp. 2d 249, 254 (N.D.N.Y. 2003) (statute authorizing state

4

attorney general "to challenge title to a public office" is the "*only* available state law remedy" to challenge the outcome of a state election).

In a private action like this one, by contrast, the letters patent are conclusive proof of ownership unless they are facially invalid. For example, if the letters were not signed by the state official authorized by statute to convey the property, a third party would presumably be entitled to challenge them because the defect would be apparent on the face of the instrument. If, however, the letters facially appear to comply with the relevant statute, the third party could not seek to invalidate them based on some other alleged defect in the process of issuing them, such as an alleged failure to pay adequate consideration.

### B. The Letters Patent Are Facially Valid Because the Property Was Conveyed to GIP in Conformity with the Law Governing Abandoned Canal Lands.

Under the facial-validity standard, the letters patent must be regarded as valid and effective for purposes of this litigation. As explained below, (1) the property is abandoned canal land within the meaning of Public Lands Law § 50, and (2) the requirements of § 50 for transfer of the property through a private sale were facially satisfied.

5

Accordingly, the Attorney General does not address the other questions raised by the Court's Memorandum, all of which assume that the property is not abandoned canal land or that the requirements for a private sale were not satisfied.

### 1. The property is abandoned canal land.

Section 50 applies to two distinct categories of abandoned canal lands: (1) those which "the commissioner of transportation may determine to have been abandoned for such purposes" and (2) those "as to which a determination of abandonment shall have been heretofore made pursuant to law." Public Lands Law § 50. The property at issue here falls within the second category, because a 1944 New York statute made a determination of abandonment as a matter of law.

The 1944 statute was entitled "AN ACT providing for the abandonment of a barge canal terminal and barge canal terminal lands in the city of New York and for their transfer to the port of New York authority, and making an appropriation in connection therewith." Ch. 410, 1944 N.Y. Laws 863. Section 2 of that statute begins: "It is hereby found and determined that the following pier properties (heretofore constituting barge canal terminals and barge canal terminal lands) are

6

no longer necessary or useful as a part of the barge canal system, or as an aid to navigation thereon or for barge canal terminal purposes," and then describes the property transferred to GIP.[1]  *Id.* § 2, 1944 N.Y. Laws at 864-65.  Although the Legislature used the word "abandon" only in the title of the statute and not in the text, the Legislature sufficiently indicated its intent to abandon the property; indeed, the Legislature used language that precisely mirrors the Canal Law's method for abandoning barge canal terminals by special act of the legislature.  *See* Canal Law § 50(1).  Thus, the statutory language quoted above constitutes a "determination of abandonment" of canal lands "made pursuant to law" within the meaning of Public Lands Law § 50.  *See also Message of the Governor in Relation to State Properties Used As Barge Canal Terminals in the New York Harbor Area*, 5 N.Y. Legis. Docs. No. 39 at 4-5 (1944) (committee appointed by Governor "has finally recommended that these terminals in New York Harbor be

---

[1] The Henry Street Basin was added later to the description of property conveyed to the Port Authority.  Ch. 899, 1945 N.Y. Laws 2119, 2121-22.

7

*divorced* from canal operation"; Governor urged the Legislature to enact the committee's recommendation into law (emphasis added)).

The only basis the Court identified upon which one might conclude that the 1944 statute does not bring the property under the purview of § 50 is that "[t]here is no indication in the 1944 Act—except its title—that the legislature intended to displace or circumvent the procedures set out in the Canal Law for the abandonment of canal lands." Mem. at 7. But there is no reason to believe that in enacting procedures by which the *commissioner of transportation* could abandon canal lands, the Legislature intended to tie its own hands by making those procedures applicable to future *legislative* abandonment of canal lands. The procedures contained in the Canal Law as it stood in 1944 for abandonment of canal lands are contained in a statutory provision that expressly applies only to abandonment by "the superintendent of public works," ch. 542, 1939 N.Y. Laws 1278, 1293 (enacting Canal Law § 51); no procedures are specified, there or elsewhere, for abandonment of canal lands directly by legislative enactment. Under basic principles of statutory construction, the Court should avoid construing the Canal Law as it stood in 1939 as binding the action of future legislatures

8

(including the 1944 legislature). *See Alliance of Am. Insurers v. Chu*, 77 N.Y.2d 573, 602-03 (1991) (courts should never assume that Legislature intended to "fetter" its own power in the future). Nor is it surprising that the Legislature established procedures for abandonment of canal lands by administrative action that it did not impose on abandonment by legislative action. Legislative enactments are ordinarily preceded by a process of a very different kind than the process required for administrative action. Here the legislative abandonment of the property was made upon the recommendation of a gubernatorial committee that "carefully studied every possibility open to the State with respect to future policy in the handling of these properties." *Message of the Governor, supra*, at 4.

In summary, the Legislature effectively abandoned the canal lands at issue and was not required to utilize any special language to do so. Thus, the property was and is "abandoned canal lands" subject to Public Lands Law § 50.

9

### 2. The property was properly transferred to GIP through a private sale.

Public Lands Law § 50 authorizes the commissioner of general services to sell abandoned canal lands privately

> for not less than the appraised value thereof to occupants of such abandoned canal lands or owners of adjacent land who have used or improved such abandoned canal lands either under a permit issued pursuant to section one hundred of the canal law or in good faith without knowledge that such canal lands were owned by the state.

