**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GOWANUS INDUSTRIAL PARK, INC.,      :

                                     :       Civil Action No. 10-05522 (JG) (JO)

               Plaintiff,   :

                                     :       **ECF CASE**

    against                      :

                                     :

HESS CORPORATION,                   :

                                     :

               Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE**
**TO THE MEMORANDUM OF LAW OF AMICUS CURIAE**
**THE ATTORNEY GENERAL OF THE STATE OF NEW YORK,**
**<u>AND IN FURTHER SUPPORT OF THE MOTION TO DISMISS</u>**

PROSKAUER ROSE LLP
Charles S. Sims
Eleven Times Square
New York, NY 10036
P: (212) 969-3000
F: (212) 969-2900
csims@proskauer.com
*Attorneys for Defendant*
*Hess Corporation*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.     HESS IS NOT PROCEDURALLY BARRED FROM DEFENDING AGAINST GIP'S CLAIMS BY RELYING ON GIP'S LACK OF GOOD TITLE ......................................... 2

      A.     *GIP I* Necessarily Decided That Hess May Assert GIP's Lack Of Good Title In Defense Against GIP's Claims ............................................. 2

      B.     The Attorney General's Arguments For Precluding Hess's Defense Lack Merit.................................................................................................................... 3

II.    GIP LACKS TITLE TO THE HENRY STREET BASIN AND THE BULKHEAD ....... 10

      A.     GIP Is Collaterally Estopped From Establishing Title Without A Legislative Act ............................................................................................... 10

      B.     Failure Of Compliance With Public Lands Law Section 50 Invalidates GIP's Title.................................................................................................... 10

III.   THE COURT'S ADJUDICATION OF THE VALIDITY OF THE LETTERS PATENT DOES NOT IMPLICATE ANY CONSTITUTIONAL OR JURISDICTIONAL ISSUES .................................................................................... 18

CONCLUSION................................................................................................................... 21

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

C<small>ASES</small>

*Anegada Master Fund, Ltd. v. PXRE Group Ltd.*,
    680 F. Supp. 2d 616 (S.D.N.Y. 2010)....................................................................2

*City of N.Y. v. Gowanus Indus. Park, Inc.*,
    65 A.D.3d 1071 (2d Dep't 2009),
    *appeal denied*, 13 N.Y.3d 716 (2010).................................................................16

*Clare v. Guidi*,
    12 Misc. 2d 807 (Sup. Ct. Erie Co. 1957)............................................................4

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
    276 F.3d 1150 (9th Cir. 2002) .............................................................................20

*Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel*,
    883 F.2d 890 (10th Cir. 1989) .............................................................................20

*Fahnestock v. Office of Gen. Servs.*,
    24 A.D.2d 98 (3d Dep't 1965) ..............................................................................4

*Fluent v. Salamanca Indian Lease Auth.*,
    928 F.2d 542 (2d Cir. 1991).................................................................................20

*Hess v. Port Auth. Trans-Hudson Corp.*,
    513 U.S. 30 (1994)...............................................................................................19

*Jackson v. Lawton*,
    10 Johns. 23 (N.Y. Sup. Ct. 1813) .....................................................................7, 8

*Marba Sea Bay Corp. v. Clinton St. Realty Corp.*,
    272 N.Y. 292 (1936) ..............................................................................................4

*Metromedia Co. v. Fugazy*,
    983 F.2d 350 (2d Cir. 1992)......................................................................2, 10, 21

*Parmalee v. Oswego & Syracuse R.R. Co.*,
    7 Barb. 599 (Sup. Ct. N.Y. Co. 1850),
    *aff'd*, 6 N.Y. 74 ...............................................................................................3, 4, 5

*People v. Clarke*,
    10 Barb. 120 (Sup. Ct. Montgomery Co. 1850),
    *aff'd*, 9 N.Y. 349 (1853)......................................................................................6, 7

*Raypath, Inc. v. City of Anchorage*,
    544 F.2d 1019 (9th Cir. 1976) ...............................................................................5

*Saratoga Cnty. Chamber of Commerce v. Pataki,*
    100 N.Y.2d 801 (2003) .............................................................................................20

*Shannon v. Jacobowitz,*
    301 F. Supp. 2d 249 (N.D.N.Y. 2003) ......................................................................8

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
    162 F.3d 724 (2d Cir. 1998).......................................................................................2


## STATUTES

1911 N.Y. Laws Ch. 746, § 14 ........................................................................................15

1939 N.Y. Laws Ch. 542, §§ 50-52 ................................................................................15

1944 N.Y. Laws Ch. 410, § 12 ........................................................................................15

N.Y. Canal Law §§ 50-51 ...............................................................................................13

N.Y. Laws Ch. 410, § 2 ..................................................................................................13

N.Y. Statutes § 72 (McKinney's 2011) ..........................................................................12

N.Y. Statutes § 123 (McKinney's 2011) ........................................................................13

N.Y. Statutes § 123, cmt. (McKinney's 2011) ...............................................................13

N.Y. Public Lands Law § 33............................................................................................17

N.Y. Public Lands Law § 50................................................................................... passim

N.Y. Public Lands Law § 138............................................................................................7


## OTHER AUTHORITIES

Fed. R. Civ. P. 19(a) .......................................................................................................19

Fed. R. Civ. P. 19(a)(1)(A) .............................................................................................19

Fed. R. Civ. P. 19(a)(1)(B) .............................................................................................19

Defendant Hess Corporation (sometimes "Hess") respectfully submits this memorandum of law in response to the memorandum of law filed by the Attorney General of the State of New York, as amicus curiae, in support of plaintiff Gowanus Industrial Park, Inc. (sometimes "GIP").

