UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

GOWANUS INDUSTRIAL PARK, INC.

           Civil Action No.:
           10-05522 (JG) (JO)

        Plaintiff,

    -against-       **AFFIRMATION OF**
             **JOSEPH N. PAYKIN**
             **IN SUPPORT OF**
             **GOWANUS INDUSTRIAL**
HESS CORP.,         **PARK, INC'S MOTION FOR**
             **SUMMARY JUDGMENT**

        Defendant.
-------------------------------------------------------------------X

JOSEPH N. PAYKIN, an attorney duly admitted to practice in the courts of the State of New

York, affirms the following under the penalty of perjury:

1.   I am a member of Hinman, Howard & Kattell, LLP, counsel to Plaintiff  Gowanus

   Industrial Park, Inc. ("GIP"), and as such, am fully familiar with the facts set forth in

   this affirmation.

2.   Attached hereto as Exhibit 1 is a copy of  Complaint dated November 29, 2010.

3.   Attached hereto as Exhibit 2 is a copy of Amended Complaint dated April 5, 2011.

4.   Attached hereto as Exhibit 3 is a copy of the Answer and Counterclaims dated May 2,

   2011.

5.   Attached hereto as Exhibit 4 is a copy of Reply to Counterclaims dated May 23,

   2011.

6.   Attached hereto as Exhibit 5 is a copy of Memorandum of Law of the Attorney

   General of the State of New York as Amicus Curiae.

WHEREFORE, I respectfully request that this grant Gowanus Industrual Park, Inc.'s motion for summary judgment in its entirety, and for such other, further and different relief this Court deems just and proper.

Dated: New York, New York
     July 13, 2011

Hinman Howard & Kattell, LLP

By: Joseph N. Paykin, Esq.
*Attorney for Plaintiff*
  *Gowanus Industrial Park, Inc.*
185 Madison Ave, 7th Floor
New York, New York 10016

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

GOWANUS INDUSTRIAL PARK, INC.,

Index No.: 10  5522

                              Plaintiff,

                                                    COMPLAINT

          vs.

AMERADA HESS CORP.,

                              Defendant.

          Plaintiff Gowanus Industrial Park, Inc. by and through its attorneys Hinman

Howard & Kattell, LLP as and for its complaint against Amerada Hess Corp. alleges as

follows:

          1.     Plaintiff Gowanus Industrial Park, Inc. ("GIP") is a foreign corporation

authorized to do business in the State of New York, with its principal place of business

located in Brooklyn, New York.

          2.     Upon information and belief, defendant Amerada Hess Corporation is a

foreign corporation organized and existing under the laws another State of the United

States with its principal place of business located at 1 Hess Plaza, Woodbridge,

New Jersey. Defendant owns a parcel of property which is contiguous with the eastern

border of plaintiff's (Henry Street Basin) property line, which defendant uses for the

storage and point of shipment of petroleum products.

          3.     This court has jurisdiction over the subject matter of this action because

this is an admiralty and maritime claim within the jurisdiction of the United States District

Court, within the meaning of 28 U.S.C. § 1333(1) and Rule 9(h) of the Federal Rules of

Civil Procedure, and is also a claim for declaratory judgment pursuant to 28 U.S.C.

§ 2201, brought for the purpose of determining an issue of actual controversy between the parties, as more fully set forth below. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on the diversity of the citizenship of the parties, and the fact that the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and pursuant to the principle of supplemental jurisdiction under 28 U.S.C. § 1367.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c) in that a substantial part of the events giving rise to the claim occurred in this district and in that the defendant may be found in this district.

5.      This Court has personal jurisdiction over the defendant in this action by virtue of the fact that they are present in this State, are doing or transacting business here, and have committed acts and omissions, which, as described herein, have caused and continue to cause plaintiff grave harm in this State.

6.      In 1997, GIP acquired certain parcels ("Parcels") of land located in Brooklyn New York, which include a rectangular piece of land currently underwater known as the Henry Street Basin pursuant to a quitclaim deed ("Quitclaim Deed") from the Port Authority of New York, New Jersey.

7.      On its Westerly side, the Henry Street Basin abuts a parcel owned by GIP, on its Northerly side the Henry Street Basin abuts a two foot bulkhead (the "Bulkhead") owned by GIP, on its Easterly side the Henry Street Basin abuts a bulkhead owned by GIP, and on its Southerly side the Henry Street Basin abuts the Gowanus Bay.

8.      In 2003, Judge Leo B. Glaser found the Quitclaim Deed to be invalid. Gowanus Industrial Park v. Amerada Hess Corp., 2003WL22076641 (SDNY 2003) hereinafter referred to as the "First Hess Action".

9.      On April 1, 2005, in order to remedy the failure of title, the State of New York conveyed the Parcels to GIP by letters patent ("Letters Patent").

10.     Subsequent to the issuance of the Letters Patent The Supreme Court of the State of New York, County of Kings has found GIP to be the valid owner of the Parcels in an action captioned, The City of New York v. Gowanus Industrial Park, Inc., Index No. 19083/05.

11.     The property to the east of the Parcels is owned by defendant Hess.

12.     The Bulkhead runs in a straight line from the north end of the Basin 210 feet southerly at a distance of 5'81/2" west from the bulkhead line extending to a distance of 5'103/4" west.  The Bulkhead continues southerly for 318 more feet, running a distance of 6'1" west of the bulkhead line before reducing to 1 1/4" and then finally 1 inch west of the bulkhead line for the remaining 53 feet before making a ninety degree turn east.

13.     In the First Hess Action, Justice Glasser held that the Bulkhead lies squarely within the Henry Street Basin and therefore the Parcels.

14.     Hess has constructed both a fence ("Fence") and piping ("Piping" collectively referred to with the Fence as the "Obstructions") on top of the Bulkhead.

15.     The Obstructions were built without the permission of GIP.

16.     Despite due demand, Hess has failed and refused to remove the Obstructions.

3

17.    The Obstructions interfere with GIP's rights to use its property both atop and adjacent to the Bulkhead.

### As and For a First Cause of Action for Private Nuisance

18.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "17" above as if fully set forth at length herein.

19.    The Obstructions prevent plaintiff from utilizing its property; the Fence precludes access from the water; and the Piping prevents storage of material.

20.    The Fence, by its nature -- precludes passage -- shows Hess's clear intent to deprive plaintiff of access to its own  property.

21.    The Fence is unreasonable in character as its sole purpose is to keep GIP or its assigns from GIP's property, when the Fence could be located back on the property line so as to prevent GIP or its assigns access to Hess' property.

22.    The Obstructions interfere with GIP's ability to use and enjoy its property.

23.    The Obstructions are a direct result of Hess's conduct.

24.    By reason of the Hess's private nuisance, plaintiff has been damaged by its inability to use its property in an amount in excess of $500,000 with the precise amount to be determined at trial.

### As and For a Second Cause of Action for Trespass

25.    Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "24" above as if fully set forth at length herein.

26.    Hess intentionally placed the Fence and Piping on GIP's property.

27.     The placement of the Fence and  Piping constitutes a trespass by Hess on GIP's property.

28.     Upon its purchase of the Parcel, plaintiff gave notice to defendant that defendant was entered upon, occupying and benefiting from plaintiff's property.

29.     On June 24, 2008, GIP sent a demand to Hess to remove the Fence and piping.

30.     Hess failed and refused to honor such demand. To wit: it failed and refused to refrain from using the Bulkhead and from exercising dominion and control thereof.

31.     The conduct and acts of defendant and its agents, servants and/or employees, constitute a continuing trespass on the Parcel.

32.     Plaintiff has been damaged by Hess' trespass because it has been unable to use the portion of the Parcel with the Obstructions.

33.     As a result of the forgoing, plaintiff is entitled to the immediate and exclusive use, possession and control of GIP's property and the Bulkhead.

34.     Unless defendant, its agents, servants, contractors and employees and each and every one of them be forever, and during the pendency of this action, preliminarily and permanently enjoined from entering, intruding or otherwise trespassing upon the Parcel and the Bulkhead, plaintiff will be irreparably harmed.

35.     Such damage is an amount in excess of $500,000, with the precise amount to be determined at trial.

36.     By reason of the foregoing, plaintiff is entitled to a judgment in the amount of $500,000, as well as an order directing Hess to remove the Fence and Piping from the Parcel.

### As and for a Third Cause of Action for Declaratory Judgment

37.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "36" above as if fully set forth at length herein.

38.     The Fence and Piping are wrongfully constructed on GIP's property.

39.     GIP has requested Hess to remove the Fence and Piping and despite such demand, Hess has refused to remove either the Fence or the Piping from GIP's property.

40.     In view of the foregoing, it is desirable and necessary that a judicial determination be made establishing the identity of the party that has legal and equitable title to the Bulkhead, free and clear of all claims by any other party of rights to the Bulkhead by virtue of a claim of legal title, adverse possession, prescriptive easement, or any other legal or equitable principle.

41.     Plaintiff has no other remedy at hand.

42.     As a result of the forgoing, plaintiff is entitled to a declaratory judgment declaring the rights of plaintiff with respect to the matters set forth in this Complaint, and in particular declaring and specifying that: (a) the Bulkhead is within the legal description of the Parcels, and therefore legally constitutes part of the Parcels; (b) that plaintiff is the sole and exclusive legal and equitable owner of the Parcels, including the Bulkhead; (c) that plaintiff is entitled to sole, exclusive and unfettered use of and access

to the Bulkhead; and (d) that defendant has no legal or equitable claim to the ownership or use of the Bulkhead, whether by claim of legal title, adverse possession, prescriptive easement, or under or pursuant to any other legal or equitable principle.

