# EXHIBIT 10

OTTOSON & OTTOSON

*Engineers*

411 NORTH AVENUE. EAST
CRANFORD, NEW JERSEY 07016

(201) 272-6633

1984 JUN 22  P 4: 04
TERMINAL ENGINEERING
& CONSTRUCTION

PLEASE INITIAL

- FLC
- GSE
- COC
- DMO
- RRF
- MPC
- GEM
- ECH
- REM
- WRC
- FDV
- PSC

FACILITY
PROJECTIVE
BED

June 22, 1984

Department of the Army
New York District
Corps of Engineers
26 Federal Plaza
New York, New York   10278

Attention:  Mr. Thomas Creamer
            Chief Construction Permit Section

Re:  Amerada-Hess Corporation
     Waterfront Facilities Renovation
     Foot of Court Street
     Brooklyn, New York

Gentlemen:

    We submit herewith our application for a permit to cover
repairs and renovations to marine facilities located at the
Amerada-Hess Corporation Terminal, Foot of Court Street and
Gowanus Creek, Brooklyn, New York.

    A previous application was made on November 10, 1983,
covering bulkhead rehabilitation for Pier 1 and Pier 2 (File
No. 84-040-YC).  A letter from the Corps dated February 3, 1984,
stated that the work could be accomplished under the nationwide
general permit.

    Subsequent to this Amerada-Hess received notification by
the Corps of Engineers of deterioration of other of their water-
front facilities which are in imminent danger of falling into
tidal waters, thereby creating a serious hazard to navigation
and request that immediate action be taken to remedy this
condition.  As a result, Hess has entered upon a project to
correct this situation for all its waterfront facilities.

    We have discussed this matter with Mr. Monty Grecis of
your permit section, who informed us that a new application should
be made for the entire project.

**AH 000186**

Mr. Thomas Creamer
June 22, 1984
Page Two


    We are most anxious to proceed with the work at the
earliest possible date, if possible the bulkhead rehabilita-
tion for Pier 2 and the Henry Street Basin as well as the
riprap stabilization  in the Pier 1 area.  These areas are
particularly deteriorated and hazardous as can be seen from
the photographs submitted with our application.

    We thank you for your attention to this matter.

                              Very truly yours,

                              OTTOSON & OTTOSON


                              R. Stanley Ottoson, P.E.

RSO/dk

Enclosure




AH 000187

# EXHIBIT 11

YORK DISTRICT. CORPS OF ENGIN    RS
26 FEDERAL PLAZA
NEW YORK, N. Y. 10278

REPLY TO
ATTENTION OF: 1984 JUN 22 P 4: 02

Operations Division    TERMINAL ENGINEERING                    22 June 1984
Regulatory Branch       & CONSTRUCTION

                                                              PLEASE INITIAL
SUBJECT: Pre-Application File; Amerada Hess Company Court Street Facility in
Gowanus Creek Rehabilitation. ( Your letter 22 June 1984)

Amerada Hess Corporation
1 Hess Plaza
Woodbridge, New Jersey 07095

Dear: Sir

    This is in response to your recent request for a determination of
Department of the Army jurisdiction in the subject work.

    Our review indicates an individual permit process is not required. Based
upon the material and information you have submitted, it appears the
activities within our jurisdiction could be accomplished under an existing
Department of the Army nationwide general permit. The nationwide general
permit is prescribed at Title 33 of the Code of Federal Regulations. A copy
of this part of the Federal Regulations Part 330.5(a) (3) is enclosed with the
appropriate section marked for your convenience. The work may be performed
without further contact with our office provided the enclosed conditions are
satisfied.

    Your attention is specifically directed to the conditions of the
nationwide general permit and the recommended construction management
practices. These items are highlighted on the enclosed copy of the Federal
Regulations. The management practices should be followed to the maximum
extent practicable.

    Care should be taken so that construction materials, including debris, do
not enter any waterway to become a drift or pollution hazard. You are to
contact appropriate State and local governmental officials to insure that the
subject work is performed in compliance with their requirements.

