PROSKAUER ROSE LLP
Charles S. Sims
Eleven Times Square
New York, NY 10036-8299
(212) 969-3000

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------

GOWANUS INDUSTRIAL PARK, INC.,

                *Plaintiff*,

  against

HESS CORPORATION,

                *Defendant*.

------------------------------------

Civil Action No. 10-5522 (JG) (JO)

**ECF CASE**

**DECLARATION OF SCOTT VITELLO**

Scott Vitello declares:

1. I am the Terminal Superintendant for Hess Corporation's oil terminal in Brooklyn, New York (the "Brooklyn Terminal"). I submit this declaration in opposition to GIP's motion for summary judgment and in support of Hess's cross-motion for summary judgment. I have worked for Hess since 2005, and I have personal knowledge of the facts set forth in this declaration.

**Hess's Operations at the Brooklyn Terminal**

2. Since 1977, Hess has operated the Brooklyn Terminal for use in its transshipment of heating oil and other petroleum products via barges. These products are offloaded through pipelines whose terminus is on the Hess Finger Pier. Barges moor on either side of the Hess Finger Pier to offload their petroleum, which is transferred via the pipeline into three above

ground storage tanks maintained at the Brooklyn terminal just east of the Bulkhead in dispute here. These tanks will contain the product until it is uploaded via pipes to tanker trucks for delivery to businesses and homes throughout New York City and the surrounding metropolitan area.

3. Since Hess acquired the Brooklyn Terminal in 1977, it has been responsible for supplying 100 million gallons of the heating oil and/or diesel fuel used by businesses and homes throughout New York City and the surrounding metropolitan area per year.

4. Barges deliver oil to the Brooklyn Terminal on a regular basis, and, for roughly nine months per year, oil is constantly flowing into and out of the tanks. Deliveries by barges are more frequent during the heating months to meet the increased demand for heating oil.

**Department of Homeland Security Regulations Applicable to the Brooklyn Terminal**

5. The Department of Homeland Security (the "DHS") promulgated a series of maritime security regulations to which the Brooklyn Terminal has been subject for the last seven years, and with which we endeavor to comply.

6. The Hess Brooklyn Terminal has been designated as a restricted facility subject to the Maritime Security regulations in 33 CFR Part 105.

7. One such regulation, 33 CFR § 105.400, requires Hess to develop and implement a facility security plan ("FSP") for the Brooklyn Terminal. 33 CFR § 105.400 also requires Hess to submit the FSP to the Captain of the Port (the "COTP") for approval.

8. I am the designated Facility Security Officer ("FSO") at the Brooklyn Terminal, and, as such, I am familiar with the contents of the FSP.

9. In accordance with 33 CFR § 105.400, Hess has developed and implemented a FSP for the Brooklyn Terminal. 33 CFR § 105.400(c) classifies the FSP for the Brooklyn

Terminal as "sensitive security information," and provides that the FSP "must be protected in accordance with" DHS regulations concerning such materials. The COTP has approved the FSP, and Hess has treated the FSP in accordance with the DHS regulations concerning sensitive security information.

10. An integral requirement of Hess's FSP is the Fence, which serves the regulations' vital interests of controlling access to the Brooklyn Terminal, deterring the unauthorized introduction of substances and devices to the facility, securing the substances at the facility, and protecting the facility and those persons authorized to be there.

11. 33 C.F.R. § 165.169—another of the DHS regulations applicable to the Brooklyn Terminal—requires Hess to post signs along the fence on the waterfront areas of the Brooklyn Terminal, including the Bulkhead, so as to provide public notice that there is a 25 yard waterfront security zone surrounding the Brooklyn Terminal (which expands, during petroleum transfer, to 25 yards measured not from the fence surrounding the waterside of the facility but from the outer perimeter of any barge engaged in transfer operations).

12. In accordance with 33 CFR § 165.169, Hess has posted signs along the fence on the waterfront areas of the facility as well as the Bulkhead indicating that there is a 25 yard waterfront security zone surrounding the Brooklyn Terminal. The signage contains the language provided by the Coast Guard. A true and correct copy of a photograph of one such sign is annexed hereto as Exhibit 1.

13. In accordance with the DHS maritime security regulations to which the Brooklyn Terminal is subject, Hess has adhered to the Transportation Worker Identification Credential ("TWIC") procedure, which strictly governs and limits access into the Brooklyn Terminal.

14. A TWIC card is required for the following persons to access the Brooklyn Terminal: (1) all of the Hess employees who work at the Brooklyn Terminal, (2) all drivers loading or unloading at the Brooklyn Terminal, and (3) all barge and ship personnel in their capacity of offloading and/or loading product into the pipelines which lead to the above ground storage tanks.

15. A non-TWIC holder visiting the Brooklyn Terminal cannot enter unless he or she is authorized to do so and is escorted by a TWIC holder at all times. Escorts of non-TWIC holders are strictly forbidden from leaving those persons unattended at any time.

I declare under penalty of perjury that the foregoing is true and correct.

August 10, 2011

_____
Scott Vitello