| | |
|---|---|
| GOWANUS INDUSTRIAL PARK, INC., <br>                                             Plaintiff, <br>               - versus - <br>HESS CORP., <br>                                             Defendant. | MEMORANDUM <br>AND ORDER <br>10-CV-5522 (JG) (JO) |

A P P E A R A N C E S:

      HINMAN, HOWARD & KATTELL, LLP
           185 Madison Avenue, 7th Floor
           New York, New York 10016
      By:    Joseph Noah Paykin
           *Attorney for Plaintiff*

      PROSKAUER ROSE, LLP
           11 Times Square
           New York, New York 10036
      By:    Charles S. Sims
           *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Hess Corporation ("Hess") has moved for reconsideration of my memorandum and order dated October 19, 2011, resolving the parties' cross-motions for summary judgment. (ECF Nos. 47, 49.) Gowanus Industrial Park, Inc. ("GIP") opposes the motion for reconsideration. (ECF No. 51.) I have also sought and received an *amicus curiae* brief from the New York State Attorney General, which supports the result reached in my prior opinion. (ECF No. 50.) For the reasons explained below, Hess's motion for reconsideration is denied, and my prior opinion stands.[1]

---

[1] A separate aspect of Hess's motion, however, which questions a factual assertion on page 32 of my prior opinion, has merit, and an amended memorandum and order correcting the error will be filed today.

DISCUSSION

A.    *Standard of Review*

Rule 59(e) of the Federal Rules of Civil Procedure permits a court "to alter or amend a judgment." Fed. R. Civ. P. 59(e); *see also* Local Rule 6.3. However, it "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure § 2810.1, pp. 127-28 (2d ed. 1995)). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478, p. 790). Reconsideration will generally be denied unless the court overlooked data or controlling decisions which, had they been considered, "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration is not simply a second opportunity for the movant to advance arguments already rejected." *Koehl v. Warden*, No. 00-CV-6499 (NGG), 2007 WL 680767, at *1 (E.D.N.Y. Mar. 2, 2007) (internal quotation marks omitted).

B.    *Hess's Motion*[2]

By memorandum and order filed on October 19, 2011 (ECF No. 46), I granted summary judgment to GIP with respect to its claim for a declaration that it owns the parcels at issue. The basis for my ruling was that the letters patent issued by the Commissioner of General Services ("Commissioner") in 2004, conveying the parcels from the state to GIP, were facially

---

[2] This opinion assumes familiarity with the factual and legal background of the case, and uses terminology as defined in my prior opinion.

valid and therefore not subject to collateral attack in this proceeding. On November 3, 2011, Hess filed a corrected memorandum of law in support of its motion requesting reconsideration of the question of the facial validity of the 2004 letters patent. (ECF No. 49.)

Hess's primary argument in support of its motion for reconsideration is that the letters patent are facially invalid because a 1996 amendment to Canal Law § 51 stripped the Commissioner of all authority over abandoned canal lands, vesting such authority wholly within the canal corporation.[3] Prior to the 1996 amendment, Canal Law § 51 specified a "method of abandonment" that provided, in pertinent part,

> [The Thruway authority][4] shall thereupon issue an official order abandoning the lands for canal purposes and transmit a certified copy thereof to the commissioner of general services, together with a map and description of the lands abandoned, *whereupon such commissioner shall have jurisdiction over such lands subject to the provisions of the public lands law*. Whenever such commissioner disposes of any portion of canal lands so abandoned, said commissioner shall file with the [Thruway Authority] a description of the property, date of disposal and to whom transferred.

N.Y. Canal Law § 51 (1992) (emphasis added). Chapter 442 of the Laws of 1996 amended that portion of Canal Law § 51 to read as follows:

> The [canal] corporation[5] shall thereupon issue an official order abandoning the lands for canal purposes together with a map and description of the lands abandoned *and dispose of any portion of canal lands so abandoned*.

---

[3] The New York State Canal Corporation was created by the state legislature in 1992 as a subsidiary corporation of the New York State Thruway Authority. *See* N.Y. Canal Law § 2(21); N.Y. Pub. Auth. Law § 382(1); 1992 N.Y. Laws Ch. 766, § 31 (adding N.Y. Pub. Auth. Law § 382). The canal corporation is empowered to "operate, maintain, construct, reconstruct, improve, develop, finance, and promote the New York State canal system." N.Y. Pub. Auth. Law § 382(1).