Neither the statute nor state regulations define "occupant" for the purpose of this statute, nor do they specify the manner in which the commissioner is to determine the "appraised value" of the land. The commissioner determined that GIP was an occupant of the property because it undertook construction on the property, and that determination was reasonable in light of the fact that GIP received a quitclaim deed to the property in 1997 whose validity was not called into question until this Court's 2003 decision, *See City of N.Y. v. Gowanus Indus. Park, Inc.*, 65 A.D.3d 1071, 1072 (2d Dep't 2009) ("In February 2002 GIP constructed a wall measuring 18 feet in height and 200 feet in length on the northern side of the Basin."). At a minimum,

10

the question of occupancy is not one that can be challenged based on the face of the letters patent.

In addition, the commissioner reasonably determined that the property's value was less than or equal to the value of the indemnification agreement provided by GIP plus the $3,500,000 paid to the Port Authority by GIP, of which the State received 25 percent. *See* Dkt. No. 12 (Exhibit B to letter from Department of Transportation to Port Authority (Feb. 24, 1997)). Here too, while Hess argues to the contrary, a challenge to the valuation cannot be made based on the face of the letters patent.

### C. Adjudicating the Validity of the Transfer Would Raise Serious Constitutional and Jurisdictional Questions That Should Be Avoided.

There are two further reasons why this Court should not accept Hess's invitation to adjudicate the validity of the property's transfer from the State to GIP.

First, even if Hess could collaterally attack the letters patent, and as explained above it cannot, the State would be a necessary—indeed, indispensable—party under Federal Rule of Civil Procedure 19(a), because nullification of the letters patent would leave the State with

11

ownership of the property and all its attendant environmental liabilities. It is well settled that a party to a contract that is the subject of litigation "is the paradigm of an indispensable party." *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991). The State would be prejudiced if it were forced to take title to the property and thereby assume responsibility for it, particularly if the Court's ruling cast doubt on the validity of the indemnification agreement that GIP provided as consideration for the property. *Cf. New York v. United States*, 505 U.S. 144, 176 (1992) (Congress lacks power to instruct "state governments to take title to waste").

The State, however, cannot be joined involuntarily to this suit because of its sovereign immunity. Thus, a suit by a private party such as Hess seeking to challenge the letters patent would have to be dismissed for failure to join a necessary party. *See, e.g., Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (where necessary party has sovereign immunity, claims must be dismissed); *Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) ("In addition to the effect this action would have on the Tribe's interest in the contract, the suit would also

12

effectively abrogate the Tribe's sovereign immunity by adjudicating its interest in that contract without consent."); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1161-63 (9th Cir. 2002) (holding Navajo Nation to be necessary and indispensable party to suit by individual against lessee of lands owned by Nation; dismissal of suit required because Nation enjoys sovereign immunity).

Second, and relatedly, a determination by the Court that invalidated the conveyance of the property to GIP would raise serious concerns under the Eleventh Amendment that should be avoided if possible. For the Court to invalidate the conveyance of the property to GIP, the Court would have to determine either (1) that the property was not abandoned as canal lands because the statute purporting to abandon it was ineffective, or (2) that the letters patent are invalid because the commissioner of general services failed to adhere to the procedures set forth in Public Lands Law § 50. Either determination would have the effect of nullifying an action by the State upon state law grounds with respect to title to state land. It is doubtful that a federal court could do so consistent with the Eleventh Amendment.

13

If Hess Corporation had filed suit in federal court to enjoin the transfer of the property to GIP in 2004 based on state law, the suit would have been barred by the State's Eleventh Amendment immunity for two independent reasons. First, although federal courts may enjoin state officials to comply with *federal* law, they lack the power to enjoin state officials to comply with *state* law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."). Second, such a suit would be "the functional equivalent" of a quiet-title suit, and "would bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 282 (1997). The Eleventh Amendment prohibits such a suit because of the special state sovereignty interests implicated by the exercise of federal court jurisdiction over a State's "lands and waters," *id.* at 287, especially canal lands such as are at issue here.

14

As the Court recognized in an earlier iteration of this dispute, there are "serious constitutional questions under the Eleventh Amendment" raised by an effort to "quiet title completely to land in which the State has an interest." *Gowanus Indus. Park, Inc. v. Amerada Hess Corp.*, No.01-CV-0902, 2003 WL 22076651, at \*7 (E.D.N.Y. Sept. 5, 2003). These concerns should guide and inform the Court's disposition of this case. Just as the Court would not entertain a suit for injunctive relief to bar the conveyance to GIP, so to it should refuse to adjudicate the functionally equivalent question of whether the same state conveyance was properly made under the same state law. Instead, the Court should conclude—consistent with governing New York law—that the letters patent conclusively establish GIP's ownership for purposes of this litigation.

15

## CONCLUSION

For the foregoing reasons, GIP is the owner of the property under the 2004 letters patent.

Dated: New York, NY
       May 13, 2011

                                              Respectfully submitted,

                                              ERIC T. SCHNEIDERMAN
                                                *Attorney General of the*
                                                *State of New York*


                                  By:    /s/ Simon Heller
                                              SIMON HELLER
                                              Assistant Solicitor General

                                              120 Broadway, 25th Floor
                                              New York, NY 10271
                                              (212) 416-8025

BARBARA D. UNDERWOOD
  *Solicitor General*
BENJAMIN N. GUTMAN
  *Deputy Solicitor General*
SIMON HELLER
  *Assistant Solicitor General*
      *of Counsel*