## PRELIMINARY STATEMENT

The Attorney General has filed a brief that, unsurprisingly, attempts to salvage the Port Authority's 1997 purported sale of the Henry Street Basin and the Henry Street Pier to GIP (in which the State obtained one-fourth of the sale price), and its subsequent attempt in 2004-2005 to correct the fatal defects previously held dispositive by Judge Glasser. His arguments are meritless.

First, the Attorney General incorrectly contends that Hess is procedurally barred from challenging the validity of letters patent unless they are facially void. That assertion disregards the fact that Judge Glasser has already necessarily held that Hess may assert GIP's lack of good title in defense of GIP's claims—a holding that is binding on plaintiff as a matter of collateral estoppel. Even if that point did not decide the issue, the Attorney General's position is premised entirely on dicta and inapposite cases from the 1850s—and earlier—that offer no support to its argument. (Point I.)

Second, on the merits of the motion to dismiss, the Attorney General's argument that GIP possesses title to the Parcels fails to account for Judge Glasser's holding that a conveyance of the Parcels to GIP could only be accomplished by an act of the Legislature—a holding that, again, is binding on plaintiff as a matter of collateral estoppel. In any event, the letters patent are not facially valid, as they do not reflect compliance with the requirements of Public Lands Law Section 50.[1]  As both this Court and Judge Glasser have recognized, the 1944 statute did *not*

---

[1]   The operative letters patent are annexed to the Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint (Docket No. 6) as Exhibit 1.

make a determination of abandonment as to the Parcels.  And even if the Parcels were abandoned canal land (and they clearly are not), the letters patent are still invalid because the Parcels were not transferred in accordance with Public Lands Law Section 50.  (Point II.)

Third, the suggestion that the Court should abstain from adjudicating the validity of the letters patent because doing so would implicate issues under Fed. R. Civ. P. 19(a) and the Eleventh Amendment is meritless.  New York State is not a necessary or indispensable party under Fed. R. Civ. P. 19(a).  Its choice to not intervene is not a reason not to adjudicate the claims presented by the parties, and in any event there is no Eleventh Amendment issue because a judgment against GIP would not require funds to be paid from the State treasury.  (Point III.)

## ARGUMENT

**I.   HESS IS NOT PROCEDURALLY BARRED FROM DEFENDING AGAINST GIP'S CLAIMS BY RELYING ON GIP'S LACK OF GOOD TITLE**

### A.  *GIP I* Necessarily Decided That Hess May Assert GIP's Lack Of Good Title In Defense Against GIP's Claims

The Attorney General's contention that Hess cannot challenge the letters patent ignores the fact that Judge Glasser has already necessarily held that Hess may assert GIP's lack of good title in defense against GIP's claims, and that determination of an issue of law is binding as a matter of collateral estoppel.  *See GIP I*, 2003 WL 22076651, at *1 (E.D.N.Y. Sept. 5, 2003); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992), *abrogation on other grounds recognized by Anegada Master Fund, Ltd. v. PXRE Group. Ltd.*, 680 F. Supp. 2d 616, 620 n.6 (S.D.N.Y. 2010) (collateral estoppel applies to issues of law necessarily decided); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998) (same).  Indeed, GIP's lack of title, and Judge Glasser's refusal to accept at face value the release and quitclaim from the acting Commissioner of Transportation, was the core basis of Judge Glasser's decision that Hess

2

was entitled to summary judgment on those claims.  *See GIP I*, 2003 WL 22076651, at \*11-12. As held by Judge Glasser (*id.* at \*1),

> However, GIP does not own the property, which by state law cannot be conveyed and in any event cannot be conveyed simply by obtaining a release from a state department that no longer has any responsibility for the property.

That holding, and the disposition of *GIP I* granting Hess's motion for summary judgment against GIP's bulkhead claims, necessarily determined that Hess could assert GIP's lack of good title in defense against claims that were premised on GIP's alleged good title (which underlay to some extent its trespass and declaratory judgment claims).  *See id.*  Because *GIP I* permitted Hess to contest the State's alleged release and quitclaim of its reversionary interest in the Parcels by the acting Commissioner of Transportation in *GIP I*, Hess is similarly entitled to raise a challenge to GIP's title here by reason of the quitclaim of the State's interest by the First Deputy Commissioner of General Services.[2]

### B.  The Attorney General's Arguments For Precluding Hess's Defense Lack Merit

The Attorney General did not address collateral estoppel, and if Hess is correct that *GIP I* already decided that Hess may challenge GIP's ownership, then the Attorney General's contention that Hess may not challenge GIP's title comes much too late and is beside the point. But even if collateral estoppel were somehow inapplicable, the Attorney General's submission that Hess may not challenge GIP's alleged ownership in defense of GIP's claims is meritless.

The principal "authority" the Attorney General relies on is dicta in a New York Supreme Court decision from 1850, *Parmalee v. Oswego & Syracuse R.R. Co.*, 7 Barb. 599 (Sup. Ct. N.Y.

---

[2]   Application of collateral estoppel in this instance is not foreclosed by reason of this Court's Memorandum and Order dated May 13, 2011 (Docket No. 29), which concerned only whether, assuming GIP had good title, collateral estoppel (and res judicata) could be applied to defeat GIP's trespass and nuisance claims.  This Court did not decide whether collateral estoppel could be applied with respect to the determination of GIP's title.