**Wherefore,** plaintiff Gowanus Industrial Park demands judgment in its favor and against defendant Amerada Hess, Inc.

a.      On its first cause of action for private nuisance in an amount in excess of $500,000 with the precise amount to be determined at trial;

b.      On its second cause of action for trespass an order: (a) preliminarily and permanently enjoining defendant, its agents, employees, contractors and servants, and any other persons in active concert with defendant, from entering, intruding or otherwise trespassing upon the Parcel, including the Bulkhead and awarding the plaintiff immediate and exclusive possession of the Parcel, including the Bulkhead, and (b) compensatory damages in an amount in excess of $500,000 with the precise amount to be determined at trial;

c.      On its third cause of action for a declaratory judgment declaring the rights of the plaintiff with respect to the matters set forth in this Complaint, and in particular declaring and specifying that: (a) the Bulkhead is within the legal description of the Parcel, and therefore, legally constitutes part of the Parcel Property; (b) that plaintiff is the sole and exclusive legal and equitable owner of the Parcels, including the Bulkhead; (c) that plaintiff is entitled to sole, exclusive and unfettered use of and access to the Bulkhead; and (d) that defendant has no legal or equitable claim to the ownership or use of the Bulkhead, whether by claim of legal title, adverse possession, prescriptive

7

easement, or under or pursuant to any other legal or equitable principle directing that

Amerada Hess, Inc. immediately remove the Fence and Piping;

     d.      For its costs and disbursements in this action;  and

     e.      For such other relief as this Court deems just and proper.


Dated: New York, New York
       November 29, 2010

               Hinman Howard & Kattell LLP

               _____

               By: Joseph N. Paykin (JP 3410)
               Attorneys for plaintiff
                Gowanus Industrial Park, Inc.
               185 Madison Avenue, 7th Floor
               New York, New York 10016
               (212) 725-4423

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

GOWANUS INDUSTRIAL PARK, INC.,

            Plaintiff,

    vs.

AMERADA HESS CORP.,

            Defendant.

Civil Action No. 10-05522
(JG) (JO)

ECF CASE

AMENDED
COMPLAINT

Plaintiff Gowanus Industrial Park, Inc. by and through its attorneys Hinman, Howard & Kattell, LLP as and for its complaint against Amerada Hess Corp. alleges as follows:

1.    Plaintiff Gowanus Industrial Park, Inc. ("GIP") is a foreign corporation authorized to do business in the State of New York, with its principal place of business located in Brooklyn, New York.

2.    Upon information and belief, defendant Amerada Hess Corporation is a foreign corporation organized and existing under the laws of another State of the United States with its principal place of business located at 1 Hess Plaza, Woodbridge, New Jersey. Defendant owns a parcel of property which is contiguous with the eastern border of plaintiff's (Henry Street Basin) property line, which defendant uses for the storage and point of shipment of petroleum products.

3.    This court has jurisdiction over the subject matter of this action because this is an admiralty and maritime claim within the jurisdiction of the United States District Court, within the meaning of 28 U.S.C. § 1333(1) and Rule 9(h) of the Federal Rules of Civil Procedure, and is also a claim for declaratory judgment pursuant to 28 U.S.C.

1

§ 2201, brought for the purpose of determining an issue of actual controversy between the parties, as more fully set forth below. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on the diversity of the citizenship of the parties, and the fact that the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and pursuant to the principle of supplemental jurisdiction under 28 U.S.C. § 1367.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c) in that a substantial part of the events giving rise to the claim occurred in this district and in that the defendant may be found in this district.

5.      This Court has personal jurisdiction over the defendant in this action by virtue of the fact that they are present in this State, are doing or transacting business here, and have committed acts and omissions, which, as described herein, have caused and continue to cause plaintiff grave harm in this State.

6.      In 1997, GIP acquired certain parcels ("Parcels") of land located in Brooklyn New York, which include a rectangular piece of land currently underwater known as the Henry Street Basin pursuant to a quitclaim deed ("Quitclaim Deed") from the Port Authority of New York, New Jersey.

7.      On its Westerly side, the Henry Street Basin abuts a parcel owned by GIP, on its Northerly side the Henry Street Basin abuts a two foot bulkhead (the "Bulkhead") owned by GIP, on its Easterly side the Henry Street Basin abuts a bulkhead owned by GIP, and on its Southerly side the Henry Street Basin abuts the Gowanus Bay.

2

8.       In 2003, Judge Leo B. Glaser found the Quitclaim Deed to be invalid. Gowanus Industrial Park v. Amerada Hess Corp., 2003WL22076641 (SDNY 2003) hereinafter referred to as the "First Hess Action".

9.       On April 1, 2005, in order to remedy the failure of title, the State of New York conveyed the Parcels to GIP by letters patent ("Letters Patent").

10.      Subsequent to the issuance of the Letters Patent The Supreme Court of the State of New York, County of Kings has found GIP to be the valid owner of the Parcels in an action captioned, The City of New York v. Gowanus Industrial Park, Inc., Index No. 19083/05.

11.      The property to the east of the Parcels is owned by defendant Hess.

12.      The Bulkhead runs in a straight line from the north end of the Basin 210 feet southerly at a distance of 5'81/2" west from the bulkhead line extending to a distance of 5'103/4" west. The Bulkhead continues southerly for 318 more feet, running a distance of 6'1" west of the bulkhead line before reducing to 1 1/4" and then finally 1 inch west of the bulkhead line for the remaining 53 feet before making a ninety degree turn east.

13.      In the First Hess Action, Justice Glasser held that the Bulkhead lies squarely within the Henry Street Basin and therefore the Parcels.

14.      Hess has constructed both a fence ("Fence") and piping ("Piping" collectively referred to with the Fence as the "Obstructions") on top of the Bulkhead.

15.      The Obstructions were built without the permission of GIP.

16.      Despite due demand, Hess has failed and refused to remove the Obstructions.

3

17.     The Obstructions interfere with GIP's rights to use its property both atop and adjacent to the Bulkhead.

18.     GIP operates its property, in part, as a marine bulk handling and storage and vessel mooring facility.

19.     In an effort to support local commerce as well as good environmental practices, GIP strives to utilize ships and/or barges ("Vessels") to deliver such bulk materials to its facility and provide moorage in maintaining a continuation of such industrial maritime uses.

20.     Vessels either dock in the Henry Street Basin and/or unload their cargo onto GIP's upland property to the West.

21.     GIP's business includes renting out its property and pier space to other entities.

22.     GIP has recently entered into a lease with a global marine freight transportation company which will allow it to use GIP's pier to dock barges.

23.     GIP has also recently entered into a lease with a related entity for the docking of a five hundred foot bulk carrier vessel.

24.     These two new tenants have placed a strain upon GIP's facilities and GIP needs to utilize its additional space to dock vessels.

25.     In this regard, GIP plans to construct a series of mooring dolphins or pile clusters ("Pile Clusters") next to the Bulkhead. GIP then intends to construct a catwalk from each Pile Cluster to the Bulkhead.

26.     Hess' fence and piping preclude such plan from being effectuated, and its aggressive response to plaintiffs efforts to utilize its own property are tantamount to

4

bullying. Indeed, it appears that Hess' thinly veiled muscle flexing (i.e. daring plaintiff to sue) was a tactical decision to force plaintiff to concede its property rights rather than engage in litigation against an opponent with vast financial and legal resources.

27.     The catwalk structure from the bulkhead is necessary so that the men operating the barges have the ability to moor the barges to the Pile Clusters. More specifically, the men will be able to go from the barges to the land, and pull and rope the barge to the various Pile Clusters.

### As and For a First Cause of Action for Private Nuisance

28.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "27" above as if fully set forth at length herein.

29.     The Obstructions prevent plaintiff from utilizing its property; the Fence precludes access from the water; and the Piping prevents the construction of the catwalk, storage of material, utilization of land, utilization of the Henry Street Basin, and increases plaintiff's exposure without any compensation.

30.     The Fence, by its nature -- precludes passage -- shows Hess's clear intent to deprive plaintiff of access to its own property.

31.     The Fence is unreasonable in character as its sole purpose is to keep GIP or its assigns from GIP's property, when the Fence could be located back on the property line so as to prevent GIP or its assigns access to Hess' property.

32.     The Obstructions interfere with GIP's ability to use and enjoy its property.

33.     The Obstructions are a direct result of Hess's conduct.

5

34.     By reason of the Hess's private nuisance, plaintiff has been damaged by its inability to use its property in an amount in excess of $500,000 with the precise amount to be determined at trial.

## As and For a Second Cause of Action for Trespass

35.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "34" above as if fully set forth at length herein.

36.     Hess intentionally placed the Fence and Piping on GIP's property.

37.     The placement of the Fence and  Piping constitutes a trespass by Hess on GIP's property.

38.     Upon its purchase of the Parcel, plaintiff gave notice to defendant that defendant was entered upon, occupying and benefiting from plaintiff's property.

39.     On June 24, 2008, GIP sent a demand to Hess to remove the Fence and piping.

40.     Hess failed and refused to honor such demand. To wit: it failed and refused to refrain from using the Bulkhead and from exercising dominion and control thereof.

41.     The conduct and acts of defendant and its agents, servants and/or employees, constitute a continuing trespass on the Parcel.

42.     Plaintiff has been damaged by Hess' trespass because it has been unable to use the portion of the Parcel with the Obstructions.

43.     As a result of the forgoing, plaintiff is entitled to the immediate and exclusive use, possession and control of GIP's property and the Bulkhead.

44.     Unless defendant, its agents, servants, contractors and employees and each and every one of them be forever, and during the pendency of this action, preliminarily and permanently enjoined from entering, intruding or otherwise trespassing upon the Parcel and the Bulkhead, plaintiff will be irreparably harmed.

45.     Such damage is an amount in excess of $500,000, with the precise amount to be determined at trial.

46.     By reason of the  foregoing, plaintiff is entitled to a judgment in the amount of $500,000, as well as an order directing Hess to remove the Fence and Piping from the Parcel.

## As and for a Third Cause of Action for Declaratory Judgment

47.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "46" above as if fully set forth at length herein.

48.     The Fence and Piping are wrongfully constructed on GIP's property.

49.     GIP has requested Hess to remove the Fence and Piping and despite such  demand, Hess has refused to remove either the Fence or the Piping from GIP's property.