                                        Sincerely,

                                        Thomas M. Creamer
                                        Chief, Western Permits Section

Enclosure

water of the United States, regardless that they may be dry at a particular point in time.

§ 329.14   Determination of navigability.

(a) *Effect on determinations.* Although conclusive determinations of navigability can be made only by Federal Courts, those made by Federal agencies are nevertheless accorded substantial weight by the courts. It is therefore necessary that when jurisdictional questions arise, District personnel carefully investigate those waters which may be subject to Federal regulatory jurisdiction under guidelines set out above, as the resulting determination may have substantial impact upon a judicial body. Official determinations by an agency made in the past can be revised or reversed as necessary to reflect changed rules or interpretations of the law.

(b) *Procedures of determination.* A determination whether a waterbody is a navigable water of the United States will be made by the Division Engineer, and will be based on a report of findings prepared at the District level in accordance with the criteria set out in this regulation. Each report of findings will be prepared by the District Engineer, accompanied by an opinion of the District Counsel, and forwarded to the Division Engineer for final determination. Each report of findings will be based substantially on applicable portions of the format in paragraph (c) of this section.

(c) *Suggested format of report of findings.* (1) Name of waterbody:

(2) Tributary to:

(3) Physical characteristics:

(i) Type: (river, bay, slough, estuary, etc.)

(ii) Length:

(iii) Approximate discharge volumes: Maximum, Minimum, Mean.

(iv) Fall per mile:

(v) Extent of tidal influence:

(vi) Range between ordinary high and ordinary low water:

(vii) Description of improvements to navigation not listed in paragraph (c)(5) of this section:

(4) Nature and location of significant obstructions to navigation in portions of the waterbody used or potentially capable of use in interstate commerce:

(5) Authorized projects:

(i) Nature, condition and location of any improvements made under projects authorized by Congress:

(ii) Description of projects authorized but not constructed:

(iii) List of known survey documents or reports describing the waterbody:

(6) Past or present interstate commerce:

(i) General types, extent, and period in time:

(ii) Documentation if necessary:

(7) Potential use for interstate commerce, if applicable:

(i) If in natural condition:

(ii) If improved:

(8) Nature of jurisdiction known to have been exercised by Federal agencies if any:

(9) State or Federal court decisions relating to navigability of the waterbody, if any:

(10) Remarks:

(11) Finding of navigability (with date) and recommendation for determination:

§ 329.15   Inquiries regarding determinations.

(a) Findings and determinations should be made whenever a question arises regarding the navigability of a waterbody. Where no determination has been made, a report of findings will be prepared and forwarded to the Division Engineer, as described above. Inquiries may be answered by an interim reply which indicates that a final agency determination must be made by the Division Engineer. If a need develops for an emergency determination, District Engineers may act in reliance on a finding prepared as in § 329.14 of this part. The report of findings should then be forwarded to the Division Engineer on an expedited basis.

(b) Where determinations have been made by the Division Engineer, inquiries regarding the *navigability* of specific portions of waterbodies covered by these determinations may be answered as follows:

This Department, in the administration of the laws enacted by Congress for the protection and preservation of the navigable waters of the United States, has determined that —————— (River) (Bay) (Lake, etc.) is a navigable water of the United States from —————— to —————— Actions which modify or otherwise affect those waters are subject to the jurisdiction of this Department, whether such actions occur within or outside the navigable areas.

(c) Specific inquiries regarding the *jurisdiction* of the Corps of Engineers can be answered only after a determination whether (1) the waters are navigable waters of the United States or (2) if not navigable, whether the proposed type of activity may nevertheless so affect the navigable waters of the United States that the assertion of regulatory jurisdiction is deemed necessary.

§ 329.16   Use and maintenance of lists of determinations.

(a) Tabulated lists of final determinations of navigability are to be maintained in each District office, and

be updated as necessitated by court decisions, jurisdictional inquiries, or other changed conditions.