[4] Canal Law § 50 originally vested authority in the Commissioner of Transportation to abandon canal lands. *See* 1968 N.Y. Laws Ch. 420. The Canal Law was subsequently amended in 1992 to transfer authority from the Commissioner of Transportation to the Thruway Authority. *See* 1992 N.Y. Laws Ch. 766, § 4 ("All references to the commissioner of transportation and the department of transportation contained in this chapter . . . shall be deemed to mean the [thruway] authority."). Therefore, I have substituted "Thruway Authority" for "Commissioner of Transportation" above.

[5] The 1996 legislature defined "corporation" as used in the Canal Law to mean the canal corporation. *See* 1996 N.Y. Laws Ch. 442, § 1 (codified at N.Y. Canal Law § 2(21)).

3

N.Y. Canal Law § 51 (emphasis added).

Hess argues that this 1996 amendment stripped the Commissioner of General Services of jurisdiction over abandoned canal lands. *See* Hess Memo. (ECF No. 49). Hess points to a footnote in a 2007 formal opinion of the Attorney General as additional support for this interpretation. The footnote, which was dicta in the opinion, provides as follows: "Under the previous version of Canal Law § 51, the Commissioner of General Services had jurisdiction over abandoned canal lands subject to the provisions of the Public Lands Law. By enactment of chapter 442 of the laws of 1996, *section 51 [of the Canal Law] was amended to remove the Commissioner of General Services' jurisdiction over abandoned canal lands*." N.Y. Atty. Gen., Formal Op. No. 2007-F2, 2007 WL 892635, at *8 n.11 (March 20, 2007) (emphasis added). Hess contends that as a result of this 1996 amendment, the Commissioner of General Services was stripped of all authority to dispose of abandoned canal lands, and, accordingly, the Commissioner's attempted conveyance of the parcels to GIP in 2004 was facially invalid.

In spite of its repeated amendments of the Canal Law, the New York legislature has left untouched Public Lands Law § 50, on which I premised the Commissioner's jurisdiction to dispose of abandoned canal lands in my prior opinion. Public Lands Law § 50 authorizes the Commissioner of General Services to sell all title and interest of the state in "any real property, acquired for canal purposes, [1] which the [canal corporation][6] may determine to have been abandoned for such purposes, or [2] as to which a determination of abandonment shall have been

---

[6] In my prior opinion, I concluded that the legislature unintentionally failed to amend Public Lands Law § 50 in conjunction with its 1992 amendment of the Canal Law transferring jurisdiction from the Commissioner of Transportation to the Thruway Authority (and later, in 1996, to the canal corporation). *See* 1992 N.Y. Laws Ch. 776. Accordingly, I read references to the "commissioner of transportation" in Public Lands Law § 50 to mean the "canal corporation." I concluded that this construction was more plausible than the alternative construction, which would have repealed by implication a significant portion of § 50 by literally precluding the triggering conditions of the Commissioner's authority from ever being satisfied, as the commissioner of transportation has lacked authority to declare canal lands abandoned since 1992. *See* N.Y. Stat. Laws § 111 ("The courts may in a proper case indulge in a departure from literal construction and will sustain the legislative intention although it is contrary to the literal letter of the statute.").

4

heretofore made pursuant to law."[7] The question I faced in my prior opinion was whether the Commissioner had facially relied on this statutory authority to convey abandoned canal lands in conveying the parcels to GIP. I concluded that he had, because the letters patent specifically stated the parcels were being conveyed "pursuant to Section 50 of the Public Lands Law and Findings of the First Deputy Commissioner of General Services dated December 15, 2004," *see* Letters Patent at 3 (ECF No. 6-4), and the Commissioner's findings of fact dated December 15, 2004, recited that the parcels had been "abandoned for terminal purposes by Chapter 410 of the Laws of 1944," *see* 2004 Findings of Fact at 1 (ECF No. 12).