3

Co. 1850), a judgment which the Court of Appeals affirmed on a different ground, 6 N.Y. 74 (1851). The Court of Appeals' disposition was by full opinion, which rested on the different ground that the plaintiffs had no interest whatsoever in the property at issue. Such ancient lower court dicta, not relied upon by the Court of Appeals when it affirms on different ground, and not even mentioned in Judge Foote's opinion for the majority, is entitled to no weight at all, and modern cases entertain challenges to ownership regardless of how conveyed, including by letters patent. *See, e.g., Marba Sea Bay Corp. v. Clinton St. Realty Corp.*, 272 N.Y. 292, 296-98, 303 (1936) (allowing challenge to letters patent over dissent's objection that patent "is not void on its face and cannot be collaterally assailed"); *Fahnestock v. Office of Gen. Servs.*, 24 A.D.2d 98, 99 (3d Dep't 1965) (reviewing, and rejecting on the merits, challenge to validity of transfer by letters patent).

The plaintiffs in *Parmalee*, who succeeded to the rights of licensees who had been permitted for a four year period to manufacture coarse salt on the object property owned by the State and then had held over when their licenses lapsed, brought an ejectment proceeding against the defendant railroad company which later acquired the property. The defendant railroad had obtained letters patent to the property after paying the State the appraised value of the property following an appraisal proceeding and report. *Parmalee*'s holding has nothing to do with whether persons whose own legal rights are harmed by the claims of neighbors can seek to void title if the state issued letters patent in violation of state law.[3] The Court of Appeals carefully set forth the limit of its holding in noting that the plaintiff was simply a former licensee, not an

---

[3]   The statement by the lower court in *Parmalee* (7 Barb. at 622) that the validity of the letters patent could "only be controverted in a direct proceeding to avoid it, by scire facias, or in chancery," casts further doubt on its precedential value. Scire facias was abolished in New York by Section 248 of the Code of Procedure adopted by the Legislature on July 10, 1851. *See Clare v. Guidi*, 12 Misc. 2d 807, 812 (Sup. Ct. Erie Co. 1957). It has also been abolished in federal court by Fed. R. Civ. P. 81(b).

owner or valid claimant at all, and that "[t]he validity of such letters patent cannot be questioned by persons *wrongfully in possession of the lands*." *Parmalee*, 6 N.Y. at 74 (emphasis added).

The Court of Appeals' holding in *Parmalee* was that the title there could not be challenged by plaintiffs who had no colorable claim whatsoever to any property interest in dispute.[4] Hess, by contrast, is defending against claims for trespass, nuisance, and a declaratory judgment that seek to deprive it of a bulkhead that it built a quarter century ago under all necessary federal and state permits (replacing the dilapidated, crumbling prior bulkhead of the prior owner that extended even farther west and had been constructed many decades earlier). *Parmalee* does not hold that a party like Hess—which has distinct riparian rights in the water and the underlying land of the Basin, which is held in trust for the benefit of the public, and which rebuilt the bulkhead at issue to support and secure its oil tanks—is barred from defending on the ground that it owns the property in question, or that at least the plaintiff does not. Nothing in *Parmalee* holds that a party which uses letters patent as a sword is insulated from challenge by its neighbor in a property line dispute where the party's putative title was granted in violation of state statutes and results from the failure, evident on the face of the letters patent, to satisfy the various conditions imposed by the Legislature to the sale of any such property. The Legislature enacts legal provisions such as those at issue here, which either bar a sale to a private party altogether or

---

[4]   *Raypath, Inc. v. City of Anchorage*, 544 F.2d 1019 (9th Cir. 1976), applying Alaska law, which the Attorney General cites, stands for no more than that irrelevant proposition. The owners there of commercial office buildings in Anchorage sought to enjoin a non-profit corporation from constructing an office building in a prime location because the non-profit corporation could command higher rents from its building than the plaintiffs could from their buildings. *Id.* at 1020. Like the plaintiffs in *Parmalee*, the *Raypath* plaintiffs claimed no interest in the property at issue, and affirmatively attacked the defendant's title in an attempt to obtain an injunction and damages. *See id.* at 1021.

heavily circumscribe it, intending them to be actual restraints, not paper barriers that the State officials are free to disregard willy-nilly.

Notably, unlike the plaintiffs in *Parmalee*, Hess does not seek to use the invalidity of GIP's letters patent affirmatively to evict GIP from the Basin; rather, Hess is defending itself against GIP's trespass, nuisance, and declaratory judgment claims on the grounds that GIP lacks title to the Bulkhead on which GIP's trespass claims center. Nor can Hess be dismissed as a trespasser who has no right to use the Bulkhead which it has had possession and use of since its acquisition of the property in 1977 (and which predecessors-in-title of Hess also possessed, used and maintained going back to the 19th century), and riparian and wharfage rights as well, and where the land on which plaintiff's claims are based is important Harbor property to be held in trust for the benefit of the public. As Judge Glasser held, Hess owns the oil tanks on the edge of the Bulkhead which it is supporting, and possesses riparian rights as the owner of uplands adjacent to the Basin. Discovery will show that Hess built the bulkhead with the permission of the U.S. Army Corps of Engineers and the New York State Department of Environmental Conservation. Accordingly, and unlike the plaintiffs in *Parmalee,* Hess has an unequivocal and important interest in the property at issue.