50.     In view of the foregoing, it is desirable and necessary that a judicial determination be made establishing the identity of the party that has legal and equitable title to the Bulkhead, free and clear of all claims by any other party of rights to the

Bulkhead by virtue of a claim of legal title, adverse possession, prescriptive easement, or any other legal or equitable principle.

51.   Plaintiff has no other remedy at hand.

52.   As a result of the forgoing, plaintiff is entitled to a declaratory judgment declaring the rights of plaintiff with respect to the matters set forth in this Complaint, and in particular declaring and specifying that: (a) the Bulkhead is within the legal description of the Parcels, and therefore legally constitutes part of the Parcels; (b) that plaintiff is the sole and exclusive legal and equitable owner of the Parcels, including the Bulkhead; (c) that plaintiff is entitled to sole, exclusive and unfettered use of and access to the Bulkhead; and (d) that defendant has no legal or equitable claim to the ownership or use of the Bulkhead, whether by claim of legal title, adverse possession, prescriptive easement, or under or pursuant to any other legal or equitable principle.

**Wherefore**, plaintiff Gowanus Industrial Park demands judgment in its favor and against defendant Amerada Hess, Inc.

a.   On its first cause of action for private nuisance in an amount in excess of $500,000 with the precise amount to be determined at trial;

b.   On its second cause of action for trespass an order: (a) preliminarily and permanently enjoining defendant, its agents, employees, contractors and servants, and any other persons in active concert with defendant, from entering, intruding or otherwise trespassing upon the Parcel, including the Bulkhead and awarding the plaintiff immediate and exclusive possession of the Parcel, including the Bulkhead, and (b) compensatory damages in an amount in excess of $500,000 with the precise amount to be determined at trial;

8

        c.      On its third cause of action for a declaratory judgment declaring the rights of the plaintiff with respect to the matters set forth in this Complaint, and in particular declaring and specifying that: (a) the Bulkhead is within the legal description of the Parcel, and therefore, legally constitutes part of the Parcel Property; (b) that plaintiff is the sole and exclusive legal and equitable owner of the Parcels, including the Bulkhead; (c) that plaintiff is entitled to sole, exclusive and unfettered use of and access to the Bulkhead, which includes, but is not limited to, constructing a catwalk and related Pile Clusters; and (d) that defendant has no legal or equitable claim to the ownership or use of the Bulkhead, whether by claim of legal title, adverse possession, prescriptive easement, or under or pursuant to any other legal or equitable principle directing that Amerada Hess, Inc. immediately remove the Fence and Piping;

        d.      For its costs and disbursements in this action;  and

        e.      For such other relief as this Court deems just and proper.

Dated: New York, New York
      April 5, 2011

                    Hinman Howard & Kattell LLP

                    By: Joseph N. Paykin (JP 3410)
                    Attorneys for plaintiff
                     Gowanus Industrial Park, Inc.
                    185 Madison Avenue, 7th Floor
                    New York, New York 10016
                    (212) 725-4423

**EXHIBIT 3**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GOWANUS INDUSTRIAL PARK, INC.,                  :

                        *Plaintiff,*          :

    against                                        :

HESS CORPORATION,                               :

                    *Defendant.*         :

                              :

                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civil Action No. 10-5522 (JG) (JO)

**ECF CASE**

**HESS CORPORATION'S**
**ANSWER TO AMENDED**
**COMPLAINT AND**
**COUNTERCLAIMS**

## ANSWER TO AMENDED COMPLAINT

Defendant Hess Corporation ("Hess" or "defendant"), by and through its attorneys,

answers the Amended Complaint ("Complaint") of Gowanus Industrial Park, Inc. ("GIP" or

"plaintiff") as follows:

    1.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 1 of the Complaint.

    2.      Admits the allegations contained in paragraph 2 of the Complaint, except denies

that Hess's principal place of business is located at 1 Hess Plaza, Woodbridge, New Jersey, and

denies that plaintiff owns a parcel of property which is contiguous with either the western border

of defendant's property line or the eastern border of the Henry Street Basin.

    3.      Admits the allegations contained in paragraph 3 of the Complaint.

    4.      Admits the allegations contained in paragraph 4 of the Complaint.

    5.      Denies the allegations contained in paragraph 5 of the Complaint, except admits

that this Court has personal jurisdiction over defendant.

6.      Denies the allegations contained in paragraph 6 of the Complaint.

7.      Denies the allegations contained in paragraph 7 of the Complaint, except admits that the Henry Street Basin abuts the Gowanus Bay on its southerly side.

8.      Admits the allegations contained in paragraph 8 of the Complaint, but notes that Judge Glasser found the quitclaim deed to be invalid, and that the decision in *Gowanus Industrial Park v. Amerada Hess Corp.* can be found at 2003 WL 22076651 (Sept. 5, 2003 E.D.N.Y.).

9.      Denies the allegations contained in paragraph 9 of the Complaint.

10.     Denies the allegations contained in paragraph 10 of the Complaint.

11.     Admits the allegations contained in paragraph 11 of the Complaint.

12.     Denies the allegations contained in paragraph 12 of the Complaint.

13.     Denies the allegations contained in paragraph 13 of the Complaint.

14.     Denies the allegations contained in paragraph 14 of the Complaint.

15.     Admits the allegations contained in paragraph 15 of the Complaint, but denies that such permission was necessary, required or even conceivable.

16.     Denies the allegations contained in paragraph 16 of the Complaint.

17.     Denies the allegations contained in paragraph 17 of the Complaint.

18.     Denies the allegations contained in paragraph 18 of the Complaint.

19.     Denies the allegations contained in paragraph 19 of the Complaint.

20.     Denies the allegations contained in paragraph 20 of the Complaint.

21.     Denies the allegations contained in paragraph 21 of the Complaint.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.     Denies the allegations contained in paragraph 24 of the Complaint.

25.     Denies the allegations contained in paragraph 25 of the Complaint.

26.     Denies the allegations contained in paragraph 26 of the Complaint.

27.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint.

<u>As to the First Cause of Action</u>

28.     In response to paragraph 28 of the Complaint, re-alleges and incorporates its answers to paragraphs 1 through 27 of the Complaint as though fully set forth herein.

29.     Denies the allegations contained in paragraph 29 of the Complaint.

30.     Denies the allegations contained in paragraph 30 of the Complaint.

31.     Denies the allegations contained in paragraph 31 of the Complaint.

32.     Denies the allegations contained in paragraph 32 of the Complaint.

33.     Denies the allegations contained in paragraph 33 of the Complaint, except admits that in or before 1986 defendant constructed a fence and piping on the bulkhead on the easterly side of the Henry Street Basin (the "Bulkhead").

34.     Denies the allegations contained in paragraph 34 of the Complaint.

<u>As to the Second Cause of Action</u>

35.     In response to paragraph 35 of the Complaint, re-alleges and incorporates its answers to paragraphs 1 through 34 of the Complaint as though fully set forth herein.

36.     Denies the allegations contained in paragraph 36 of the Complaint.

37.     Denies the allegations contained in paragraph 37 of the Complaint.

38.     Denies the allegations contained in paragraph 38 of the Complaint.

39.     Admits the allegations contained in paragraph 39 of the Complaint.

40.     Denies the allegations contained in paragraph 40 of the Complaint.

41.     Denies the allegations contained in paragraph 41 of the Complaint.

42.     Denies the allegations contained in paragraph 42 of the Complaint.

43.     Denies the allegations contained in paragraph 43 of the Complaint.

44.     Denies the allegations contained in paragraph 44 of the Complaint.

45.     Denies the allegations contained in paragraph 45 of the Complaint.

46.     Denies the allegations contained in paragraph 46 of the Complaint.

### As to the Third Cause of Action

47.     In response to paragraph 47 of the Complaint, re-alleges and incorporates its answers to paragraphs 1 through 46 of the Complaint as though fully set forth herein.

48.     Denies the allegations contained in paragraph 48 of the Complaint.

49.     Denies the allegations contained in paragraph 49 of the Complaint.

50.     Denies the allegations contained in paragraph 50 of the Complaint.

51.     Denies the allegations contained in paragraph 51 of the Complaint.

52.     Denies the allegations contained in paragraph 52 of the Complaint, and denies all allegations contained in the Complaint not otherwise answered above.

53.     Denies that plaintiff is entitled to any of the relief requested in plaintiff's Prayer for Relief (Compl. at pp. 8-9).

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

54.     The Complaint fails to state a claim upon which relief can be granted.

4

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

55.    Plaintiff's claims are barred by res judicata.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

56.    Plaintiff's claims are barred by collateral estoppel.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

57.    Plaintiff lacks ownership of the Parcels because the requirements of N.Y. Public Lands Law § 50 were not satisfied.

58.    Accordingly, plaintiff lacks standing to bring its claims.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

59.    Plaintiff lacks ownership of the Parcels because the requirements of 1944 N.Y. Laws Ch. 410, as amended by 1945 N.Y. Laws Ch. 899, were not satisfied.

60.    Accordingly, plaintiff lacks standing to bring its claims.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

61.    Plaintiff lacks ownership of the Parcels because it failed to give New York State the consideration required by law.

62.    Accordingly, plaintiff lacks standing to bring its claims.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

63.    Plaintiff lacks ownership of the Parcels because it did not acquire the Parcels pursuant to an act of the legislature, as required by law.

64.    Accordingly, plaintiff lacks standing to bring its claims.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

65.    Plaintiff lacks ownership of the Parcels because the purported conveyance thereof was not authorized by the Thruway Authority, as required by law.

66.     Accordingly, plaintiff lacks standing to bring its claims.

**AS AND FOR A NINTH AFFIRMATIVE DEFENSE**

67.     Plaintiff's claims are barred because Hess has acquired title to portions of the Parcels occupied by the Bulkhead and the land to the east of the Bulkhead by adverse possession, prescriptive easement, practical location, accretion and/or filling in of lands under water.

**AS AND FOR A TENTH AFFIRMATIVE DEFENSE**

68.     Plaintiff lacks ownership of the Parcels.

69.     Accordingly, plaintiff lacks standing to bring its claims.

**AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE**

70.     Plaintiff's claims are barred by Hess's riparian rights as an owner of uplands adjacent to the Henry Street Basin.

**AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE**

71.     Plaintiff's claims are barred because the Henry Street Basin has always been and continues to be public property intended to be used for public purposes including commerce and navigation.

**AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE**

72.     Plaintiff's claims are barred because plaintiff has no possession of the Parcels.

**AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE**

73.     The purpose of the Bulkhead is to prevent Hess's oil tanks from falling into the Henry Street Basin. It was not constructed to, and could not, withstand plaintiff's intended use.

74.     Defendant reserves the right to assert any and all additional legal and/or equitable affirmative defenses that may become apparent during the course of discovery and trial.

6

## COUNTERCLAIMS

Hess Corporation ("Hess" or "counterclaim plaintiff"), by and through its attorneys, asserts the following counterclaims against Gowanus Industrial Park, Inc. ("GIP" or "counterclaim defendant"):

## INTRODUCTION

75.     Hess brings these counterclaims against GIP for a declaratory judgment that:

    a) GIP lacks title to the Parcels, including but not limited to the Henry Street Basin and the Bulkhead;

    b) GIP is not entitled to use of or access to the Bulkhead;[1] and

    c) Under Articles 5 and 15 of the New York Real Property Actions and Proceedings Law ("RPAPL"), title to the Bulkhead passed to Hess by operation of law, including but not limited to adverse possession.

76.     In the alternative, Hess is also seeking a declaratory judgment that Hess possesses the right to exclusive use and maintenance of the Bulkhead and the land to the east of the Bulkhead.

## PARTIES

77.     Hess is a Delaware corporation, with its principal place of business in New York City.

78.     On information and belief, GIP is a Delaware corporation having its principal place of business at 699 Columbia Street, Brooklyn, New York, 11231.

---

[1]     All terms not defined herein shall have the meaning ascribed to them in *GIP I*, 2003 WL 22076651 (E.D.N.Y. Sept. 5, 2003).

## JURISDICTION AND VENUE

79.     This court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1333(1), 1367 and 2201.

80.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events giving rise to the counterclaims occurred in this district and that the counterclaim defendant may be found in this district.

## FACTS

### A.     The Bulkhead

81.     On or about June 24, 1977, by Stock Purchase Agreement, Hess acquired all the shares in Ira S. Bushey & Sons, Inc. ("Bushey"), which at that time and for many years prior owned all right, title, and interest in the lands and structures (including petroleum tanks) comprising and along the eastern bank of the Henry Street Basin (the "Brooklyn Terminal").

82.     When Hess acquired the Bushey shares, the Henry Street Basin's eastern bank, which Bushey owned, was formed and supported by a bulkhead consisting of wooden pilings sunk into the Henry Street Basin, and in a state of deterioration (sometimes referred to as the "wooden bulkhead").

83.     Since June 24, 1977, Bushey has remained a wholly owned subsidiary of Hess.

84.     On information and belief, by April 3, 1972, Bushey had erected one oil storage tank. On information and belief, by July 19, 1981, two additional storage tanks were erected nearby. Each of these tanks was on the edge—within ten yards (or less)—of the Henry Street Basin (collectively, the "oil tanks").

8

85.     Since acquiring the Brooklyn Terminal, Hess has used it to unload, temporarily store, and offload oil delivered via the Gowanus Canal and the Henry Street Basin to the Hess Finger Pier.

86.     Due to deterioration of the wooden bulkhead and the growing risk of erosion and environmental damage, in or about the early 1980's engineers advised that it was imperative to replace the deteriorating wooden bulkhead with a modern concrete bulkhead so as to ensure the stability of the oil tanks and safeguard against leakage of stored oil and resulting environmental damage or catastrophe.

87.     In or about 1985, after study and the application for and grant of all necessary federal, state, and local permits, at Hess's sole cost and expense Hess reinforced the eastern bank of the Henry Street Basin adjacent to the oil tanks with the Bulkhead, a concrete bulkhead engineered to protect the oil tanks' stability and to prevent them from sliding into the Henry Street Basin.

88.     The Bulkhead is approximately 30 inches wide, as reflected on a survey dated July 1, 1998 by Bartlett, Ludlam & Dill Associates (Order No. 89008-B), captioned "Title Survey of Property in Red Hook Borough of Brooklyn, County of Kings City and State of New York Made for Amerada Hess Corporation."

89.     The Bulkhead was designed, engineered, and constructed for the purpose of replacing the deteriorating wooden bulkhead and thereby preventing the subsidence and erosion of the land upland of the eastern bank of the Henry Street Basin and to guard against an accident to or leakage from the oil tanks.  It was not designed, engineered, or constructed, and is not fit, for use by GIP.

90.     The land immediately east of the Bulkhead belongs to Hess, by prior sale and deed and, to a small extent, by accretion and/or by filling in land under water that had been undertaken over time by Bushey and/or Hess.

**B.**     ***GIP I***

91.     From colonial times until 1944 and 1945, the Parcels were owned by the State of New York, and were never private property.

92.     From 1944 and 1945 until February 26, 1997, the Parcels were owned by the Port Authority, and remained public property.

93.     On February 26, 1997, the Port Authority purported to convey the Parcels to GIP by quitclaim deed.

94.     On February 14, 2001, GIP sued Hess seeking, *inter alia*, a declaratory judgment that (1) the Bulkhead lay within the Parcels, (2) GIP was the sole and exclusive legal and equitable owner of the Parcels, including the Bulkhead, (3) GIP solely was entitled to use of and access to the Bulkhead, and (4) Hess had no legal or equitable claim to any part of the Basin or the Bulkhead.

95.     Judge Glasser granted summary judgment for Hess on all of GIP's declaratory judgment claims, except that he declared that the Bulkhead lay within the Parcels to a small extent. *See GIP I*, 2003 WL 22076551, at *9-11.

96.     The Court's judgment was premised in part on its finding that GIP did not own the Parcels because GIP did not obtain title to the Parcels by quitclaim deed from the Port Authority in 1997. *Id.*

97.     The Court noted that when the Legislature transferred title to the Parcels to the Port Authority in 1944, it conditioned that title on the requirement that the Port Authority not grant or convey title to the Parcels to any person or legal entity other than the state. *Id.* at *9.

98.     The Port Authority's purported conveyance of the Parcels to GIP violated the Legislature's condition that the Port Authority not convey title to the Parcels to any person or legal entity other than the state. Accordingly, the Court found, the conveyance to GIP was a nullity. *Id.*

99.     The Court held that a permissible transfer of title from the Port Authority to GIP could only be accomplished by an act of the Legislature, which had not occurred. *Id.* at *9-10.

100.     The Court further noted that even if an act of the Legislature were not required for the Port Authority to convey the Parcels to GIP, GIP still could not establish title to the Parcels because only the Thruway Authority would have possessed the authority to approve the transfer of title. *Id.* at *10.

101.     The Court cited the Parcels' exemption from all taxation as additional evidence that the Legislature had intended for the Parcels to remain public property. *Id.* at *9.

102.     The Court further recognized Hess's status as a riparian owner of the Henry Street Basin, and noted that "a failure to maintain the bulkhead would lead to soil erosion and collapse of the oil tanks. A collapse of such tanks would not only significantly impair Hess's facilities, it could also impair the public's right of access to the [Basin] and other use of waters surrounding the [Basin]. Absent the existence of an alternative proposal . . . the maintenance of some sort of bulkhead seems necessary to prevent such a collapse." *Id.* at *15.

103.     Judge Glasser's findings in *GIP I* accurately reflect the law, and in any event are binding on GIP as a matter of collateral estoppel.

11

## C.     Post-*GIP I*

104.     In the time that has passed since *GIP I* was decided, neither the Legislature nor the Thruway Authority has authorized the transfer of title to the Parcels from public ownership to GIP.  Nor has the Thruway Authority followed the procedures required by Canal Law § 50 for abandoning the Parcels/

105.     GIP has never been in possession of the Henry Street Basin or the Bulkhead.

106.     The Commissioner of General Services did not conduct an auction, accept bids or solicit offers, or provide notice or receive an appraisal before executing the December 2004 letters patent.

107.     No appraisal was conducted by or for New York State prior to issuance of the letters patent from New York State to GIP in December 2004.

108.     GIP did not at any time, whether in 1997 or subsequently, pay New York State, and New York State did not receive, for sale of the Parcels, an amount equal to or greater than the appraised value of the Parcels.

109.     The Parcels have not been abandoned within the meaning and under the procedures required by 1939 N.Y. Laws Ch. 542, Section 50.

110.     GIP has never been issued a revocable permit under Canal Law § 100 to use the Parcels.

111.     If applicable, the requirements of Public Lands Law § 33 were not satisfied prior to issuance of the December 2004 letters patent by New York State to GIP.

112.     If applicable, the 1911 Act [1911 N.Y. Laws Ch. 746] has not been complied with.  Section 14 of the 1911 Act prohibited the terminals provided for by the Act from being "sold, leased or otherwise disposed of."

113.   The New York State Canal Corporation has not abandoned the Parcels pursuant to §§ 50 and 51 of the Canal Law or any other provision of law, and the preconditions of Public Lands Law § 50 to any conveyance of the Parcels by the Commissioner of Public Services have not been satisfied.

**D.   Title to the Bulkhead and Adjacent Land Passed to Hess by Adverse Possession and Accretion and/or by Filling in of Lands Under Water**

114.   Hess has a fee simple interest in the Bulkhead, acquired by adverse possession and/or the doctrine of practical location and, with respect to any land east of the Bulkhead but west of the bulkhead line identified by Judge Glasser, by accretion or by filling in over the last century (or more) of lands under water.

115.   Starting no later than January 1, 1986, Hess began adversely possessing the Bulkhead by virtue of its open and notorious construction of the Bulkhead under governmental permits, as well as under claim of right pursuant to prior deeds, and its actual, open and notorious, hostile, exclusive, and continuous possession thereof for in excess of the statutory period of 10 years.  The accepted property line between Hess's property and the parcel abutting the westerly boundary of Hess' property has been clearly demarcated at all relevant times (for in excess of 10 years) as the Bulkhead, and until GIP's litigation in February 2001 – and after the judgment in that case – was acquiesced in and treated as the true boundary line by the Port Authority and then by GIP.