(b) It should be noted that the lists represent only those waterbodies for which determinations have been made; absence from that list should not be taken as an indication that the waterbody is not navigable.

(c) Deletions from the list are not authorized. If a change in status of a waterbody from navigable to non-navigable is deemed necessary, an updated finding should be forwarded to the Division Engineer, changes are not considered final until a determination has been made by the Division Engineer.

PART 330—NATIONWIDE PERMITS

Sec.
330.1   General.
330.2   Definitions.
330.3   Nationwide permits for activities occuring before certain dates.
330.4   Nationwide permits for discharges into certain waters.
330.5   Nationwide permits for specific activities.
330.6   Management practices.
330.7   Discretionary authority.
330.8   Expiration of nationwide permits.

Authority: 33 U.S.C. 403; 33 U.S.C. 1344.

§ 330.1   General.

The purpose of this regulation is to describe the Department of the Army's nationwide permit program and to list all current nationwide permits which have been issued by publication herein. The two types of general permits are referred to as "nationwide permits" and "regional permits." A nationwide permit is a form of general permit which authorizes a category of activities throughout the nation. The authority for general permits to be issued by district engineers on a regional basis is contained in 33 CFR Part 325. Copies of regional permits can be obtained from the appropriate district engineer. Nationwide permits are designed to allow the work to occur with little, if any, delay or paperwork. However, the nationwide permits are valid only if the conditions applicable to the nationwide permits are met just because a condition cannot be met does not necessarily mean the activity cannot be authorized but rather that the activity will have to be authorized by an individual or regional permit. Additionally, division engineers have the discretion, under situations and procedures described herein, to override the nationwide permit coverage and require an individual or regional permit. The nationwide permits are issued to satisfy the requirements of both Section 10 of the River and Harbor Act of 1899

and Section 404 of the Clean Water Act unless otherwise stated. These nationwide permits apply only to Department of the Army regulatory programs (other Federal agency, state and local authorizations may be required for the activity).

§ 330.2  Definitions.

(a) The definitions of 33 CFR Parts 321–329 are applicable to the terms used in this part.

(b) Discretionary authority means the authority delegated to division engineers in § 330.7 of this Part to override provisions of nationwide permits to add regional conditions or to require individual permit applications.

§ 330.3  Nationwide permits for activities occurring before certain dates.

The following activities are permitted by a nationwide permit which was issued on 19 July 1977 and need not be further permitted:

(a) Discharges of dredged or fill material in waters of the United States outside the limits of navigable waters of the United States that occurred before the phase-in dates which began July 25, 1975, and extended Section 404 jurisdiction to *all* waters of the United States. These phase-in dates are: after July 25, 1975, discharges into navigable waters of the United States and adjacent wetlands; after September 1, 1976, discharges into navigable waters of the United States and their primary tributaries, including adjacent wetlands, and into natural lakes, greater than 5 acres in surface area; and after July 1, 1977, discharges into all waters of the United States.

(b) Structures or work completed before 18 December 1968 or in waterbodies over which the District Engineer was not asserting jurisdiction at the time the activity occurred provided, in both instances, there is no interference with navigation.

§ 330.4  Nationwide permits for discharges into certain waters.

(a) *Authorized discharges.* Discharges of dredge or fill material into the following waters of the United States are hereby permitted provided the conditions listed in paragraph (b) of this section below are met:

(1) Non-tidal rivers, streams and their lakes and impoundments, including adjacent wetlands, that are located above the headwaters.[1]

(2) Other non-tidal waters of the United States (see 33 CFR 323.2(a)(3)) that are not part of a surface tributary system to interstate waters or navigable waters of the United States.[1]

(b) *Conditions.* The following special conditions must be followed in order for the nationwide permits identified in paragraph (a) of this section to be valid:

(1) That the discharge will not be located in the proximity of a public water supply intake;

(2) That the discharge will not destroy a threatened or endangered species as identified under the Endangered Species Act, or destroy or adversely modify the critical habitat of such species. In the case of Federal agencies, it is the agencies' responsibility to review its activities to determine if the action "may affect" any listed species or critical habitat. If so, the Federal agency must consult with the Fish and Wildlife Service and/or the National Marine Fisheries Service;

(3) That the discharge will consist of suitable material free from toxic pollutants in toxic amounts;

(4) That the fill created by the discharge will be properly maintained to prevent erosion and other non-point sources of pollution;

(5) That the discharge will not occur in a component of the National Wild and Scenic River System.