Hess argues that despite these recitations, the conveyance was not facially valid because by 2004, the Commissioner had been "entirely cut out of the process," and possessed *no* authority to "make or recognize determinations that land under the jurisdiction of the Thruway Authority and the Canal Corporation, *i.e.*, canal lands, is abandoned." Hess Memo. at 11-12, 14. Hess further notes that to the extent that Public Lands Law § 50 is in tension with the Canal Law, its provisions give way to the Canal Law by operation of Canal Law § 52, which provides: "Notwithstanding the provisions of any existing general or special acts, the procedure in abandonment of canal lands shall hereafter be in accordance with the provisions set forth in [the Canal Law]."

In his *amicus* brief, the current Attorney General states that the 1996 amendments to Canal Law § 51 "transferred authority to abandon canal lands from the Commissioner of

---

[7] In my prior opinion, I interpreted the word "heretofore" to limit the second prong of Public Lands Law § 50 to determinations of abandonment made prior to the statute's enactment, *i.e.*, prior to 1929. See Op. at 19 (citing 1928 N.Y. Laws Ch. 578, § 3). I thus concluded that the 1944 Act of the legislature declaring the parcels "no longer necessary or useful as a part of the barge canal system, or as an aid to navigation thereon or for barge canal terminal purposes," 1944 N.Y. Laws Ch. 410, § 2, was insufficient to satisfy the second avenue to abandonment identified in Public Lands Law § 50. Of course, if the court of appeals disagrees with that interpretation, then the Commissioner's authority may rest on the second prong of Public Lands Law § 50.

Transportation to the Canal Corporation,[8] and also authorized the Canal Corporation to dispose of the lands it abandoned." A.G. Amicus Br. at 6. "But," the Attorney General continues, "the 1996 amendment did not remove from the Commissioner of General Services the authority to dispose of lands abandoned previously, or by other means." *Id.* The Attorney General suggests that the Commissioner therefore retains jurisdiction to dispose of canal lands (1) abandoned by the legislature, (2) abandoned by the Commissioner of Transportation prior to 1992, (3) abandoned by the Thruway Authority between 1992 and 1996, or (4) abandoned by the Canal Corporation after 1996, if requested to do so by the Canal Corporation.[9] *Id.* at 8.

I conclude that the Commissioner of General Services retains some residual jurisdiction over abandoned canal lands, in spite of the 1996 amendments to the Canal Law. A court may not construe a New York statute so as to render it ineffective. N.Y. Stat. Law § 144. And, as Hess itself has acknowledged, its reading of Public Lands Law § 50 would eviscerate the provision altogether. *See* 10/3/11 Hess Letter at 2 (ECF No. 45) ("It is not possible for the Commissioner of General Services to sell any such canal real property pursuant to Public Lands Law Section 50."). I decline to read Public Lands Law § 50 in a manner that vests in the Commissioner a purely illusory authority.

Public Lands Law § 50 authorizes the commissioner to sell property that the canal corporation (or the commissioner of transportation prior to 1992) "*may* determine to have been abandoned for [canal] purposes." N.Y. Public Lands Law § 50(1) (emphasis added). The 1944

---

[8] I note that the legislature actually transferred authority over canal lands from the Commissioner of Transportation to the Thruway Authority in 1992. *See* 1992 N.Y. Laws Ch. 766, § 4 ("All references to the commissioner of transportation and the department of transportation contained in this chapter . . . shall be deemed to mean the [thruway] authority."). The legislature then transferred authority specifically to the canal corporation, a subsidiary of the Thruway Authority, in 1996.

[9] To support his contention that the Commissioner may dispose of canal lands abandoned by the Canal Corporation when requested to do so by the Canal Corporation, the Attorney General points to Public Authorities Law § 382(12), which provides that "The [thruway] authority and all other state officers, departments, boards, divisions, commissions, public authorities, and public benefit corporations may render such services to the canal corporation within their respective functions as may be requested by the canal corporation."

Act declared the Gowanus Bay Terminal "no longer necessary or useful as a part of the barge canal system, or as an aid to navigation thereon or for barge canal terminal purposes."  1944 N.Y. Laws Ch. 410, § 2.  Accordingly, under Canal Law § 50, the commissioner of transportation and/or the canal corporation has had the authority, since 1944, to declare the parcels abandoned.  Given the word "may" in Public Lands Law § 50, that authority appears sufficient to render the parcels eligible for sale under that provision.