The other cases cited by the Attorney General (Mem. at 4) are equally ancient and unavailing. None of them support the contention (*id.*) that "[t]he only way for letters patent that are not facially void to be invalidated under New York law is in a suit by the Attorney General." Mem. at 4. *People v. Clarke*, 10 Barb. 120 (Sup. Ct. Montgomery Co. 1850), *aff'd*, 9 N.Y. 349 (1853), for example, is entirely inapposite; it was an action by the Attorney General, and the courts held that he lacked power to revoke letters patent issued by the King of England prior to the Revolution, a holding completely inapposite here. *Clarke*, 10 Barb. at 131. In so holding, the court recognized that, under Section 433 of the Code of Procedure, the Attorney General

6

possessed the right to vacate letters patent issued by the State in certain cases involving fraudulent suggestions or concealment of a material fact, where the letters patent were issued in ignorance of a material fact or through mistake, or where the grantee had committed an act in violation of the terms of the grant. *See id.* at 130-31. The Attorney General's right, however—which is now substantially retained as Public Lands Law Section 138—is limited to those specific circumstances (and even in those specific circumstances, nothing in *Clarke*, the Public Lands Law, or any other decision or statute states that the right is exclusive to the Attorney General), which are not applicable here since Hess is claiming that the State has failed to comply with the terms of the authorizing statute (here, the requirements of Public Lands Law Section 50). Neither the Court of Appeals' opinion in *Clarke*, nor the lower court, state that private persons are proscribed from invalidating facially invalid letters patent on the basis of a failure to comply with express terms contained in the authorizing statute. *See generally id.*

*Jackson v. Lawton*, 10 Johns. 23, 24 (Sup. Ct. N.Y. Co. 1813), is equally inapposite. *Jackson* held that a holder of letters patent had priority over the grantee of subsequent letters patent to the same property, and that holding in fact acknowledged that a private individual could maintain an action to overturn letters patent:

> In *Daniel's* case, (*Dyer*, 133. b) the second patentee actually brought a *scire facias* to repeal the prior patent, and I think it would be difficult to assign a good reason why the second patentee should not have the writ. He is better entitled to the writ, because the first patent is the highest evidence of right, and stands good until it be overthrown; and the *onus* of the attack is thrown upon the younger patent.

*Id.* at 25. The court, by Chancellor Kent, also noted that a court of equity would be an appropriate forum for a private party to challenge the grant of letters patent. *See id.* at 26 ("The regular tribunal for [challenging the grant of letters patent] is chancery, founded on a proceeding by scire facias, or by bill, or information."). Finally, Chancellor Kent recognized that the

7

issuance of a letters patent without authority (as Hess alleges occurred here) renders the letters

patent void (*id.* at 26 (emphasis added)):

> If the elder patent in the present case was issued by mistake, or
> upon false suggestions, it is voidable only; and unless letters patent
> are absolutely void on the face of them, *or the issuing of them was
> without authority, or was prohibited by statute*, they can only be
> avoided in a regular course of pleading, in which the fraud, irregu-
> larity, or mistake is directly put in issue.  The principle has been
> frequently admitted, that the fraud must appear on the face of the
> patent, to render it void in a court of law; and that when the fraud
> or other defect arises on circumstances dehors the grant, the grant
> is voidable only by suit. (1 H. & McH. 187, 190; 1 Munf. 134.)

The Attorney General's further assertion that its authority to vacate letters patent under

Public Lands Law Section 138 is "exclusive," Mem. at 4, is ipse dixit, not cited to a single

pertinent authority, and none exists.  As noted *supra*, Public Lands Law Section 138 is

inapplicable here, because Hess asserts not that the letters patent were issued in ignorance of a

material fact or by mistake, but that the plaintiff has failed to satisfy the requirements of Public

Lands Law Section 50, which is the ground relied on in the operative documents and which the

Attorney General agrees is applicable.  *Shannon v. Jacobowitz*, 301 F. Supp. 2d 249 (N.D.N.Y.

2003), an election law case, is even further afield.

Even if Hess were precluded from challenging the validity of letters patent that are

facially valid — and the Attorney General has not cited any authority to support that

proposition—Hess would still be permitted to challenge the validity of GIP's letters patent

because they are facially invalid.  The letters patent here expressly indicate that they are issued

pursuant to Public Lands Law Section 50, a statement that even the Attorney General admits

requires an examination of that statute (Mem. at 5-11), but it is apparent from even a cursory

review of that statute that there has been no compliance with various of the conditions imposed

by Public Land Law Section 50, as to the existence of an appraisal, a price no lower than the

appraised value, an auction after published notice or competitive solicitation of bids, or even an eligible purchaser.  To the contrary, the letters patent expressly state that they were issued for the purpose of correcting the defect in title "created by" Judge Glasser's decision that the 1997 conveyance (for which there had been no appraisal and the State did not obtain the value required by Public Lands Law Section 50) was a nullity.

Nor were they signed by a state official who was authorized to convey the Parcels to GIP. *See* Mem. at 5 (acknowledging that letters patent that "were not signed by the state official authorized by statute to convey the property" are facially invalid).  The letters patent to GIP were issued by the First Deputy Commissioner of General Services, approved as to form by an Assistant Attorney General, and include a certification as to the affixation of the State Seal by the Special Deputy Secretary of State.  Nothing in the letters patent indicates that they were approved by an act of the Legislature, which Judge Glasser held was a prerequisite to any transfer of the Parcels to GIP.  Further, even if a legislative act were not so required, the Commissioner of General Services (or First Deputy) has no authority to convey the Parcels to GIP.  *See GIP I*, 2003 WL 22076651, at  *1, (as noted *supra*, the property "by state law cannot be conveyed and in any event cannot be conveyed simply by obtaining a release from a state department that no longer has any responsibility for the property"); *id.*, at *10 (holding that by law a further legislative act is required to sell the Parcels to private parties, and that even if that proposition were rejected any remaining authority over them was transferred to the Thruway Authority).  Accordingly, even under the Attorney General's characterization of the law, GIP's letters patent are not facially valid and therefore subject to challenge by Hess.