116.   From or very soon after its construction, the Bulkhead has been protected by a substantial enclosure (the Fence) and principally accessible only from Hess's property.

117.   At all relevant times, GIP (and GIP's alleged predecessors in interest) had actual notice of the facts set forth in ¶¶ 114-116, above.

**E.      Title to the Bulkhead Belongs to Hess by Virtue of Hess Having Constructed the Bulkhead at Hess's Sole Cost and Expense**

118.    The Bulkhead was designed, engineered and constructed by Hess, at Hess's sole cost and expense, in or about 1985 and 1986, pursuant to all required governmental permits and in the public interest.

**F.      Hess Has a Privilege to Continue Any Encroachment of the Bulkhead on the Parcels, Entitling Hess to the Continued Sole and Exclusive Use Thereof**

119.    Any encroachment of the Bulkhead on the Parcels is de minimis and has de minimis effect on GIP or any other person having the right to use the Henry Street Basin.  By contrast, prohibiting Hess's maintenance and use of the Bulkhead would result in material harm to Hess and its property, the Henry Street Basin, and the public.

120.    Hess has a privilege for any encroachment of the Bulkhead on the Parcels, permitting Hess's continued use thereof, by reason of the necessity of Hess's use and maintenance thereof and Hess's interest in the Parcels by virtue of Hess's and the public's riparian rights.

**G.      Hess Has a Prescriptive Easement to Exclusive Use of the Bulkhead and the Land to the East of the Bulkhead Along the Easterly Line of the Henry Street Basin**

121.    Starting no later than January 1, 1986, Hess began exclusively using the Bulkhead and the land between the Bulkhead and the easterly line of the Henry Street Basin by virtue of its open and notorious construction of the Bulkhead under governmental permits and its actual, open and notorious, hostile, exclusive, and continuous possession thereof for in excess of a period of 10 years.  Hess thereby acquired a prescriptive easement for the exclusive use of the Bulkhead and such land.

14

## COUNT I

### (Declaratory Judgment that GIP Lacks Title)

122.    Hess repeats and re-alleges paragraphs 75 through 121 of these counterclaims as if fully set forth herein.

123.    GIP does not have title to the Parcels, including but not limited to the Henry Street Basin and the Bulkhead, because neither the Legislature nor the Thruway Authority has authorized the transfer of title to the Parcels to GIP and other legal requirements have not been complied with.

124.    GIP has asserted to Hess that GIP is the legal and equitable owner of the Parcels, including but not limited to the Henry Street Basin and the Bulkhead, with the exclusive right to beneficially use and exploit them.

125.    In light of the foregoing, there exists a genuine controversy between Hess and GIP concerning the legal and equitable title to the Parcels, including but not limited to the Henry Street Basin and the Bulkhead.

126.    Accordingly, Hess is entitled to a declaratory judgment declaring that (a) GIP lacks title to the Parcels, including but not limited to the Bulkhead and any land lying east of it, and (b) GIP is not entitled to use of or access to the Bulkhead.

127.    Hess is also entitled to permanent injunctive relief enjoining and restraining GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them and with notice of such injunction, from (a) attempting to eject Hess from the Bulkhead, or (b) interfering or attempting to interfere with Hess's possession and occupancy of the Bulkhead, or (c) using the Bulkhead for any purpose whatsoever without Hess's prior permission.

15

## COUNT II

### (Adverse Possession)

128.   Hess repeats and re-alleges paragraphs 75 through 127 of these counterclaims as if fully set forth herein.

129.   This action is brought pursuant to Article 15 of the RPAPL.

130.   Starting no later than January 1, 1996—and for in excess of 10 years—Hess possessed the portion of the Parcels occupied by the Bulkhead, the Bulkhead, and the land to the east of the Bulkhead, such possession being hostile and under a claim of right, actual, open and notorious, exclusive, and continuous for the statutory period of 10 years.

131.   As a result, title to such portion of the Parcels, including but not limited to the Bulkhead and the land to the east of the Bulkhead, has passed to Hess by adverse possession, pursuant to Article 5 of the RPAPL (as effective at the time title passed by operation of law).

132.   Hess is the owner in fee simple and entitled to the possession of the Bulkhead and the land between the Bulkhead and Hess's oil tanks along the Bulkhead.

133.   In light of the foregoing, Hess is entitled to a declaration pursuant to Article 15 of the RPAPL that GIP and/or every person claiming under it be barred from all claims to an estate or interest in the portion of the Parcels occupied by the Bulkhead and the land to the east of the Bulkhead, and that possession of and title to the Bulkhead and the land between the Bulkhead and Hess's oil tanks along the Bulkhead be declared to belong solely to Hess.

## COUNT III

### (Declaratory Judgment as to Hess's Ownership and Exclusive Usage Right)

134.   Hess repeats and re-alleges paragraphs 75 through 133 of these counterclaims as if fully set forth herein.

16

135.    Hess is the owner of the Bulkhead, which was constructed at Hess's sole cost and expense pursuant to all the permits duly required by law, and/or entitled to exclusive use and possession thereof.

136.    GIP has asserted to Hess that GIP is the legal and equitable owner of the Parcels, including but not limited to the Henry Street Basin and the Bulkhead, with the exclusive right to beneficially use and exploit them.

137.    Hess is entitled to the continued sole and exclusive use of the Bulkhead by virtue of its ownership of the Bulkhead, or alternatively by reason of having obtained a prescriptive easement to maintain the Bulkhead at its location, or alternatively by reason that any encroach-ment of the Bulkhead on the Parcels is de minimis and has de minimis effect on GIP, while prohibiting Hess's maintenance and present exclusive use of the Bulkhead would result in material harm to Hess and its property, the Henry Street Basin, and the public.

138.    In light of the foregoing, there exists a genuine controversy between Hess and GIP concerning Hess's right to exclusive use and maintenance of the Bulkhead and the land to the east of the Bulkhead.

139.    Accordingly, Hess is entitled to a declaratory judgment declaring that Hess owns the Bulkhead and the land to the east of the Bulkhead and/or possesses the exclusive right use and maintain the Bulkhead and the land to the east of the Bulkhead.

140.    Hess is also entitled to permanent injunctive relief enjoining and restraining GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them and with notice of such injunction, from (a) attempting to eject Hess from the Bulkhead or the land to the east of the Bulkhead, or (b) interfering or attempting to interfere with Hess's possession and occupancy of

17

the Bulkhead or the land to the east of the Bulkhead, or (c) using the Bulkhead or the land to the east of the Bulkhead for any purpose whatsoever without Hess's prior permission.

## PRAYER FOR RELIEF

WHEREFORE, counterclaim plaintiff Hess Corporation respectfully requests entry of judgment in its favor as follows:

141.   On Count I of the counterclaims, declaring that GIP lacks title to the Parcels, including but not limited to the Henry Street Basin and the Bulkhead and the land to the east of the Bulkhead, and GIP is not entitled to use of or access to the Bulkhead and such land; and permanently enjoining and restraining GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them and with notice of such injunction, from (a) attempting to eject Hess from the Bulkhead and such land, or (b) interfering or attempting to interfere with Hess's possession and occupancy of the Bulkhead and such land, or (c) using the Bulkhead and such land for any purpose whatsoever without Hess's prior permission.

142.   On Count II of the counterclaims, declaration and judgment that GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them be barred from all claims to an estate or interest in the Bulkhead and the land between the Bulkhead and Hess's oil tanks along the Bulkhead; that possession of the same be declared to belong solely to Hess; that GIP be permanently enjoined from entering onto the Bulkhead or the land between the Bulkhead and Hess's oil tanks along the Bulkhead, or damaging, destroying, or otherwise interfering with any of the structures thereon, or otherwise interfering with Hess's use of the Bulkhead or navigation and commerce at its Brooklyn Terminal.

143.    On Count III of the counterclaims, declaring that Hess owns the Bulkhead and/or possesses the right to exclusive use and maintenance of the Bulkhead and the land to the east of the Bulkhead, and GIP is not entitled to use of or access to the Bulkhead and such land; and permanently enjoining and restraining GIP, its shareholders, directors, officers, employees, agents, attorneys and other representatives, GIP's tenants and any other persons acting in concert with any of them and with notice of such injunction, from (a) attempting to eject Hess from the Bulkhead and such land, or (b) interfering or attempting to interfere with Hess's possession and occupancy of the Bulkhead and such land, or (c) using the Bulkhead and such land for any purpose whatsoever without Hess's prior permission.

144.    Awarding to Hess its attorneys' fees and costs and disbursements of this action; and

145.    Granting such other and further relief as the Court may deem proper.


May 2, 2011


By:    s/ Charles S. Sims

Charles S. Sims
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Attorneys for Defendant*
*Hess Corporation*

19

Charles S. Sims
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Defendant*
*Hess Corporation*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GOWANUS INDUSTRIAL PARK, INC.,     :

                   Plaintiff,    :   Civil Action No. 10-05522 (JG) (JO)

                          :

   against              :   **CERTIFICATE OF SERVICE**

                          :

HESS CORPORATION,         :   Document Electronically Filed

                          :

                  Defendant.   :

                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

     I, Charles S. Sims, of full age, hereby certify as follows:

     1.     I am an attorney with the law firm Proskauer Rose LLP, attorneys for defendant

Hess Corporation in the above-captioned matter.

     2.     I hereby certify that upon this date I served a true and correct copy of defendant's

answer and counterclaims upon the following:

                Joseph N. Paykin, Esq.
                Hinman, Howard & Kattell, LLP
                185 Madison Avenue, 7th Floor
                New York, New York 10016
                (212) 725-4423

                *Attorneys for Plaintiff*

via the CM/ECF system.