(6) That the best management practices listed in § 330.6 of this Part should be followed to the maximum extent practicable.

§ 330.5  Nationwide permits for specific activities.

(a) *Authorized activities.* The following activities are hereby permitted provided the conditions specified in this paragraph and listed in paragraph (b) of this section are met:

(1) The placement of aids to navigation and regulatory markers which are approved by and installed in accordance with the requirements of the U.S. Coast Guard (33 CFR Part 66, Subchapter C).

(2) Structures constructed in artificial canals within principally residential developments where the connection of the canal to a navigable water of the United States has been previously authorized (see 33 CFR 322.4(g)).

(3) The repair, rehabilitation, or replacement of any previously authorized, currently serviceable, structure or fill or of any currently serviceable structure or fill constructed prior to the requirement for authorization; provided such repair,

obtained from the St. Paul District Engineer, 1135 U.S. Post Office & Customhouse, St. Paul, MN 55101.

rehabilitation, or replacement does not result in a deviation [2] from the plans of the original structure or fill, and further provided that the structure or fill to be maintained has not been put to uses differing from uses specified for it in any permit authorizing its original construction. Maintenance dredging is not authorized by this nationwide permit.

(4) Fish and wildlife harvesting devices and activities such as pound nets, crab traps, eel pots, lobster traps, duck blinds, clam and oyster digging.

(5) Staff gages, tide gages, water recording devices, water quality testing and improvement devices, and similar scientific structures.

(6) Survey activities including core sampling, seismic exploratory operations, and plugging of seismic shot holes and other exploratory-type bore holes.

(7) Outfall structures and associated intake structures[3] where the effluent from that outfall has been permitted under the National Pollutant Discharge Elimination System program (Section 402 of the Clean Water Act) (see 40 CFR Part 122) provided that the individual and cumulative adverse environmental effects of the structure itself are minimal.

(8) Structures for the exploration, production, and transport of oil, gas, and minerals on the outer continental shelf within areas leased for such purposes by the Department of Interior, Bureau of Land Management, provided those structures are not placed within the limits of any designated shipping safety fairway or traffic separation scheme (where such limits have not been designated or where changes are anticipated, District Engineers will consider recommending the discretionary authority provided by § 330.7 of this Part), and further subject to the provisions of the fairway regulations in 33 CFR 209.135.

(9) Structures placed within anchorage or fleeting areas to facilitate moorage of vessels where such areas have been established by the US Coast Guard.

(10) Non-commercial, single-boat, mooring buoys.

(11) Temporary buoys and markers placed for recreational use such as water skiing and boat racing provided that the buoy or marker is removed within 30 days after its use has been

---

[1] The State of Wisconsin has denied water quality certification pursuant to Section 401 of the Clean Water Act for certain waters within these two Nationwide Permit Categories. Discharges of dredged or fill material into those specified waters are not authorized under these two nationwide permits. A list of the specific waters may be

---

[2] Minor deviations due to changes in materials or construction techniques and which are necessary to make repair, rehabilitation, or replacement are permitted.

[3] Intake structures per se are not included—only those directly associated with an outfall structure are covered by this nationwide permit.

HESS0000619

Case 1:10-cv-05522-JG-JO Document 39-9 Filed 08/12/11 Page 8 of 13 PageID #: 619

discontinued. At Corps of Engineers reservoirs, the reservoir manager must approve each buoy or marker individually.