Further, as I held in my previous opinion, under state law, I may not look behind the factual recitations of the letters patent to consider extrinsic evidence.  Thus, if the letters patent had stated only that the parcels had been "abandoned for purposes of § 50 authority," I would be constrained to accept that factual assertion as true, rendering the letters patent valid.  Instead, the letters patent here claimed as authority both "Section 50 of the Public Lands Law" *and* the Commissioner's 2004 findings of fact, the latter of which declared that the lands had been "abandoned for terminal purposes by Chapter 410 of the Laws of 1944."  I am hard-pressed to see why the Commissioner's decision to provide *greater* factual support for his contention that the conveyance was being made "pursuant to Section 50 of the Public Lands Law" than he was legally required to provide somehow eliminated the jurisdiction he otherwise had.

Although the New York Constitution makes clear that the state may not sell, abandon or otherwise dispose of canal lands that are still a viable part of the canal system, it specifically provides that

> [t]he legislature may by appropriate legislation authorize the sale, exchange, abandonment or other disposition of any barge canal lands, barge canal terminals, barge canal terminal lands or other canal lands and appertaining structures which have or may become no longer necessary or useful as a part of the barge canal system, as an aid to navigation thereon, or for barge canal terminal purposes.

N.Y. Const. art. 15, § 2. Thus, there is no concern here that the Commissioner exceeded any constitutional constraints in disposing of the parcels, as the 1944 Act authorized their abandonment by declaring them "no longer necessary or useful as a part of the barge canal system, or as an aid to navigation thereon or for barge canal terminal purposes." 1944 N.Y. Laws Ch. 410, § 2. Indeed, the parcels have had nothing to do with the canal system for nearly 70 years. In 1944, the legislature deeded the property to the Port Authority, which used it as a grain terminal until 1965. *See Gowanus Indus. Park, Inc. v. Amerada Hess Corp.* ("*GIP I*"), No. 01-CV-0902 (ILG), 2003 WL 22076651, at *4 (E.D.N.Y. Sept. 5, 2003). After that, the property lay unused. *Id.* Finally, in 1997, the Port Authority agreed to unload the parcels by quitclaim deed to GIP in exchange for $3.5 million. *Id.* In short, the interests safeguarded by the abandonment procedures specified in the Canal Law clearly raise no concern here.

Finally, stepping back from the statutory provisions and case law, I am mindful that the conveyance of real property is quintessentially a matter of state law. That is so even when only private parties are involved; where, as here, one party to the conveyance is the state itself, principles of federalism counsel in favor of deference to the state's interest in the successful transfer of title to real property for which it received $3.5 million in consideration over 14 years ago. New York law[10] gives the Second Circuit, but not the federal district courts,

---

[10] The New York Constitution was amended in 1985 to provide for certification. It reads:

> The court of appeals shall adopt and from time to time may amend a rule to permit the court to answer questions of New York law certified to it by the Supreme Court of the United States, a court of appeals of the United States or an appellate court of last resort of another state, which may be determinative of the cause then pending in the certifying court and which in the opinion of the certifying court are not controlled by precedent in the decisions of the courts of New York.

N.Y. Const. art. 6, § 3(b)(9). Rule 500.27 of the New York Court of Appeals Rules of Practice, adopted in response to this constitutional provision, provides:

authority to ask the New York Court of Appeals to answer the question at the heart of this motion for reconsideration: Has New York, here on its second attempt, conveyed the property at issue to GIP? Without the procedural device of certification, I am left to predict how that court would decide the question. I conclude for the reasons set forth above and in my prior opinion that it would not send the state back to the drafting table for a third attempt. I agree with Judge Glasser that the first try was facially deficient and had to be invalidated. *See GIP I*, 2003 WL 22076651. But despite the various legal vulnerabilities in the letters patent before me now, I conclude that they have sufficient facial validity to withstand Hess's challenge.

## CONCLUSION

Accordingly, the motion for reconsideration is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: January 31, 2012
      Brooklyn, New York

---

> Whenever it appears to the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals.

22 N.Y.C.R.R. 500.27(a).