Finally, the Attorney General's position raises serious due process concerns.  It is fundamental that Hess cannot be deprived of its property interests without due process of law. Hess's property interests, including the bulkhead it constructed and its oil tanks, are secured by

9

provisions of state law that preclude transfer of the land under the Henry Street Basin without a legislative act and compliance with various statutory limitations.  If the courts are precluded from enforcing those laws and giving them effect, then the deprivation of property without due process is precisely what will have occurred.

## II.   GIP LACKS TITLE TO THE HENRY STREET BASIN AND THE BULKHEAD

### A.  GIP Is Collaterally Estopped From Establishing Title Without A Legislative Act

The Attorney General's contention that GIP possesses title to the Parcels neither mentions nor contends with Judge Glasser's holding that a permissible transfer of the title to the Parcels to GIP could only be accomplished by an act of the Legislature, and in any event by the Thruway Authority, not the Commissioner of General Services.  *GIP I*, 2003 WL 22076651, at *9-10.  Although the Attorney General refrains from addressing Judge Glasser's holding, it is nonetheless binding between the parties as a matter of collateral estoppel.  *See Metromedia Co.*, 983 F.2d at 365.  GIP's inability to demonstrate both that it acquired the Parcels pursuant to a legislative act, and the signature of the Commissioner of General Services and not of the Thruway Authority, preclude it (and the Attorney General) from establishing that the 2004 conveyance was valid.

### B.  Failure of Compliance With Public Lands Law Section 50 Invalidates GIP's Title

The Attorney General's argument says that the letters patent are facially valid under Public Lands Law Section 50, but never explains why that could be so or why the opposite is not obviously the case.  Its own authority establishes that this lack of facial validity is actionable.  *See, e.g., Jackson*, 10 Johns. at 26 (suggesting that even then review was permissible if letters patent are "void on the face of them, *or the issuing of them was without authority, or was prohibited by statute*") (emphasis added).

10

Since the 2004 letters patent themselves purport to be issued "pursuant to Section 50 of the Public Lands Law," they are not facially valid unless they reflect compliance with the requirements of Public Lands Law Section 50 – and they do not.

### 1. The Parcels Are Not Abandoned Canal Land

Public Lands Law Section 50 permits the Commissioner of General Services to conduct a private sale of the State's interest in real property acquired for canal purposes "as to which a determination of abandonment shall have been heretofore made pursuant to law."  N.Y. Public Lands Law § 50.  The Attorney General's argument points to no such "determination," and its argument that requirements of Public Lands Law Section 50 were satisfied is premised on the erroneous notion that the 1944 statute itself made the requisite "determination of abandonment as a matter of law," Mem. at 6, an argument which is insupportable.

Judge Glasser and Judge Gleeson have both recognized that the 1944 statute did not make a determination of abandonment as to the Parcels.  This specific issue was thoroughly argued in *GIP I*, with Judge Glasser holding that the 1944 statute had not made a determination of abandonment:  "Since by law the Gowanus Bay Terminal *was canal land*, any remaining authority over the land was transferred to the Thruway Authority [in 1992]."  *GIP I*, 2003 WL 22076651, at *10 (emphasis added).  In addressing GIP's argument that the 1944 statute had made a determination of abandonment, Judge Glasser pointedly noted that "*If* GIP is correct" as to the determination of abandonment issue, then the Department of Transportation would not have had authority to release the State's interest in unappropriated state lands.  *Id.* at *11 (emphasis added).  Judge Glasser's consideration of the implications of GIP's argument was just that; an exploration of a hypothetical, not a reversal of his holding that the Parcels were canal land.  *See id.* at *10-11.  *See also id.* at *3 (interpreting Section 8 of the 1944 statute as providing

11

that "[i]f the property [were to] revert[] to New York, it would become unappropriated state land *rather than part of the barge canal system*) (emphasis added).

Judge Gleeson has similarly recognized that the 1944 statute did not make a determination of abandonment as to the Parcels.  *See* Memorandum Inviting *Amicus Curiae* Brief From the Attorney General of New York State, Docket No. 18 at 7 ("But the 1944 Act alone did not satisfy the procedures for abandoning canal lands prescribed by the Canal law at that time."); *see also id.* at 12 n.6 ("However, as discussed above, the parcels do not seem to qualify as abandoned canal lands").  Judge Glasser's and Judge Gleeson's findings on this point are binding here under collateral estoppel and well-settled principles of statutory construction.  *See, e.g.*, N.Y. Statutes § 72 (McKinney's 2011) ("Generally, a judicial interpretation of a statute, having once been made is binding on subsequent courts in accordance with the rule of stare decisis and the doctrine of precedents, so that the interpretation becomes as much a part of the enactment as if incorporated into the language of the act itself.").

Examination of the 1944 statute confirms Judge Glasser's and Judge Gleeson's respective interpretations.  First, nothing in the body of the 1944 statute makes a determination of abandonment.  Specifically, Section 2 of the statute only provides a finding that the property "(heretofore constituting barge canal terminals and barge canal terminal lands) are no longer necessary or useful as a part of the barge canal system, or as an aid to navigation thereon or for barge canal terminal purposes . . . ."  That language does not effect a determination of abandonment.  Certainly, if the Legislature had desired to make a determination of abandonment, it would have been easy enough for it to have said so, in Section 2 or anywhere else in the statute.  It did not.