May 2, 2011                    By:   s/ Charles S. Sims
                                     Charles S. Sims

**EXHIBIT 4**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

GOWANUS INDUSTRIAL PARK, INC.,                :        Civil Action No: 10-5522 (JG)(JO)

                        *Plaintiff*,        :        **ECF CASE**

   -against-                                    :        **PLAINTIFF'S ANSWER TO
                                  :        DEFENDANT'S
                                  :        COUNTERCLAIMS**

HESS CORPORATION,                              :

                        *Defendant*.        :

-------------------------------------------------------------X

## ANSWER TO HESS CORPORATION'S COUNTERCLAIMS

      Plaintiff Gowanus Industrial Park, Inc. ("GIP" or "Plaintiff"), by and through its

attorneys answers the counterclaims of Hess Corporation ("Hess" or "Defendant") as follows:

      75.     Denies the allegations contained in paragraph 75 of Hess's Counterclaims.

      76.     Denies knowledge or information sufficient to form a belief as to the truth of the

           allegations contained in paragraph 76 of Hess's Counterclaims.

      77.     Admits the allegations contained in paragraph 77 of Hess's Counterclaims.

      78.     Admits the allegations contained in paragraph 78 of Hess's Counterclaims.

      79.     Admits the allegations contained in paragraph 79 of Hess's Counterclaims.

      80.     Admits the allegations contained in paragraph 80 of Hess's Counterclaims.

      81.     Denies knowledge or information sufficient to form a belief as to the truth of the

           allegations contained in paragraph 81 of Hess's Counterclaims.

      82.     Denies knowledge or information sufficient to form a belief as to the truth of the

           allegations contained in paragraph 82 of Hess's Counterclaims.

      83.     Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 83 of Hess's Counterclaims.

84. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84 of Hess's Counterclaims.

85. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85 of Hess's Counterclaims.

86. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 86 of Hess's Counterclaims.

87. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87 of Hess's Counterclaims.

88. Admits the allegations contained in paragraph 88 of Hess's Counterclaims.

89. Denies the allegations contained in paragraph 89 of Hess's Counterclaims.

90. Denies the allegations contained in paragraph 90 of Hess's Counterclaims.

91. Admits the allegations contained in paragraph 91 of Hess's Counterclaims.

92. Admits the allegations contained in paragraph 92 of Hess's Counterclaims.

93. Admits the allegations contained in paragraph 93 of Hess's Counterclaims.

94. Admits the allegations contained in paragraph 94 of Hess's Counterclaims.

95. GIP refers to Judge Glasser's decision dated September 5, 2003 for *Gowanus Industrial Park, Inc. v. Amerada Hess Corp., No. 01-CV-0902 (ILG), 2003 US Dist. LEXIS 15580, 2003 WL 22076651 (E.D.N.Y. 2003).*

96. GIP refers to Judge Glasser's decision dated September 5, 2003 for *Gowanus Industrial Park, Inc. v. Amerada Hess Corp., No. 01-CV-0902 (ILG), 2003 US Dist. LEXIS 15580, 2003 WL 22076651 (E.D.N.Y. 2003).*

97. GIP refers to Judge Glasser's decision dated September 5, 2003 for *Gowanus*

*Industrial Park, Inc. v. Amerada Hess Corp.*, No. 01-CV-0902 (ILG), 2003 US Dist. LEXIS 15580, 2003 WL 22076651 (E.D.N.Y. 2003).

98.  GIP refers to Judge Glasser's decision dated September 5, 2003 for *Gowanus Industrial Park, Inc. v. Amerada Hess Corp.*, No. 01-CV-0902 (ILG), 2003 US Dist. LEXIS 15580, 2003 WL 22076651 (E.D.N.Y. 2003).

99.  Denies the allegations contained in paragraph 99 of Hess's Counterclaims.

100.  GIP refers to Judge Glasser's decision dated September 5, 2003 for *Gowanus Industrial Park, Inc. v. Amerada Hess Corp.*, No. 01-CV-0902 (ILG), 2003 US Dist. LEXIS 15580, 2003 WL 22076651 (E.D.N.Y. 2003).

101.  GIP refers to Judge Glasser's decision dated September 5, 2003 for *Gowanus Industrial Park, Inc. v. Amerada Hess Corp.*, No. 01-CV-0902 (ILG), 2003 US Dist. LEXIS 15580, 2003 WL 22076651 (E.D.N.Y. 2003).

102.  GIP refers to Judge Glasser's decision dated September 5, 2003 for *Gowanus Industrial Park, Inc. v. Amerada Hess Corp.*, No. 01-CV-0902 (ILG), 2003 US Dist. LEXIS 15580, 2003 WL 22076651 (E.D.N.Y. 2003).

103.  Denies the allegations contained in paragraph 103 of Hess's Counterclaims.

104.  Denies the allegations contained in paragraph 104 of Hess's Counterclaims.

105.  Denies the allegations contained in paragraph 105 of Hess's Counterclaims.

106.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 106 of Hess's Counterclaims.

107.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 107 of Hess's Counterclaims.

108.  Denies the allegations contained in paragraph 108 of Hess's Counterclaims.

109.     Denies the allegations contained in paragraph 109 of Hess's Counterclaims.

110.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110 of Hess's Counterclaims.

111.     Denies the allegations contained in paragraph 111 of Hess's Counterclaims.

112.     Denies the allegations contained in paragraph 112 of Hess's Counterclaims.

113.     Denies the allegations contained in paragraph 113 of Hess's Counterclaims.

114.     Denies the allegations contained in paragraph 114 of Hess' Counterclaims.

115.     Denies the allegations contained in paragraph 115 of Hess's Counterclaims.

116.     Admits the allegations contained in paragraph 116 of Hess's Counterclaims.

117.     Denies the allegations contained in paragraph 117 of Hess's Counterclaims.

118.     Denies knowledge or information sufficient to for ma belief as to the truth of the allegations contained in paragraph 118 of Hess's Counterclaims.

119.     Denies the allegations contained in paragraph 119 of Hess's Counterclaims.

120.     Denies the allegations contained in paragraph 120 of Hess's Counterclaims.

121.     Denies the allegations contained in paragraph 121 of Hess's Counterclaims.

122.     Repeats and reiterates each and every response to allegations contained in paragraphs 75-121 of GIP's response to Hess's Counterclaims as set forth above.

123.     Denies the allegations contained in paragraph 123 of Hess's Counterclaims.

124.     Admits the allegations contained in paragraph 124 of Hess's Counterclaims.

125.     Denies the allegations contained in paragraph 125 of Hess's Counterclaims.

126.     Denies the allegations contained in paragraph 126 of Hess's Counterclaims.

127.     Denies the allegations contained in paragraph 127 of Hess's Counterclaims.

128.     Repeats and reiterates each and every response to allegations contained in

paragraphs 75-127 of GIP's response to Hess's Counterclaims as set forth above.

129. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 129 of Hess's Counterclaims.

130. Denies the allegations contained in paragraph 130 of Hess's Counterclaims.

131. Denies the allegations contained in paragraph 131 of Hess's Counterclaims.

132. Denies the allegations contained in paragraph 132 of Hess's Counterclaims.

133. Denies the allegations contained in paragraph 133 of Hess's Counterclaims.

134. Repeats and reiterates each and every response to allegations contained in paragraphs 75-133 of GIP's response to Hess's Counterclaims as set forth above.

135. Denies the allegations contained in paragraph 135 of Hess's Counterclaims.

136. Admits the allegations contained in paragraph 136 of Hess's Counterclaims.

137. Denies the allegations contained in paragraph 137 of Hess's Counterclaims.

138. Denies the allegations contained in paragraph 138 of Hess's Counterclaims.

139. Denies the allegations contained in paragraph 139 of Hess's Counterclaims.

140. Denies the allegations contained in paragraph 140 of Hess's Counterclaims.

141. Denies the allegations contained in paragraph 141 of Hess's Counterclaims.

142. Denies the allegations contained in paragraph 142 of Hess's Counterclaims.

143. Denies the allegations contained in paragraph 143 of Hess's Counterclaims.

144. Denies the allegations contained in paragraph 144 of Hess's Counterclaims.

145. Denies the allegations contained in paragraph 145 of Hess's Counterclaims.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

146. The Counterclaims fail to state a claim upon which relief can be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

147.   Defendant's claims are barred by res judicata

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

148.   Defendant's claims are barred by collateral estoppel.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

148.   Defendant lacks ownership of the Parcels.

149.   Accordingly, Defendant lacks standing to bring its claims.


Dated: New York, New York
      May 23, 2011

                By:___s/ Joseph N. Paykin_____

                Joseph N. Paykin,
                HINMAN, HOWARD
                 & KATTELL, LLP
                185 Madison Ave, 7th Floor
                New York, New York 10016
                (212) 725- 4423

                *Attorneys for Plaintiff*
                *Gowanus Industrial Park, Inc.*

*Attorneys for Plaintiff*
*Gowanus Industrial Park, Inc.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GOWANUS INDUSTRIAL PARK, INC.,      :

                    *Plaintiff,*      :

    -against-                  :

                                  :

HESS CORPORATION,             :

                    *Defendant.*   :

------------------------------------------------------------X

Civil Action No: 10-5522 (JG)(JO)

**ECF CASE**

**CERTIFICATE OF SERVICE**

Document Electronically Filed

     I, Charles D. Krieg, of full age, hereby certify as follows:

1.     I am an attorney with the law firm Hinman, Howard & Kattell, LLP, attorneys for plaintiff Gowanus Industrial Park, Inc. in the above referenced matter.