(12) Discharge of material for backfill or bedding for utility lines including outfall and intake structures provided there is no change in preconstruction bottom contours (excess material must be removed to an upland disposal area). A "utility line" is defined as any pipe or pipeline for the transportation of any gaseous, liquid, liquifiable, or slurry substance, for any purpose, and any cable, line, or wire for the transmission for any purpose of electrical energy, telephone and telegraph messages, and radio and television communication. (The utility line and outfall and intake structures will require a Section 10 permit if in navigable waters of the United States. See 33 CFR Part 322. See also paragraph (a)(7) of this section.)

(13) Bank stabilization activities provided:

(i) The bank stabilization activity is less than 500 feet in length;

(ii) The activity is necessary for erosion prevention;

(iii) The activity is limited to less than an average of one cubic yard per running foot placed along the bank within waters of the United States;

(iv) No material is placed in excess of the minimum needed for erosion protection;

(v) No material is placed in any wetland area;

(vi) No material is placed in any location or in any manner so as to impair surface water flow into or out of any wetland area;

(vii) Only clean material free of waste metal products, organic materials, unsightly debris, etc. is used; and

(viii) The activity is a single and complete project.

(14) Minor road crossing fills including all attendant features both temporary and permanent that are part of a single and complete project for crossing of a non-tidal waterbody, provided that the crossing is culverted, bridged or otherwise designed to prevent the restriction of and to withstand expected high flows [4] and provided further that discharges into any wetlands adjacent to the waterbody do not extend beyond 100 feet on either side of the ordinary high water mark of that waterbody. A "minor road crossing fill" is defined as a crossing that involves the discharge of less than 200 cubic yards of fill material below the plane of ordinary high water.

The crossing will require a permit from the US Coast Guard if located in navigable waters of the United States (see 33 U.S.C. 301). Some road fills may be eligible for an exemption from the need for a Section 404 permit altogether (see 33 CFR 323.4).

(15) Fill placed incidental to the construction of bridges across navigable waters of the United States including cofferdams, abutments, foundation seals, piers, and temporary construction and access fills provided such fill has been authorized by the US Coast Guard under Section 9 of the River and Harbor Act of 1899 as part of the bridge permit. Causeways and approach fills are not included in this nationwide permit and will require an individual or regional Section 404 permit.

(16) Return water [5] from a contained dredged material disposal area provided the State has issued a certification under Section 401 of the Clean Water Act (see 33 CFR 325.2(b)(1)). The dredging itself requires a Section 10 permit if located in navigable waters of the United States.

(17) Fills associated with small hydropower projects at existing reservoirs where the project which includes the fill is licensed by the Department of Energy under the Federal Power Act of 1920, as amended; has a total generating capacity of not more than 1500 kw (2,000 horsepower); qualifies for the short-form licensing procedures of the Department of Energy (see 18 CFR 4.61); and the individual and cumulative adverse effects on the environment are minimal.

(18) Discharges of dredged or fill material into waters of the United States that do not exceed ten cubic yards as part of a single and complete project provided no material is placed in wetlands [6].

(19) Dredging of no more than ten cubic yards from navigable waters of the United States as part of a single and complete project.[6]

(20) Structures, work and discharges for the containment and cleanup of oil and hazardous substances which are subject to the National Oil and Hazardous Substances Pollution

Contingency Plan provided the Regional Response Team which is activated under the Plan concurs with the proposed containment and cleanup action.

(21) Structures, work, and discharges associated with surface coal mining activities provided they are authorized by the Department of the Interior, Office of Surface Mining, or by states with approved programs under Title V of the Surface Mining Control and Reclamation Act of 1977; the appropriate district engineer is given the opportunity to review the Title V permit application and all relevant Office of Surface Mining or state (as the case may be) documentation prior to any decision on that application; and the district engineer makes a determination that the individual and cumulative adverse effects on the environment from such structures, work, or discharges are minimal.

(22) Minor work or temporary structures required for the removal of wrecked, abandoned, or disabled vessels or the removal of obstructions to navigation.