The Attorney General's argument that the language in Section 2 "precisely mirrors the Canal Law's method of abandoning barge canal terminals by special act of the legislature,"

12

Mem. at 7, does not support its position, because such language still makes no determination of abandonment; instead, it merely provides that the Gowanus Bay canal lands were "no longer necessary or useful as a part of the barge canal system, or as an aid to navigation thereon or for barge canal terminal purposes." *See* 1944 N.Y. Laws Ch. 410, § 2. As Judge Gleeson previously noted, that determination satisfies only one of the prerequisites for the abandonment of canal lands pursuant to the Canal Law. *See* Docket No. 18 at 6. In order for abandonment to occur, the second requirement of Section 50 of the Canal Law must be met: the canal corporation must issue a formal order of abandonment, which could only be accomplished once the notice, invitation to comment, and hearing requirements of Section 51 of the Canal Law were satisfied. *See* N.Y. Canal Law §§ 50-51. Nor does it make sense that the Legislature made the determination of abandonment and yet also provided that the property would be immune from taxation.

The Attorney General's further contention that the title of the 1944 statute indicates that a determination of abandonment was made is similarly unavailing. New York law clearly prescribes that "[t]he title of a statute may be resorted to as an aid in the ascertainment of the legislative intent only in case of ambiguity in meaning, and it may not alter or limit the effect of unambiguous language in the body of the statute itself." N.Y. Statutes § 123 (McKinney's 2011).[5] The argument that the title of the 1944 statute should inform this Court's interpretation

---

[5]   As McKinney's comment correctly summarizes the law, "If the legislative intent, as expressed in a statute, is clear and unambiguous the title is not to be considered in its interpretation. While a title may help clarify or point the meaning of an imprecise or dubious provision, it may not alter or limit the effect of unambiguous language in the body of the statute itself; and the substance of a plain act can be neither extended nor restricted by the language of the title. The text of a statute takes precedence over its title, and the character of a statute is determined by its provisions rather than its title." N.Y. Statutes § 123, cmt. (McKinney's 2011).

13

thereof ignores that basic rule without any basis for doing so.  As the statutory text of the 1944 statute is unambiguous, the title of the statute may play no role in its interpretation.  *See id.*

Nor does *Message of the Governor in Relation to State Properties Used As Barge Canal Terminals in the New York Harbor Area*, 5 N.Y. Legis. Docs. No. 39 (1944) (the "Message"), warrant a different result.  The Attorney General reads the committee's recommendation that the terminal lands in New York Harbor be "divorced from canal operation" as if they represented a recommendation that the lands be removed from the canal system.  The Message directed that the Port Authority "operate and accept" the terminal lands because the State had incurred economic problems as a result of costs associated with the maintenance and repair of those lands.  *See id.* at 3-5.  A recommendation that the Port Authority operate the terminal lands is entirely distinct from a recommendation that those lands be removed from the canal system.  Nothing in the Message indicates an intent to remove the lands from the canal system, the immunity from taxation suggests otherwise, and the Governor expressly reserved the possibility that the lands "would revert to the State in the event it should be necessary . . . for the Port Authority to relinquish their operation as harbor terminals."  *Id.* at 4.

Nor is there merit to the argument that the Canal Law should not be interpreted as providing the only means through which the Parcels could be abandoned because doing so would unduly restrict future legislative abandonment of canal lands.  Mem. at 8.  The fact that Section 50 of the Canal Law presently governs the abandonment of canal land does not proscribe a future legislature from changing or repealing that provision, or otherwise from determining to abandon canal lands.  Indeed, Public Lands Law Section 50 expressly recognizes that a future legislature may make such a determination.  *See* N.Y. Pub. Lands Law § 50.  Judge Glasser's prior holding is not that the hands of the Legislature are in any way tied, but simply that the present law (as enacted in 1944 and 1945) is that the Henry Street Basin is immune from sale by any state

14

agency at all (and immune from taxation as public property), and in any event by any agency other than the Thruway Authority. The Attorney General's admonition about "binding the action of future legislatures" (Mem. at 8) is a red herring.

Although the Parcels are not abandoned canal lands, they are subject to the restrictions of the 1911 statute and the provisions of the Canal Law if their purported conveyance in 2004 to the State, as Judge Gleeson suggests (Docket No. 18 at 13-15), rendered the 1944 statute a nullity. The 1944 statute itself evidenced an intent to have the Parcels maintained as "transportation and terminal facilities" for the benefit of the public, 1944 N.Y. Laws Ch. 410, § 12, directed that the Parcels remain tax free, and forbade the Port Authority from transferring them into private hands or using them in a manner that would compromise their use for pier and terminal purposes. *Id.* §§ 3(a), (b), (d), 13. Further, by tracking the language of Section 50 of the Canal Law, the drafters of Section 2 of the 1944 statute made plain that the abandonment of canal lands requires more than just a declaration that the lands are no longer necessary or useful—some subsequent action was required to effect abandonment. No such subsequent action was ever taken with respect to the Parcels. As the 1944 statute preserved the Parcels as part of the canal system, the 2004 conveyance of the Parcels to the State was governed by (and the Parcels remain subject to) the 1911 statute and the Canal Law. *See* 1911 N.Y. Laws Ch. 746, § 14; 1939 N.Y. Laws Ch. 542, §§ 50-52.