2.     I hereby certify that upon this date I served a true and correct copy of Plaintiff's Answer to Defendant's Counterclaims upon the following:

          Charles S. Sims
          PROSKAUER ROSE LLP
          Eleven Times Square
          New York, NY 10036
          212) 969 – 3000

          *Attorneys for Defendant*
          *Hess Corporation*

via the CM/ECF system

May 23, 2011

                                      By:   s/ Charles D. Krieg
                                          Charles D. Krieg

**EXHIBIT 5**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                        :

GOWANUS INDUSTRIAL PARK, INC.,    :

                        :

            Plaintiff,    :

                        :  No. 1:10-cv-05522-JG-JO

    -against-             :

                        :

HESS CORP.,                 :

                        :

           Defendant.    :
-------------------------------------------------------x

## MEMORANDUM OF LAW OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK AS AMICUS CURIAE

ERIC T. SCHNEIDERMAN
  *Attorney General of the*
  *State of New York*
BARBARA D. UNDERWOOD
  *Solicitor General*
BENJAMIN N. GUTMAN
  *Deputy Solicitor General*
SIMON HELLER
  *Assistant Solicitor General*
120 Broadway, 25th floor
New York, NY 10271
P: 212-416-8025
F: 212-416-8962
simon.heller@ag.ny.gov

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................ii

BACKGROUND..................................................................................1

ARGUMENT .......................................................................................3

    A.   The Letters Patent Are Not Subject to Challenge in
        This Litigation Unless They Are Facially Void. ....................3

    B.   The Letters Patent Are Facially Valid Because the
        Property Was Conveyed to GIP in Conformity with the
        Law Governing Abandoned Canal Lands. ............................5

        1.   The property is abandoned canal land. ..........................6

        2.   The property was properly transferred to GIP
            through a private sale. ..................................................10

    C.   Adjudicating the Validity of the Transfer Would Raise
        Serious Constitutional and Jurisdictional Questions
        That Should Be Avoided. .......................................................11

CONCLUSION ...................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                           **Page**

*Alliance of Am. Insurers v. Chu,*
   77 N.Y.2d 573 (1991) ................................................................. 9

*City of N.Y. v. Gowanus Indus. Park, Inc.,*
   65 A.D.3d 1071 (2d Dep't 2009) ............................................. 10

*Dawavendewa v. Salt River Project Agric. Improvement*
   *& Power Dist.,*
   276 F.3d 1150 (9th Cir. 2002) ................................................. 13

*Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel,*
   883 F.2d 890 (10th Cir. 1989) ................................................. 12

*Fluent v. Salamanca Indian Lease Auth.,*
   928 F.2d 542 (2d Cir. 1991) ..................................................... 12

*Gowanus Indus. Park, Inc. v. Amerada Hess Corp.,*
   No.01-CV-0902, 2003 WL 22076651 (E.D.N.Y. Sept. 5, 2003) ........... 15

*Idaho v. Coeur d'Alene Tribe of Idaho,*
   521 U.S. 261 (1997) ................................................................. 14

*Jackson v. Lawton,*
   10 Johns. 23 (N.Y. Sup. Ct. 1813) ........................................... 4

*New York v. United States,*
   505 U.S. 144 (1992) ................................................................. 12

*Parmelee v. Oswego & Syracuse RR.,*
   7 Barb. 599 (Sup. Ct. N.Y. Cnty. 1850),
   *aff'd,* 6 N.Y. 74 (1851) ........................................................... 3

# TABLE OF AUTHORITIES (Cont'd)

**Cases**                                                    **Page**

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984) ....................................................................... 14

*People v. Clarke,* 10 Barb. 120 (Sup. Ct. Montgomery Cnty. 1850)
   *aff'd,* 9 N.Y. 349 (1853) .............................................................. 4

*Raypath, Inc. v. City of Anchorage,*
   544 F.2d 1019 (9th Cir. 1976).................................................... 3-4

*Shannon v. Jacobowitz,*
   301 F. Supp. 2d 249 (N.D.N.Y. 2003).................................... 4-5

*Travelers Indem. Co. v. Household Int'l, Inc.,*
   775 F. Supp. 518 (D. Conn. 1991).......................................... 12

**Statutes**

Ch. 410, 1944 N.Y. Laws 863 ....................................................... 6, 7

Ch. 542, 1939 N.Y. Laws 1278 ..................................................... 8

Canal Law § 50 ................................................................................ 7

Canal Law § 51 ................................................................................ 8

Public Lands Law § 50 ............................................................... *passim*

**Other Authorities**

*Message of the Governor in Relation to State Properties Used As Barge
   Canal Terminals in the New York Harbor Area,* 5 N.Y. Legis. Docs.
   No. 39 (1944) ............................................................................... 7, 9

By Memorandum filed on April 8, 2011 (Dkt. No. 18), the Court invited the Attorney General of the State of New York to submit a brief addressing questions raised by the Court regarding the transfer of certain parcels of land located in Kings County, including land under water, to Plaintiff Gowanus Industrial Park, Inc. (GIP), "together with any other issues the Attorney General deems relevant to the ownership status of the parcels." Mem. at 5. In general, the Court raised issues concerning "several potential weaknesses in the . . . transfer [of the parcels] from the State to GIP." *Id.* The Attorney General respectfully submits the following brief in response to the Court's invitation. As the Court recognized, *id.* at 15, the State has an interest in the issues presented here both because they involve the interpretation of state statutes and because if the transfer were invalidated, title to the parcels at issue (and perhaps any liability associated with the parcels) would presumably revert to the State.

## BACKGROUND

On December 21, 2004, the State deeded the parcels at issue ("the property") to GIP by letters patent executed by the First Deputy

1

Commissioner of General Services.   The letters patent identify N.Y. Public Lands Law § 50 as their statutory basis, and identify the consideration for the conveyance to be "the sum of One Dollar ($1.00), and other good and valuable consideration paid by" GIP.  Dkt. No. 6-3 at 4.   The "other consideration" paid for the property includes an indemnification agreement provided by GIP that indemnifies the State from, *inter alia*, liability arising from hazardous or toxic substances, as well as payment of $875,000 in cash—25 percent of the $3.5 million that GIP had agreed to pay for the property in 1997 when it acquired a quitclaim deed from the Port Authority, the property owner at the time.

Defendant Hess Corporation now argues that the letters patent are invalid and that GIP therefore does not own the property and cannot sue Hess for trespassing on it.  As set forth below, the letters patent issued by the State to GIP are conclusive as to the ownership of the property in this private lawsuit because they are not void on their face.  The letters, which were issued under Public Lands Law § 50, facially comply with that statute's requirements.   Although Hess disputes that GIP paid adequate consideration for the property, that

2

does not affect the facial validity of the letters patent and thus is not an issue that this Court can or should reach in this litigation.

## ARGUMENT

### A.   The Letters Patent Are Not Subject to Challenge in This Litigation Unless They Are Facially Void.

GIP is the owner of the property unless and until the letters patent are annulled.   Under long-standing New York common law, challenges to the validity of letters patent are sharply circumscribed and generally cannot be maintained by a private party like Hess:

> [A]s against a party who shows no color of right in himself, and even when he shows a title from the state, of a junior date to that conveyed by letters patent, such letters, under the seal of the state, are conclusive, until they have been repealed.   It is only where the letters patent are *void on their face*, by reason of being issued contrary to law, or when the grant is of an estate contrary to law, as against the prohibition of a statute, that such grant will be held void in a collateral proceeding.

*Parmelee v. Oswego & Syracuse RR.*, 7 Barb. 599, 622 (Sup. Ct. N.Y. Cnty. 1850) (emphasis in original), *aff'd*, 6 N.Y. 74 (1851).   In this respect, New York law is identical to federal law, under which "it is well-established that the validity of a deed or patent from the federal

government may not be questioned in a suit brought by a third party against the grantee or patentee." *Raypath, Inc. v. City of Anchorage*, 544 F.2d 1019, 1021 (9th Cir. 1976).

The only way for letters patent that are not facially void to be invalidated under New York law is in a suit by the Attorney General. *See People v. Clarke*, 10 Barb. 120, 130 (Sup. Ct. Montgomery Cnty. 1850) (remedy by writ of *scire facias* to vacate letters patent, previously available to "any private person," was removed by section 428 of the code of procedure when new section 433d was enacted authorizing Attorney General to vacate or annul letters patent), *aff'd*, 9 N.Y. 349 (1853); *Jackson v. Lawton*, 10 Johns. 23, 24 (N.Y. Sup. Ct. 1813) (Kent, C.J.) ("Letters patent are matter of record, and the general rule is, that they can only be avoided in chancery, by a writ of *scire facias* sued out on the part of the government, or by some individual prosecuting in its name."). New York law grants the Attorney General the authority "to vacate or annul letters-patent, granted by the people of the state," including "[w]here they were issued . . . through mistake." Public Lands Law § 138. This authority is exclusive. *Cf. Shannon v. Jacobowitz*, 301 F. Supp. 2d 249, 254 (N.D.N.Y. 2003) (statute authorizing state

attorney general "to challenge title to a public office" is the "*only* available state law remedy" to challenge the outcome of a state election).

In a private action like this one, by contrast, the letters patent are conclusive proof of ownership unless they are facially invalid.   For example, if the letters were not signed by the state official authorized by statute to convey the property, a third party would presumably be entitled to challenge them because the defect would be apparent on the face of the instrument.  If, however, the letters facially appear to comply with the relevant statute, the third party could not seek to invalidate them based on some other alleged defect in the process of issuing them, such as an alleged failure to pay adequate consideration.

### B.   The Letters Patent Are Facially Valid Because the Property Was Conveyed to GIP in Conformity with the Law Governing Abandoned Canal Lands.

Under the facial-validity standard, the letters patent must be regarded as valid and effective for purposes of this litigation.   As explained below, (1) the property is abandoned canal land within the meaning of Public Lands Law § 50, and (2) the requirements of § 50 for transfer of the property through a private sale were facially satisfied.

Accordingly, the Attorney General does not address the other questions raised by the Court's Memorandum, all of which assume that the property is not abandoned canal land or that the requirements for a private sale were not satisfied.

### 1.   The property is abandoned canal land.

Section 50 applies to two distinct categories of abandoned canal lands: (1) those which "the commissioner of transportation may determine to have been abandoned for such purposes" and (2) those "as to which a determination of abandonment shall have been heretofore made pursuant to law." Public Lands Law § 50. The property at issue here falls within the second category, because a 1944 New York statute made a determination of abandonment as a matter of law.