(23) Activities, work, and discharges undertaken, assisted, authorized, regulated, funded, or financed, in whole or in part, by another Federal agency or department where that agency or department has determined, pursuant to the CEQ Regulation for Implementing the Procedural Provisions of the National Environmental Policy Act (40 CFR Part 1500 et seq.), that the activity, work, or discharge is categorically excluded from environmental documentation because it is included within a category of actions which neither individually nor cumulatively have a significant effect on the human environment and the Office of the Chief of Engineers (ATTN: DAEN–CWO–N) has been furnished notice of the agency or department's application for the categorical exclusion and concurs with that determination.[7]

(24) Any activity permitted by a state administering its own permit program for the discharge of dredged or fill material authorized at 33 U.S.C. 1344(g)–(1) shall be permitted pursuant to Section 10 of the River and Harbor Act of 1899 (33 U.S.C. Part 403). Those activities which do not involve a Section 404 state permit are not included in this nationwide permit but many will be exempted by Sec. 154 of Pub. L. 94–587. (See 33 CFR 322.2(a)(2)).

(25) Discharge of concrete into tightly

---

[4] District Engineers are authorized, where regional conditions indicate the need, to define the term "expected high flows" for the purpose of establishing applicability of this nationwide permit.

[5] The return water or runoff from a contained disposal area is administratively defined as a discharge of dredged material by 33 CFR 323.2(j) even though the disposal itself occurs on the upland and thus does not require a Section 404 permit. This nationwide permit satisfies the technical requirement for a Section 404 for the return water where the quality of the return water is controlled by the state through the Section 401 certification procedures.

[6] These nationwide permits are designed for very minor dredge and fill activities such as the removal of a small shoal in a boat slip; they cannot be used for piecemeal dredge and fill activities.

[7] The State of Wisconsin has denied water quality certifications pursuant to Section 401 of the Clean Water Act for these two nationwide permits. Consequently, the permits do not apply in Wisconsin.

HESS0000620

sealed forms or cells where the concrete is used as a structural member which would not otherwise be subject to Clean Water Act jurisdiction.

(b) *Conditions.* The following special conditions must be followed in order for the nationwide permits identified in paragraph (a) of this section to be valid:

(1) That any discharge of dredged or fill material will not occur in the proximity of a public water supply intake;

(2) That any discharge of dredged or fill material will not occur in areas of concentrated shellfish production unless the discharge is directly related to a shellfish harvesting activity authorized by paragraph (a)(4) of this section.

(3) That the activity will not jeopardize a threatened or endangered species as identified under the Endangered Species Act, or destroy or adversely modify the critical habitat of such species. In the case of Federal agencies, it is the agencies' responsibility to review its activities to determine if the action "may affect" any listed species or critical habitat. If so, the Federal agency must consult with the Fish and Wildlife Service and/or National Marine Fisheries Service;

(4) That the activity will not significantly disrupt the movement of those species of aquatic life indigenous to the waterbody (unless the primary purpose of the fill is to impound water);

(5) That any discharge of dredged or fill material will consist of suitable material free from toxic pollutants (See Section 307 of Clean Water Act) in toxic amounts;

(6) That any structure or fill authorized will be properly maintained;

(7) That the activity will not occur in a component of the National Wild and Scenic River System; and

(8) That the activity will not cause an unacceptable interference with navigation.

(9) That the best management practices listed in § 330.6 of this Part should be followed to the maximum extent practicable.

§ 330.6 **Management practices.**

(a) In addition to the conditions specified in §§ 330.4 and 330.5 of this Part, the following management practices should be followed, to the maximum extent practicable, in the discharge of dredged or fill material under nationwide permits in order to minimize the adverse effects of these discharges on the aquatic environment. Failure to comply with these practices may be cause for the district engineer to recommend or the division engineer to take discretionary authority to regulate the activity on an individual or regional basis pursuant to § 330.7 of this Part.