> **2.      Even If The Parcels Were Abandoned Canal Land, They Were Not Transferred In Accordance With Public Lands Law Section 50**

Even if the Parcels were abandoned canal land, and even if the Attorney General needed only to show facial (rather than actual) compliance with Public Lands Law Section 50 to satisfy the facial validity doctrine, the Attorney General's argument still fails because it cannot demonstrate even facial compliance. Indeed, although the Attorney General argues that it need

15

only show a sale to an "occupant" under Public Lands Law Section 50 for an amount "not less than the appraised value" of the Parcels, *see* Mem. at 10-11, it cannot satisfy even those standards.

First, the Attorney General asserts that the letters patent facially satisfy the "occupant" requirement of Public Lands Law Section 50 because "[t]he commissioner determined that GIP was an occupant of the property because it undertook construction on the property . . . ." Mem. at 10. Neither the Findings of Fact of the First Deputy Commissioner (the "Findings of Fact"), the letters patent, or the indemnification agreement says—let alone determines, as claimed by the Attorney General—that GIP was an occupant of the Parcels or undertook any construction thereon.[6] Instead, those documents note only that the 2004 conveyance was intended to correct the title defect that Judge Glasser identified in *GIP I*. The Attorney General's further assertion that "[a]t a minimum, the question of occupancy is not one that can be challenged based on the face of letters patent," Mem. at 11, betrays the weakness of its position, as it is unable to muster a single citation to support that proposition.

GIP's construction of a wall on the northern side of the Basin in 2002, Mem. at 10, likewise fails to support an assertion that GIP was an "occupant," because GIP was specifically ordered to remove that wall in *GIP II. See City of N.Y. v. Gowanus Indus. Park, Inc.*, 65 A.D.3d 1071 (2d Dep't 2009), *appeal denied*, 13 N.Y.3d 716 (2010).[7] Just as in *GIP I*, plaintiff's

---

[6] Moreover, the Attorney General's contention that "the commissioner determined that GIP was an occupant of the property because it undertook construction on the property, and that determination was reasonable in light of the fact that GIP received a quitclaim deed to the property in 1997 whose validity was not called into question until this Court's 2003 decision," Mem. at. 10, is nonsensical.

[7] Furthermore, the wall at issue was a wall or fence built atop an existing bulkhead close to the northern boundary between the land of the Basin and the City's park (*see* Judge Miller's lower court decision at 20 Misc.3d 1110(A), 867 N.Y.S. 373, *1); it was not itself sunk into the lands under the Basin, and as such does not constitute an act by GIP to occupy the Basin.

Amended Complaint makes no allegation that plaintiff possesses (or has ever possessed) the

Parcels.  Counsel for plaintiff reinforced that lack of possession at oral argument before this

Court on defendant's motion to dismiss the Complaint:

> Let's start on the possession argument he [counsel for defendant]
> just made.  The judge [Judge Glasser] went into possession [in *GIP
> I*] because he said even if you don't have ownership, if you have
> actual use then you might be able to establish a trespass claim.  In
> this case our argument is we have actual ownership so therefore we
> don't need possession.

Transcript of Oral Argument (March 29, 2011) at 10:23-11:03, Docket No. 21.  Finally, the

Attorney General's argument that Public Lands Law Section 50 was facially satisfied completely

ignores the section of the statute that provides that "[t]he commissioner . . . may sell and convey

such abandoned lands in the same manner and with the same direction as he may sell and convey

unappropriated state land pursuant to [Public Lands Law Section 33]."  N.Y. Pub. Lands Law §

50.  As this Court has noted, to convey abandoned canal lands, the Commissioner generally must

follow the procedures set forth in Public Lands Law Section 33, which require the Commissioner

to sell the property by action or sealed bids after setting a minimum price and giving a published

notice, or by competitive solicitation of offers once he has satisfied the notice and minimum sale

price and appraisal requirements under the statute.  Docket No. 18 at 8-9 (citing N.Y. Pub. Lands

Law § 33).  The Attorney General does not even attempt to argue—nor could it—that the

requirements of Public Lands Law Section 33 were facially satisfied here.

The Attorney General's argument that the State conveyed the Parcels to GIP for an

amount "not less than the appraised value thereof," *see* Mem. at 10, and that the Commissioner

made a determination of that value, *see* Mem. at 11, is similarly baseless; no such conclusion can

be drawn from the Letters Patent, or from any other evidence, which directly contradicts the

claim, and there is nothing in the documents to even hint at any such determination as having

been made.  The letters patent and Findings of Fact show that the only motivation for the 2004

conveyance was to correct the title "defect" reflected in Judge Glasser's opinion.  The documen-

tation establishes that the State never received more than one-fourth of the sale price in 1997,

and no additional payment in 2004, and there is no evidence whatever of any attempt at

appraisal.  Neither the Findings of Fact, the letters patent, or the indemnification agreement

supports any other view, or provides any support for a claim otherwise.  In fact, the Findings of

Fact explicitly provide that "*No additional consideration will be paid as part of this corrective

transaction*", thereby evidencing that the First Deputy Commissioner placed no value whatso-

ever on the indemnification agreement (which after all was given by what in all likelihood was a

single purpose corporation formed just to hold the property without any personal guaranty—it

was formed just two days before the 1997 deed to GIP).  Findings of the First Deputy

Commissioner of General Services (Dec. 15, 2004) (emphasis added).  Furthermore, if GIP's

payment to the Port Authority of $3,500,000 in 1997 were intended to be for an amount

anywhere near the then-appraised value of the Parcels (and there was no appraisal), there is no

basis (and it defies mathematical logic) for deeming $875,000 in 1997 (25% of $3,500,000) plus

the unknown and speculative value of the indemnification agreement from a single purpose

corporation, which the First Deputy Commissioner assigned no value to, to be "not less than the

appraised value" of the Parcels in 2004.