The 1944 statute was entitled "AN ACT providing for the abandonment of a barge canal terminal and barge canal terminal lands in the city of New York and for their transfer to the port of New York authority, and making an appropriation in connection therewith." Ch. 410, 1944 N.Y. Laws 863. Section 2 of that statute begins: "It is hereby found and determined that the following pier properties (heretofore constituting barge canal terminals and barge canal terminal lands) are

6

no longer necessary or useful as a part of the barge canal system, or as an aid to navigation thereon or for barge canal terminal purposes," and then describes the property transferred to GIP.[1]  *Id.* § 2, 1944 N.Y. Laws at 864-65.  Although the Legislature used the word "abandon" only in the title of the statute and not in the text, the Legislature sufficiently indicated its intent to abandon the property; indeed, the Legislature used language that precisely mirrors the Canal Law's method for abandoning barge canal terminals by special act of the legislature.  *See* Canal Law § 50(1).  Thus, the statutory language quoted above constitutes a "determination of abandonment" of canal lands "made pursuant to law" within the meaning of Public Lands Law § 50.  *See also Message of the Governor in Relation to State Properties Used As Barge Canal Terminals in the New York Harbor Area*, 5 N.Y. Legis. Docs. No. 39 at 4-5 (1944) (committee appointed by Governor "has finally recommended that these terminals in New York Harbor be

---

[1] The Henry Street Basin was added later to the description of property conveyed to the Port Authority.  Ch. 899, 1945 N.Y. Laws 2119, 2121-22.

*divorced* from canal operation"; Governor urged the Legislature to enact the committee's recommendation into law (emphasis added)).

The only basis the Court identified upon which one might conclude that the 1944 statute does not bring the property under the purview of § 50 is that "[t]here is no indication in the 1944 Act—except its title—that the legislature intended to displace or circumvent the procedures set out in the Canal Law for the abandonment of canal lands." Mem. at 7. But there is no reason to believe that in enacting procedures by which the *commissioner of transportation* could abandon canal lands, the Legislature intended to tie its own hands by making those procedures applicable to future *legislative* abandonment of canal lands. The procedures contained in the Canal Law as it stood in 1944 for abandonment of canal lands are contained in a statutory provision that expressly applies only to abandonment by "the superintendent of public works," ch. 542, 1939 N.Y. Laws 1278, 1293 (enacting Canal Law § 51); no procedures are specified, there or elsewhere, for abandonment of canal lands directly by legislative enactment. Under basic principles of statutory construction, the Court should avoid construing the Canal Law as it stood in 1939 as binding the action of future legislatures

8

(including the 1944 legislature). *See Alliance of Am. Insurers v. Chu*, 77 N.Y.2d 573, 602-03 (1991) (courts should never assume that Legislature intended to "fetter" its own power in the future). Nor is it surprising that the Legislature established procedures for abandonment of canal lands by administrative action that it did not impose on abandonment by legislative action. Legislative enactments are ordinarily preceded by a process of a very different kind than the process required for administrative action. Here the legislative abandonment of the property was made upon the recommendation of a gubernatorial committee that "carefully studied every possibility open to the State with respect to future policy in the handling of these properties." *Message of the Governor, supra*, at 4.

In summary, the Legislature effectively abandoned the canal lands at issue and was not required to utilize any special language to do so. Thus, the property was and is "abandoned canal lands" subject to Public Lands Law § 50.

### 2. The property was properly transferred to GIP through a private sale.

Public Lands Law § 50 authorizes the commissioner of general services to sell abandoned canal lands privately

> for not less than the appraised value thereof to occupants of such abandoned canal lands or owners of adjacent land who have used or improved such abandoned canal lands either under a permit issued pursuant to section one hundred of the canal law or in good faith without knowledge that such canal lands were owned by the state.

Neither the statute nor state regulations define "occupant" for the purpose of this statute, nor do they specify the manner in which the commissioner is to determine the "appraised value" of the land. The commissioner determined that GIP was an occupant of the property because it undertook construction on the property, and that determination was reasonable in light of the fact that GIP received a quitclaim deed to the property in 1997 whose validity was not called into question until this Court's 2003 decision, *See City of N.Y. v. Gowanus Indus. Park, Inc.*, 65 A.D.3d 1071, 1072 (2d Dep't 2009) ("In February 2002 GIP constructed a wall measuring 18 feet in height and 200 feet in length on the northern side of the Basin."). At a minimum,

10

the question of occupancy is not one that can be challenged based on the face of the letters patent.

In addition, the commissioner reasonably determined that the property's value was less than or equal to the value of the indemnification agreement provided by GIP plus the $3,500,000 paid to the Port Authority by GIP, of which the State received 25 percent. *See* Dkt. No. 12 (Exhibit B to letter from Department of Transportation to Port Authority (Feb. 24, 1997)). Here too, while Hess argues to the contrary, a challenge to the valuation cannot be made based on the face of the letters patent.

### C.   Adjudicating the Validity of the Transfer Would Raise Serious Constitutional and Jurisdictional Questions That Should Be Avoided.

There are two further reasons why this Court should not accept Hess's invitation to adjudicate the validity of the property's transfer from the State to GIP.

First, even if Hess could collaterally attack the letters patent, and as explained above it cannot, the State would be a necessary—indeed, indispensable—party under Federal Rule of Civil Procedure 19(a), because nullification of the letters patent would leave the State with

11

ownership of the property and all its attendant environmental liabilities. It is well settled that a party to a contract that is the subject of litigation "is the paradigm of an indispensable party." *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991). The State would be prejudiced if it were forced to take title to the property and thereby assume responsibility for it, particularly if the Court's ruling cast doubt on the validity of the indemnification agreement that GIP provided as consideration for the property. *Cf. New York v. United States*, 505 U.S. 144, 176 (1992) (Congress lacks power to instruct "state governments to take title to waste").

The State, however, cannot be joined involuntarily to this suit because of its sovereign immunity. Thus, a suit by a private party such as Hess seeking to challenge the letters patent would have to be dismissed for failure to join a necessary party. *See, e.g., Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (where necessary party has sovereign immunity, claims must be dismissed); *Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) ("In addition to the effect this action would have on the Tribe's interest in the contract, the suit would also

effectively abrogate the Tribe's sovereign immunity by adjudicating its interest in that contract without consent."); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1161-63 (9th Cir. 2002) (holding Navajo Nation to be necessary and indispensable party to suit by individual against lessee of lands owned by Nation; dismissal of suit required because Nation enjoys sovereign immunity).

Second, and relatedly, a determination by the Court that invalidated the conveyance of the property to GIP would raise serious concerns under the Eleventh Amendment that should be avoided if possible. For the Court to invalidate the conveyance of the property to GIP, the Court would have to determine either (1) that the property was not abandoned as canal lands because the statute purporting to abandon it was ineffective, or (2) that the letters patent are invalid because the commissioner of general services failed to adhere to the procedures set forth in Public Lands Law § 50. Either determination would have the effect of nullifying an action by the State upon state law grounds with respect to title to state land. It is doubtful that a federal court could do so consistent with the Eleventh Amendment.

13

If Hess Corporation had filed suit in federal court to enjoin the transfer of the property to GIP in 2004 based on state law, the suit would have been barred by the State's Eleventh Amendment immunity for two independent reasons. First, although federal courts may enjoin state officials to comply with *federal* law, they lack the power to enjoin state officials to comply with *state* law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."). Second, such a suit would be "the functional equivalent" of a quiet-title suit, and "would bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 282 (1997). The Eleventh Amendment prohibits such a suit because of the special state sovereignty interests implicated by the exercise of federal court jurisdiction over a State's "lands and waters," *id.* at 287, especially canal lands such as are at issue here.

14

As the Court recognized in an earlier iteration of this dispute, there are "serious constitutional questions under the Eleventh Amendment" raised by an effort to "quiet title completely to land in which the State has an interest." *Gowanus Indus. Park, Inc. v. Amerada Hess Corp.*, No.01-CV-0902, 2003 WL 22076651, at *7 (E.D.N.Y. Sept. 5, 2003). These concerns should guide and inform the Court's disposition of this case. Just as the Court would not entertain a suit for injunctive relief to bar the conveyance to GIP, so to it should refuse to adjudicate the functionally equivalent question of whether the same state conveyance was properly made under the same state law. Instead, the Court should conclude—consistent with governing New York law—that the letters patent conclusively establish GIP's ownership for purposes of this litigation.

15

## CONCLUSION

For the foregoing reasons, GIP is the owner of the property under the 2004 letters patent.

Dated:   New York, NY
         May 13, 2011

                                   Respectfully submitted,

                                   ERIC T. SCHNEIDERMAN
                                   *Attorney General of the*
                                   *State of New York*

By:   /s/ Simon Heller
                                   SIMON HELLER
                                   Assistant Solicitor General

                                   120 Broadway, 25th Floor
                                   New York, NY 10271
                                   (212) 416-8025

BARBARA D. UNDERWOOD
  *Solicitor General*
BENJAMIN N. GUTMAN
  *Deputy Solicitor General*
SIMON HELLER
  *Assistant Solicitor General*
    *of Counsel*

16

Charles D. Krieg
Hinman, Howard & Kattell, LLP
185 Madison Avenue, 7th Floor
New York, New York 10016
(212) 725-4423

Attorneys for Plaintiff
Gowanus Industrial Park, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

GOWANUS INDUSTRIAL PARK, INC.,                              Civil Action No.: 10-05522
                                                            (JG) (JO)
                              Plaintiff,
                                                            ECF CASE
              -against-

HESS CORP.,

                              Defendant.
-------------------------------------------------------------X

I, Charles D. Krieg, hereby certify as follows:

1.      I am an attorney with the firm Hinman, Howard & Kattell, LLP, attorneys for

plaintiff Gowanus industrial Park, Inc. in the above-captioned matter.

2.      I hereby certify that upon this date I served via first class mail a true and correct

copy of the affirmation of Joseph N. Paykin in support of its motion for summary

judgment upon the following:

Charles S. Sims
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

Dated: New York, New York
       July 14, 2011

_____
Charles D. Krieg