(1) Discharges of dredged or fill material into waters of the United States shall be avoided or minimized through the use of other practical alternatives.

(2) Discharges in spawning areas during spawning seasons shall be avoided.

(3) Discharges shall not restrict or impede the movement of aquatic species indigenous to the waters or the passage of normal or expected high flows or cause the relocation of the water (unless the primary purpose of the fill is to impound waters).

(4) If the discharge creates an impoundment of water, adverse impacts on the aquatic system caused by the accelerated passage of water and/or the restriction of its flow, shall be minimized.

(5) Discharge in wetlands areas shall be avoided.

(6) Heavy equipment working in wetlands shall be placed on mats.

(7) Discharges into breeding areas for migratory waterfowl shall be avoided.

(8) All temporary fills shall be removed in their entirety.

§ 330.7 **Discretionary Authority.**

Division engineers on their own initiative or upon recommendation of a district engineer are authorized to modify nationwide permits by adding regional conditions or to override nationwide permits by requiring individual permit applications on a case-by-case basis. Discretionary authority will be based on concerns for the aquatic environment as expressed in the guidelines published by EPA pursuant to § 404(b)(1). (40 CFR Part 230)

(a) *Regional conditions.* Division engineers are authorized to modify nationwide permits by adding conditions applicable to certain activities or specific geographic areas within their divisions. In developing regional conditions, division and district engineers will follow standard permit processing procedures as prescribed in 33 CFR Part 325 applying the evaluation criteria of 33 CFR Part 320 and appropriate parts of 33 CFR Parts 321, 322, 323, and 324. A copy of the Statement of Findings will be forwarded to the Office of the Chief of Engineers. ATTN: DAEN–CWO–N. Division and district engineers will take appropriate measures to inform the public at large of the additional conditions.

(b) *Individual permits.* In nationwide permit cases where additional regional conditioning may not be sufficient or where there is not sufficient time to develop regional conditions under paragraph (a) of this section, the division engineer may require individual permit applications on a case-by-case basis. Where time is of the essence, the district engineer may telephonically recommend that the division engineer assert discretionary authority to require an individual permit application for a specific activity. If the division engineer concurs, he may verbally authorize the district engineer to implement that authority. Both actions will be followed by written confirmation with copy to the Chief of Engineers (DAEN–CWO–N). Additionally, after notice and opportunity for public hearing, division engineers may recommend to the Chief of Engineers that individual permit applications be required for categories of activities, or in a specific geographic area. The division engineer will announce the decision to persons affected by the action. The district engineer will then regulate the activity or activities by processing an application(s) for individual permit(s) pursuant to 33 CFR Part 325.

(c) Discretionary authority which has been exercised under nationwide permits issued on 19 July 1977 expires four months from the effective date of this regulation. Such authority may be extended or reinstated after appropriate procedures of this regulation and 33 CFR Parts 320 through 325 have been followed.

§ 330.8 **Expiration of nationwide permits.**

The Chief of Engineers will review nationwide permits at least every five years. Based on this review, which will include public notice and opportunity for public hearing through publication in the Federal Register, he will either modify, reissue (extend) or revoke the permits. If a nationwide permit is not modified or reissued within five years of publication in the Federal Register, it automatically expires and becomes null and void.

[FR Doc. 82-19658 Filed 7-21-82; 8:45 am]

BILLING CODE 3710-92-M

EXHIBIT 12

TITLE SURVEY OF PROPERTY
IN
RED HOOK
BOROUGH OF BROOKLYN, COUNTY OF KINGS
CITY AND STATE OF NEW YORK

MADE FOR
AMERADA HESS CORPORATION

Bartlett, Ludlum & Dill Associates

EXHIBIT 13

AMERADA HESS CORPORATION
1 HESS PLAZA, WOODBRIDGE, N.J.

PLAN
SOUTH END OF PIER 2
PHASE I, SECTION 3

OTTOSON & OTTOSON
40, North Avenue East - Cranford, N.J. 07016

945-D-5033