### III.  THE COURT'S ADJUDICATION OF THE VALIDITY OF THE LETTERS PATENT DOES NOT IMPLICATE ANY CONSTITUTIONAL OR JURISDICTIONAL ISSUES

The Attorney General's assertion that this Court's adjudication of the validity of the

letters patent would "raise serious constitutional and jurisdictional questions that should be

avoided" is unfounded.  Mem. at 11.  First, the State is not a necessary or indispensable party

under Fed. R. Civ. P. 19(a).  Fed. R. Civ. P. 19(a)(1)(A) provides that a party is required to be

18

joined to an action if "in that person's absence, the court cannot accord complete relief among existing parties." The State does not qualify as a required party under that standard because its presence is not necessary for this Court to accord complete relief between GIP and Hess on GIP's trespass, nuisance, and declaratory judgment claims. Dismissal of GIP's claims with prejudice can plainly be ordered in the absence of the State as a party.

The State also fails to qualify as a required party under Fed. R. Civ. P. 19(a)(1)(B), which provides that a party is required to be joined if:

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

New York State can plainly protect its interests however the Court rules here, and neither the State, Hess or GIP is faced with "substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . . ." The State is fully capable of protecting the Parcels in the event that the Parcels are restored to the State—just as it ably did for the hundreds of years in which it previously owned them.

The Attorney General's warning that the Court's adjudication of the validity of the conveyance "would raise serious concerns under the Eleventh Amendment" is a red herring. As noted *supra*, adjudication of GIP's trespass and nuisance claims would have no bearing on the State, and the Court can accord complete relief between GIP and Hess by dismissing GIP's declaratory judgment claims with prejudice. Such an adjudication would not trigger any Eleventh Amendment concerns, because a finding that the letters patent were invalid would not impose any burden on the State's treasury. *See, e.g., Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 49 (1994) (recognizing that whether a judgment would be paid from the state

19

treasury "is the most important factor to be considered" in weighing the availability of sovereign immunity "and, in practice" carries "dispositive weight" in the calculus). Accordingly, the Attorney General's citations to *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002), *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542 (2d Cir. 1991), and *Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890 (10th Cir. 1989), are inapposite, as in *Dawavendewa* and *Fluent* the parties that claimed sovereign immunity each faced substantial financial exposure, and in *Enterprise*, the invalidation of certain bingo contracts was supported by the Indian Tribe because of the financial implications for the Tribe. In any event, the New York Court of Appeals declined to follow *Dawavendewa* and *Enterprise* in *Saratoga County Chamber of Commerce v. Pataki*, 100 N.Y. 2d 801, 821 n.9 (2003).[8]

Moreover, in *GIP I*, Judge Glasser acknowledged the very Eleventh Amendment concerns cited by the Attorney General here, and still determined that he could render judgment limited to Hess and GIP:

> Accordingly, it should go without saying that any judgment is limited to the parties before the Court and does not adjudicate the rights of the State of New York or the Port Authority. *See Tindal v. Wesley*, 167 U.S. 204, 223, 17 S.Ct. 770, 42 L.Ed. 137 (1897) (holding that despite judgment between private individuals, "it will be open to the State to bring any action that may be appropriate to establish and protect whatever claim it has to the premises in dispute").

---

[8]   Hess is not seeking to sue the State; Hess has merely raised GIP's lack of good title as a means of defending itself against GIP's trespass, nuisance and declaratory judgment claims. Hess's assertion that the letters patent are invalid—due to lack of compliance with the statutes that govern conveyance of the Parcels to a private party—is no different from a claim as to the invalidity or unconstitutionality of a statute, as to which sovereign immunity has no application. The Attorney General's discussion of the reasons why Hess would allegedly be "barred" by the Eleventh Amendment from "fil[ing] suit in federal court to enjoin the transfer of the property to GIP in 2004 based on state law," Mem. at 14, is irrelevant, as Hess has filed no such suit. Neither party to this suit sought to implead the State or assert claims against it.

*GIP I*, 2003 WL 22076651, at *7.  Judge Glasser's determination not only accurately reflects the law, but is binding on plaintiff as a matter of collateral estoppel.  *See Metromedia Co.*, 983 F.2d at 365.

## CONCLUSION

For the foregoing reasons and those set forth in Hess's moving papers, the Court should dismiss with prejudice plaintiff's claims for declaratory judgment, trespass and nuisance to the extent they rely on plaintiff's allegation that it possesses title to the Parcels,

(1)   on the grounds that *GIP I*'s holding that such title would require an act of the Legislature, and in any event a decision of the Thruway Authority rather than the Office of General Services, is binding as a matter of collateral estoppel, and thus requires dismissal of GIP's claims;

(2)   or in the alternative, on the grounds that GIP does not in any event have good title to the Bulkhead (or indeed any of the land under water), based on the failure of the letters patent GIP relies on to satisfy the conditions imposed by law.


May 27, 2011
New York, New York

Respectfully submitted,

PROSKAUER ROSE LLP

By:   /s  Charles S. Sims
   Charles S. Sims
   Eleven Times Square
   New York, NY 10036-8299
   (212) 969-3000

   *Attorneys for Defendant*
   *Hess Corporation*

21